No. 21-15521

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COLE JOSEPH SPENCER,

Plaintiff/Appellant,

v.

AARON PEW, ET AL.,

Defendants/Appellees.

On Appeal from the United States District Court
for the District of Arizona
District Court No. 2:20-CV-00385-PHX-DGC-CDB
The Honorable David G. Campbell

## APPELLANT'S EXCERPTS OF RECORD
## VOLUME 3 OF 3

H.R. Fitzmorris and Hannah Garland
*Student Participants (Admitted per Circuit Rule 46-4)*

Professor Jeffrey M. Feldman, WA Bar No. 47535
Professor Elizabeth G. Porter, WA Bar No. 51567
*Faculty Advisors, Ninth Circuit Appellate Advocacy Clinic*

UNIVERSITY OF WASHINGTON SCHOOL OF LAW
4293 Memorial Way NE
Seattle, WA 98195
Telephone: (206) 543-3434

*Counsel for Appellant Cole Spencer*
PRO BONO

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE CIVL 5.4, 7.1(a)(1)
(Rule Number/Section)

DEC 2 8 2020

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT OF ARIZONA

Cole J. Spencer,
(Plaintiff)

v.

, Aaron Pew, et. al,
(Defendants)

CV-20-00385-DGC-CDB

Plaintiffs response in Opposition
to defendants Motion for Summary
Judgment

(oral Argument Requested)

This is a 1983 excessive force case brought by an incarcerated individual. Defendants Pew and Rozema are not entitled to summary judgment because they violated the plaintiffs clearly established rights. As such, they are not entitled to qualified immunity and this case should be decided by a jury of their peers.

A. Plaintiffs Statement Of Facts

Mr. Spencer is currently incarcerated in the Arizona Department of corrections. [SoF1] On March 21st 2018, Jamie Kern (Driver) and Mr. Spencer (plaintiff) pulled out of Jamies driveway and immediatly were followed by an unmarked-undercover Chevy -Tahoe. [SoF2] Mr. Spencer was instantly nervous because his friends, Roger Shoemaker, Chance Ellington and Jessie Busch were pulled over a week prior while leaving Jamie Kerns residence and

were repeatedly questioned about Mr. Spencer's whereabouts.
[SOF 3]

Mr. Spencer and Jamie Kern were pulled over. Mr. Spencer immediatly had flashes of the many police brutality incidents that had flooded the local news stations involving Mesa P.D. [SOF 4] Two officers approached the vehicle and Mr. Spencer saw "Swat" team badges. Both officers were very big and unnessecarily aggressive in their tone and approach. [SOF 5] Mr. Spencer felt intimidated and decided to not give his real name as he feared they were the same officers that had harrassed his friends. [SOF 6]

Officer Rozema went to the Chevy Tahoe and came back and asked Mr. Spencer to step out of the vehicle. [SOF 7] Rozema asked Spencer to put his hands behind his back. Spencer complied. Rozema grabbed Spencer's left wrist and aggressively Bent and grabbed it. [SOF 8] As Rozema bent Spencer's wrist, Rozema informed Spencer, "yer under arrest 'c.J.'" [SOF 9]

Mr. Spencer had not told Rozema his real name (c.J.) so he panicked and pushed Rozema with his left shoulder in an attempt to create separation between the two of them. [SOF 10] This attempt by Mr. Spencer failed and Rozema never let go of Spencer's wrist. [SOF 11] Rozema then punched Spencer Multiple times in the

2

ER 309

face. [SOF 12] Spencer was face down blocking punches and was then Kicked in the face multiple times. From this moment he was blinded for the duration of the incident. [SOF 13]

Mr. Spencer said "o.k." Pleading with the officers, but the defendants proceeded with the beating. [SOF 14] At this point Mr. Spencer was in survival mode. Spencer was then shot with a taser. Probes were shot into his leg, hip, Neck and Back. [SOF 15] The officer tazed Mr. Spencer for what seemed like 30 seconds straight as well as shocking him in the carrotid artery with the tip of his stun gun, which was making it hard to breath for Mr. Spencer. [SOF 16] After the First four electrocution cycles, Mr. Spencer had little to no control over his body. He was on his back while his arms were being pinned down. At the same time officer Rozema was punching and Kicking Mr. Spencer in the face. [SOF 17]

Mr. Spencer ended up on his Knees in an attempt to block the officers strikes, and was electrocuted 2 more times. [SOF 18] Mr. Spencer informed the Officers that he had a pacemaker as he felt that he was going into cardiac arrest. [SOF 19] Shortly after an officer was laying on top of Mr. Spencer and had flatened him out. Spencer was then Kneed in his face 6-7 times. [SOF 20] Mr. Spencer was in shock and loosing his motor Function ability's. During this time an officer wrapped his hands

3

ER 310

around mr. Spencers neck and slammed Spencer's face into the ground repeatedly. [SOF 21] Then Mr. Spencer felt the probes in the back of his body begin to electrocute him for the 7th time. At the same time the officer stuck the stun-gun to his carrotid artery and held it there for what seemed like 20 seconds. [SOF 22] At this time Spencer felt like his heart was going to give out. [SOF 23] Spencer was face down in the ground and two hands were wrapped around his throat and he was strangled untill he went unconscious. [SOF 24]

When Mr. Spencer woke up, he was handcuffed and an officer was driving his knee/foot into Mr. Spencer's Neck with all of his body weight. [SOF 25] By the end of the incident Mr. Spencer had not thrown a single punch/strike and to this day this incident stands as the most traumatic experience of mr. Spencers life. [SOF 26]

Mr. Spencer was repeatedly asked about illegal drugs found in the Vehicle. Mr. Spencer denied the drugs were his. [SOF 27] Mr. Spencer heard one of the defendants tell the E.M.T.'s that Mr. Spencer admitted that the "Meth" found in the car was his. [SOF 28] Mr. Spencer was not under the influence of drugs of any Kind at the time of this incident. [SOF 29]

4

B. Qualified Immunity

"In resolving questions of qualified Immunity at Summary Judgement, courts engage in a two-pronged inquiry." Tolan, 134 S.Ct. at 1865. "The First asks whether the facts, taken in the light most favorable to the Non-moving, ... show the officers conduct violated a federal right." Id (Bracketts Omitted) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.ED. 2D 272 (2001)" The second prong of the qualified immunity analysis asks whether the right in question was clearly established at the time of the violation".

In "Graham v. Connor" the Supreme court established a balancing test to determine when the use of force is unreasonable. See (Graham 490 u.s. at 396, 109 S.ct. 1865). Under the Graham test, courts must balance "the nature of the quality of the intrusion on the individuals fourth Amendment rights against the countervailing governmental interests at stake". "Relevant considerations include: (1) The severity of the crime at issue. (2) whether the suspect poses an immediate threat to the safety of the officers or others. (3) whether [the Suspect] is actively resisting arrest or attempting to evade arrest by flight".

1. Officer Pew and Bozema's use of Force Was NOT Objectively Reasonable under the circumstances

The Graham factors all lean in the plaintiffs favor. Regardless

ER 312

5

of the false claims the defendants are making about the level of mr. Spencer's resistance now that they are defendants in a civil case, One fact remains.... Mr. Spencer was convicted of pushing officer Rozema with his shoulder. No punches. No kicks. That part part was added 2 weeks after the incident when Officer Pew Finaly decided to submit a supplemental report once he found out that Body-cam footage existed from this incident. If they wanted to make claims of Spencer striking them, then they should have done that when they had the opportunity. That time is long gone. but now that the situation has changed, so has their story. Now the defendants "statement of facts" mention nothing about them applying lethal force on Mr. Spencer. Also, they possess the same Body-cam footage from this incident which shows over %90 of the incident, but they fail to submit it as evidence. WHY? Because their actions were objectively unreasonable. The Footage is a detriment to their case. The defendants applied lethal force to an unarmed, Subdued man while 5 officers were present after tazing him 7 times and brutaly beating him. There is No available caselaw that would allow the defendants to engage in such behavior after a suspect "pushes an officer."

## First Graham Factor: Severity of Crime

The government interest in arresting Mr. Spencer was based on 2 crimes Mr. Spencer was convicted for. ① False Reporting.

6

Mr. Spencer admits to giving the defendants a fake name.
② Aggrevated Assault. Mr. Spencer was convicted of this crime.
At his hearing the Superior Court Judge Kathleen Mead asked Mr.
Spencers attorney (Mathew Leathers) to read the "Foetual Basis" for this
crime. At his hearing, the prosecutor who was working with the
defendants was present. Mr. Leathers read the FACTS of the case,
"He pushed him and made a sudden move".... Meaning, Mr. Spencer
pushed officer Rozema. So the baloncing is consisted of a push
compored to deadly force while 5 officers were present.
There is no senario where the govermental interests of arresting a
suspect who pushes on officer would outweigh the suspects interests of
being free from excessive force while that suspect is effectively nuetralized,
especially when the force in question is lethal in nature.

## Second Graham Factor - Immediate Threat Posed

"The most significant factor under Graham is whether the suspect
poses an immediate threat to the safety of the officers or others. (chew
V. ~~Whites~~ Gates), 27-F.3d 1432,1441 (9th cir 1994) This is the
factor that favors Mr.Spencer the most. The peak of Mr. Spencers resistance
came at the beginning of the incident. As mentioned before, this resistance
consisted of a push. At the time Pew applied lethal force on Spencer,
2 minutes had gone by. In that time Spencer had endured 7 electrocution
cycles, over 25 strikes to his Face and Head and had his face slammed
into the ground countless times. Mr. Spencer even informed the Defendants

7

ER 314

that he had a pacemaker before the 6th and 7th electrocution. Spencer was face down in the dirt with a 300 lb. officer (Deputy Macklin) on top of him. His head was between officer Pew's knees, and a third officer had handcuffs around Spencers left wrist and was pulling on spencers arm. A reasonable trier of fact could easily conclude that Mr. Spencer posed little to no threat to the defendants or anyone else at the time officer Pew applied lethal force or at the time Pew drove his knee into spencers neck after he was handcuffed. On top of this all there were 2 additional officers present who never helped and one of those officers (shall) was told by the defendants to watch the driver. If the defendants felt threatened by Mr. Spencer, they should have accepted Shall's help. These circumstances do not favor the defendants. The lack of immediate threat posed by Mr. Spencer weighs in favor of finding that the application of force to a subdued individual, (Mr. Spencer) let alone lethal force, was unreasonable.

## Third Graham Factor - Active Resistance or Attempts to Flee

Finally, the last Graham factor favors Mr. Spencer. Multiple District Courts have consistently concluded that a suspects initial resistance does not justify the continuation of force once the resistance ceases. See "Perea", 817 F.3d at 1203 ("although use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not.") By the

8

time Pew applied the strongulation/corrotid choke, the incident had changed from an arrest of Spencer, to a beating of Spencer shortly after the initial "Push". After the initial 4 strait electrocution cycles, Pew had spencer pinned down, while Rozema punched and Kicked Mr. Spencer. Mesa officers are taught De-escalation techniques in their training. They are also taught how to detain and arrest suspects. Purposely beating an individual is not part of these protocalls. The defendants ignored their training.... So if the actions of Spencer at the beginning of the incident were to be characterized as resisting, then shortly into the altercation the characterization of his actions would have to change accordingly with the [Defendants] actions. Meaning, that when the defendants stopped following their training protocols of how to effectuate an arrest, and start to beat, electrocute and strangle Mr. Spencer, then at that point Mr. Spencer's actions could not be characterized as resisting. At that point Mr. Spencer was protecting himself by moving. Spencer was not resisting when the lethal force was applied or when Pew applied force when spencer was handcuffed or at any time except for the initial "Push". What differentiates this case from most is that there is Body-cam footage of most of this incident. Any reasonable person can conclude from the videos, that spencer was not the aggressor. It is also easy to conclude that a reasonable Jury could find that Mr. Spencer was in survival mode, not resisting as the defendants claim. For that reason this Graham factor favors Mr. Spencer.

The Graham factors in this case all favor Mr. Spencer. Spencer has shown sufficient facts at this stage to make out a fourth amendment violation based on the defendants use of force. Any perceived threat of resistance was neutralized immediatly by officer Rozema and the "Push" could at best be choractorized as a "minimal" threat to the defendants. This "Push" was not life threatening and was over seconds later. The force the defendants applied on Mr. Spencer was unreasonable and could not be Justified because there was no Justifiable [NEED] for it. "Excessive force inquiries require balancing of the amount of force applied against the need for that force under the circumstances" (Meredith V. Erath), 342 F.3d 1057, 1061 (9th Cir 2003) Because the defendants use of force was unreasonable under Graham, they violated Mr. Spencers fourth Amendment rights and are not entitled to Summary Judgement.

## 2A. Caselaw Defendants Cited Does Not Apply

The caselaw that the defendents cited in their motion for summary judgement is not appropriate and does not pertain to this incident. "Beaver, Cadena and Johnson" all involved officers who confronted Intoxicated (Drunk) individuals who were actively fighting with officers, and in Johnson's case on PCP?? Mr. Spencer was not drinking or using PCP the day of this incident or any other drugs. Any claims that he was are

10

Self-serving statements made by the defendants to propetuate their erroneous narrative of this incident.

## 2B. Available caselaw favors Plaintiff

Though there is no caselaw that is identical to this case, there are cases with applicable circumstances. See (Ingram v. Shipman-Meyer) 241 F Supp. 3d 124 (D.O.C. 2017). In this case 4 officers responded to the scene of a man (Mr. Chambers) who was having a mental disturbance brought on by prior drug use. Mr. chambers was 6 feet 4 inches and 370 lbs. Mr. Chambers immediatly attacked the responding officers by punching 3 of the officers in the face, causing a fracture to officer Shipman-Meyers orbital bone. The only officer who was not struck (A Female) Deployed her pepper spray. The other 3 officers attempted to restraint mr. Chambers. They got him on the ground with an officer on each arm and the other (shipman-meyer) on Mr. Chambers back Deploying a carrotid choke-hold. Mr. chambers stopped moving and the carrotid choke ended and he was handcuffed. Mr. Chambers later Died as a result of the chokehold.

In this cas Mr. Chambers was significantly outnumbered by police. Three officers had effectively pinned Mr. chambers to the ground and gained control of his arms, while a fourth stood at the ready to assist them. Under such circumstances, the officers had subdued

11

ER 318

Mr. Chambers, and he did not "pose an actual and imminent threat to the lives of the officers involved" or other individuals. see [Flythe 791 F.3d at 18.] Once he was subdued, continued use of the chokehold was unnessecary and therefor unreasonable and excessive. *** The fact that Mr. Chambers was not handcuffed at this stage does not mean he was not subdued. (see Malory V. Whiting 489 Fed. Appx. 78, 86 (6th cir 2012) (Holding that although plaintiff was not hancuffed, he was nonetheless subdued, and therefor, force used was unreasonable).

Spencer V. Pew is very similar to this case. Although Mr. Spencer did not loose his life, the same lethal force was applied on him as with Mr. Chambers. Any meaningful differences that could be pointed out, all work in Mr. Spencer's favor. The Following is an objective comparison: ① Mr. Chambers was 6foot 4inches tall and 370 lbs. ..... Mr. Spencer was 6 foot 160 lbs the day of this incident. ② In Mr. Chambers Incident there were 4 officers present (1 of which was female).... In this incident there were 5 officers present (all were male and all were over 200 lbs.) ③ Mr. Chambers had punched 3 of the 4 officers, causing 1 officer a fractured orbital bone.... Mr. Spencer Never threw a single strike, only pushed an officer out of fear. ④ Mr. Chambers was choked with the corrotid choke/tracheal bar arm choke.... Spencer was strongled with the officers Bare hands.

The ultimate question in this case is.... Was Mr. Spencer subdued when officer Pew applied lethal force on him even though he wasn't handcuffed? This is the same question the court asked themselves in [Ingram v. Shipman-Meyer] and in the end the court Denied the Defendants Motion for Summary Judgment. The reasoning was because the officers had effectively subdued Mr. Chambers. The Same is true with Mr. Spencer. As mentioned in the Third Graham Factor analysis, Mr. Spencer was not resisting arrest. He was preserving his life. But even if the court did consider what Spencer was doing as resisting, the fact that he wasn't handcuffed until after the choke was deployed should not alter the analysis. A Number of courts have held that it is unreasonable for an officer to use a chokehold in order to make an arrest, simply because the individual resists being handcuffed. The Next 2 cases are examples of those Instances.

In [Thompson v. chicago] the court held that an officer was not entitled to Qualified Immunity where he used a chokehold in order to arrest a suspect who had both fled and fought with the police. [2004 WL 1197436 (May 28, 2004 N.D. Ill)] In Thomson, two police officers were on patrol and saw Thompson engage in an apparent drug purchase. Thompson saw the officers and fled in his car. The officers pursued him, and Several other cars joined the chase before Thompson crashed. Thompson emerged from the car and two of the many officers on hand attempted to Subdue

13

him. Thompson punched one of the two officers, which resulted in a physical struggle. All three fell to the ground and Thompson continued to struggle as the officers attempted to handcuff him. One of the officers was able to climb on Thompson's back and place him in a chokehold, which he maintained until Thompson was eventually handcuffed. Shortly thereafter, thompson began to exhibit signs of respiratory distress and eventually died.

Despite Thompson's potential drug crime, attempt to flee from arrest, violent assault of a police officer, and subsequent attempts to resist being handcuffed and arrested, the court held that the officer was not entitled to qualified immunity. Even under this set of facts, the court held that the use of deadly force, in the form of a chokehold, was excessive and unreasonable.

Similarly in [Griffith v. Coburn] the court held that an officer lacked qualified immunity where he had been called by Aurthur Partee's mother - Because he was experiencing a mental health issue - and he placed Mr. Partee in a chokehold after Partee resisted the officer's attempts to handcuff him. 473 F.3d 650, 651-53 (6th Cir. 2007). The officers lacked authority to involuntarily comit Partee, but - in order to get him treatment - decided to arrest him on an outstanding warrant stemming from a traffic ticket. Partee refused to go with the officers, and when they attempted to handcuff him, he resisted their attempts to do so. During the course of the struggle,

14

one of the officers claimed partee attempted to grab his gun, and put him (partee) in a chokehold, leading to his death.

On this set of facts the court held that a jury could find that the officer's use of the chokehold was excessive and unreasonable. The court did so even after accepting the officers contention that partee had attempted to grab his gun. The court reasoned that, despite this attempt to grab the gun, Portee never actually posed a threat to the officers because he was unsuccessful in grabbing the gun. The court held that, absent such a real threat, the officers lacked Justification to use deadly force against Partee.

Thompson and Griffith both make it clear that the use of a chokehold simply as a tool of effecting an arrest is not reasonable. Chokholds are not Justified simply because a suspect resists being handcuffed, or even punches an officer. Instead, the suspect must have done something that makes him a threat to the lives of the officers or others. In this case, when the facts are viewed in a light most favorable to Mr. Spencer, the defendants cannot demonstrate that Mr. Spencer posed this level of threat.

[Ingram, Thompson, and Griffith] all share the common denomonator of excessive force involving carrotid chokeholds

15

on subdued, and in some cases, resisting individuals. In many cases the plaintiffs have punched and fought with their arresting officers, and in Griffith's case, reached for an officers gun. Mr. Spencer's resistance never came close to these levels. Mr. Spencer was outnumbered by police 5 to 1. Mr. Spencer pushed an officer because he was scared. He was excessively tased and beaten by 2 Rogue Mesa Police officers who have a disciplinary history filled with excessive force complaints by the citizens of Mesa. Body cam videos do not lie, Pew and Rozema do, and it is clear from the facts stated in these pages that the defendants clearly violated Mr. Spencer's constitutional right to be free from excessive force during a seizure.

3. Clearly Established law Would Have Put The Defendants ON Notice

Before beginning the second prong of this inquiry, it must be made clear that the lethal force that was applied on Mr. Spencer was a strangulation type chokehold. In the defendants use of Force report, officer pew calls it a "Carrotid Artery Restraint". The Supreme court has ruled on cases involving these forms of lethal force. The one imparticular case is [City of los Angeles v. Lyons] 461 U.S. 95, 97 n.1, 103 S.Ct. 1660 75 L.Ed. 2d 675 (1983). This case defines chokeholds and breaks them into 2 separate tactics. ① Carrotid Artery Restraint.

16

This hold was defined as a restraint that calls for the officer to get behind the suspect and wrap an arm around a suspects Neck and squeeze with the forarm and bicep. This restraint cuts of circulation to the brain and renders a suspect unconscious within 15 seconds usually, but in some cases may take longer. This technique was an acceptable restraint method for Mesa police Department as long as Deadly force was permitted the day of this incident. (3-21-2018). ② The Bar-Arm Tracheal choke. This restraint is applied by using an officer's forarm to apply pressure to a suspects trachea. This restraint cuts off air supply by choking the suspect. This was NOT an acceptable restraint method for Mesa police department the day of this incident. As any observer will see in [clark's Bodycam video] Neither of these restraints was applied to Mr. Spencer. Spencer was strangled with officer Pew's bare hands. The Defendants provided a Training syllabus from 1999 that mentions "chicken choking" as a viable option as long as deadly force is authorized. This is NOT true. "Chicken choking" is what was done to mr. Spencer the day of this incident and it was not an authorized restraint method for mesa PD. Any act that impedes an individuals ability to breath in Arizona is defined as Aggravated Assault.] (ARS 13-1204)

The second prong of this inquiry is to determine if Mr. Spencer rights were "clearly established" at the time of this incident. The appropriate and relevant Question in this case is whether a

17

ER 324

reasonable officer would have known that it is unlawful to use a potentially lethal choking restraint, on an individual who has already been subdued by [multiple] officers. Whether or not mr. Spencer was subdued, strangling a suspect is not an authorized form of restraint, as a result this case should be decided by a Jury.

"To determine whether the officers "strayed beyond clearly established bounds of lawfulness; [the court] looks first to 'cases of controlling authority'." [Wesby v. District of Columbia] 765 F.3d 13, 2b (D.C. cir 2014)(Quoting Youngerbey v. March) 676 F.3d 1114, 1117 (D.C. cir 2012)(internal citations omitted))"If there is no such controlling authority, then [the court] must determine whether there is a consensus of cases of persuassive authority." Youngerbey, 676 F.3d at 1117 (quoting Ashcroft v. Al-Kidd) 563 U.S. 731, 131 S.Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011). The court "need not identify cases with materially similar facts, but has only to show that the state of the law at the time of the incident gave the officers fair warning that their particular conduct was unconstitutional." Wesby, 765 F.3d at 2b .... The following are a group of cases that should have given the defendants fair warning that what they were doing was unlawful.

[Ingram v. Shipman- Meyer, 241 F.Supp. 3d 124

18

(D.D.C. 2017) at 145] held that "a robust consensus of cases of persuasive precedent.... should have put [a reasonable officer] on notice that [His] continued application of the chokehold after [the suspect] was subdued was excessive." In this case Mr. Spencer was already subdued prior to the choke being applied. The defendants, according to [Ingram v. Shipman-meyer], should have had fair warning that what they were doing was unlawful.

[Scott, 550 U.S. at 384, 127 S. Ct. 1769] states that "an officer may use deadly force where a suspect "poses an actual and imminent threat to the lives" of the officer or others." Scott would have put both officers on notice, that applying lethal/deadly force via chokehold-strangulation when the suspect is unarmed, in a prone position and outnumbered 5 to 1, is unlawful. Rozema would be put on notice for failing to intervene.

A number of courts of appeals have held that once a suspect has been subdued, officers may not continue to use potentially-lethal methods of restraints, such as chokeholds. See [Drummond v. city of Anaheim] 343 F.3d 1052 (9th cir 2003) and [weigel v. Broad], 544 F.3d 1143 (10th cir. 2008).

["The use of deadly force to prevent the escape of [all]

19

felony suspects, whatever the circumstances, is constitutonaly unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the [Harm] resulting from failing to apprehend him does not Justify the use of deadly force to do so."]... (Tennessee v. Garner) 471 u.s. 1, 11, 105 S. Ct. 1694, 85 L.Ed. 2d 1 (1985). A reasonable officer would have known that strangling an unarmed man who posed NO threat to the 5 officers present, was excessive and that using deadly force was unnessecary.

"In assessing the state of the law at the time of the arrest, we need look no further than [Graham's] holding that 'Force is only Justified when there is a need for Force". [Blackenhorn v. City of Orange], 485 F. 3d 463, 481 (9th Cir 2007). A reasonable officer would have been put on notice that applying lethal force to a suspect who is subdued as well as positionaly asphyxiating a suspect after he is handcuffed is excessive and unlawful.

In addition, a police departments "training materials are relevant not only to whether the force employed in this case was objectively unreasonable... but also to whether reasonable officers would have been put on [Notice] that the force employed was objectively unreasonable" [Drummond v. city of Anaheim] 343 F.3d

1052, 1062 (9th Cir. 2003).... Mesa PD policy (DPM) (2.1.5) states that the "carrotid control techniques" are authorized when: ① Deadly Force is authorized (or) ② When a subject is [actively] assaulting an officer or another person and other control Methods have been exhausted, or the officer reasonably beleives other methods have/would be innefective. [Deadly Force] is defined in Mesa PD Policy as "Force that is used with the purpose of causing death or serious physical injury or in a Manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical Injury". Also, the defendants training materials during their [2017] (carrotid artery restraint, recertification class) would have also put the defendants on notice, as nowhere in the cirriculum would it allow an officer to wrap his hands around a suspects throat and squeeze.

## 4. Conclusion

"Excessive Force inquiries require balancing of the amount of force applied against the need for that force under the circumstances" [Meredith v. Erath] 342 F.3d 1057, 1061 (9th Cir. 2003) "Because such balancing nearly always requires a [Jury] to sift through disputed factual contentions, and to draw inferences therefrom... Summary Judgment or Judgment as a matter of law... should be granted sparingly in cases involving claims of Excessive force." [Gregory v. County of Maui] 523 F.3d 1103, 1106 (9th Cir 2008)

21

[ Quoting Drummond v. City of Anaheim ] 343 F.3d 1052 (9th Cir 2003)
"We have repeatedly held that the reasonableness of force used is
ordinarily a question of fact for a Jury." [quoting Liston v. County of
Riverside] 120 F.3d 965, 976 n.10 ( 9th cir. 1997).

    This case is very simple. Law and order is a must
for any civilized society to exist. Police as a whole are assets
to the community and prodominatly good people. Defendants
Pew and Rozema are not part of this group. This is not the
[Wild West] where you can hold court in the streets.
The defendants would argue otherwise. In this incident they
felt it was appropriate to act as the Judge, Jury and
executioner, brutally beating one of the citizens in the
streets of mesa. This Occurence was not an anomoly. These
Men have a track record of excessive force beatings and
Disciplinary infractions. It's also evident from the many versions of
this story they've told since the day of this incident that, they
will say whatever, to whoever, as long as it suits their current
needs. — Though the plaintiffs in much of the caselaw cited
in this response. lost their lives as a result of their arresting officers
force, one thing that they have in common is that the defendants
were not awarded summary Judgment, and since the only
meaningful differance between these cases and this one, is that
Mr. Spencer was fortunate enough to live, Summary Judgement should
be denied.
22

I Cole Spencer wrote everything in this motion. I tried
to not write it in the first person, and refer to myself as
[I] as much as I could. Not sure if that mattered or
not. Also I'm under the impression that citing caselaw isnt
a form of plagiarizm, but I wont to be very clear about
how much I copied and posted from [Ingram v. Shipman-Meyer].
It is the source for many of my ideas a talking points.
And Finally, Please excuse my penmanship and my spelling. I
rarely write and rarely have had to spell the words that are
in this motion.




# Maricopa County Sheriff's Office
Paul Penzone, Sheriff
## INCIDENT REPORT

| Reported Date: 3/21/2018 | Reported Time: 17:24 | IR #: IR18008163 | Original/Supp? ORIGINAL | Hand Written? ☐ Yes | Info Only ☑ Yes | Access Level: Open | Case Status: Exceptionally Cleared | MC (Event) #: MC18064268 |
|---|---|---|---|---|---|---|---|---|

**EVENT**

| Serial #: S1554 | Last Name: SHALL | | | Shift Supervisor: S1709 | Name: CLARK, C |
|---|---|---|---|---|---|
| Body Camera Activated? **Yes** | Reason not Active: | | | | |
| Break in Video? **No** | Reason for break: | | | | |

**INCIDENT**

| Radio Code: 9ME ASSIST/TOT MESA PD | | From Date: 3/21/2018 | From Time: 05:24 | 9-1-1 Tape Requested: |
|---|---|---|---|---|
| | | To Date: | To Time: | |

| Location: E BROADWAY RD/S 86TH ST | City: MESA | ZIP: 85207 | The number of Additional MCSO Personnel On Scene: 2 |
|---|---|---|---|
| Is this IR related to others? **NO** | | | |

| Additional MCSO Personnel On Scene: | Serial#: S1709 | Last Name: CLARK, C |
|---|---|---|
| Additional MCSO Personnel On Scene: | Serial#: S1742 | Last Name: MACKLIN, J |

**SYNOPSIS**

On Wednesday, 03-21-18 at about 1724 hours, I assisted Officers from the Mesa Police Department after Cole Spencer resisted arrest during a traffic stop in the area of Broadway Road, East of 86th Street in Mesa.

| ID: 1 | Type: SUSPECT | Name Type: Individual | VR Form & Pamphlet Given? | Reason NOT Given: |
|---|---|---|---|---|
| | | | VR_PamphletDeliveryMethod: | |

**PERSON**

| Name - Last: SPENCER | First: COLE | Middle: JOSEPH | Suffix: | DL/ID #: D02384048 | St.: AZ | Status: SUSPENDED |
|---|---|---|---|---|---|---|

**Home**

| Street Nbr. 919 | Dir. E | Street Name BROADWAY | Suffix RD | Dir. | Unit/Apt | City: MESA | State: AZ | ZIP: 85204 |
|---|---|---|---|---|---|---|---|---|

| Cell Phone: | Home Phone: | Email Address: |
|---|---|---|

| Race: WHITE | Sex: M | Ethnicity: NOT HISPANIC OR LATINO | SSN: ▓▓▓ | DOB: ▓▓▓ | Age Range: From: 32 To: 32 | Juvenile: No |
|---|---|---|---|---|---|---|

| Resident of Jurisdiction? NO | Height Range: From: 600 To: 600 | Weight Range: From: 215 To: 215 | Hair: BROWN - BRO | Eye Color: HAZEL - HAZ |
|---|---|---|---|---|

| Was consent to search the Person requested? No | Consent Given? | Person Search Conducted? Yes |
|---|---|---|
| Search Options: Incident to Arrest | | |

| Was this an Investigatory Detention? No | Arrested? Yes | ARS: WARRANT | Type: Booked |
|---|---|---|---|

**Work**

| Work Business Name: | Work Phone: |
|---|---|
| Street Nbr. | Dir. | Street Name: | Suffix: | Dir. | Unit/Apt | City: | State: | ZIP: |

| FBI#: | SID: | BK#: | Scanned Address: |
|---|---|---|---|

**NARRATIVE**

On Wednesday, 03-21-18 at about 1724 hours, I was traveling East on Broadway Road approaching the Loop 202, when I observed a traffic stop had been conducted by the Mesa Police Department. This stop had taken place on the North side of Broadway Road, East of 86th Street. I observed while their patrol vehicle was unmarked, the two officers conducting the stop were in full uniform. As I drove closer, I observed an officer was on both sides of the vehicle that had been stopped.

Just before I became parallel with the stopped vehicle, I observed a male passenger, who was later identified as Cole Spencer, bolt out of the front passenger side door, and both officers ran towards him. I lost visual of the officers and Cole as I passed by, and I had to conduct a U turn at the Loop 202. Upon driving up to the stop, I activated my MCSO issued body worn camera. I observed both Mesa Officers were on the ground with Cole, who was actively resisting. One of the officers called out to me and asked me to keep an eye on the driver, who was still behind the wheel of the stopped vehicle.

MCSO-0001

NARRATIVE

The driver complied with all my orders, and while I focused on him, I observed the two other officers were still struggling with Cole. I heard one of the officers deploy his Tazer during this incident.

Deputy Macklin S1742 soon arrived and assisted the two officers detain Cole, who still resisted. Sergeant Clark S1709 also arrived on scene, and leg chains were applied to Cole's ankles, as he continued to struggle.

Deputy Macklin, Sergeant Clark, and I remained on scene while several other Mesa Officers arrived, along with paramedics. Cole was soon transported to the Banner Baywood Hospital, which concluded our involvement in the matter.

I later conducted a records check through MCSO Communications, and I discovered Cole had valid warrant for his arrest issued by the Mesa City Court.

This report was taken for informational purposes only, nothing further at this time.

Attachment:

Description:

| HISTORY | | | | |
|---|---|---|---|---|
| Completed By: | S1554 | SHALL, K | On: 3/21/2018 | At: 20:07 |
| Reviewed By: | S1793 | DALLEY, E | On: 3/22/2018 | At: 01:12 |
| Approved By: | S1793 | DALLEY, E | On: 3/22/2018 | At: 01:12 |

MCSO-0002

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8 Cole Joseph Spencer,                           No. CV-20-00385-PHX-DGC (CDB)

9          Plaintiff,                            **DECLARATION OF DEPUTY K.**
                                                **SHALL (S1554) IN SUPPORT OF**
10 v.                                            **DEFENDANTS' MOTION FOR**
                                                **SUMMARY JUDGMENT**
11 Aaron Pew #1983; Jacob Rozema #15724;
12 Shall #1554; Macklin #1742; Mesa Police
   Department; City of Mesa; Maricopa County
13 Sheriff's Office; County of Maricopa;
14
15          Defendants.

16
17     I, Deputy K. Shall (S1554), have personal knowledge of the facts set forth in this
18
19 Declaration and certify pursuant to 28 U.S.C. § 1764 that the statements made herein are
20 true and correct.

21
   1. On Wednesday, March 21, 2018, I was traveling East on Broadway Road
22
23      approaching the Loop 202 interchange when I observed a traffic stop being
24      conducted by Mesa Police Department. [Incident Report # 18008163 dated March
25      21, 2018 ("IR") (Ex. 1), MCSO-0001-0002.]
26
27 2. I observed that there were 2 officers in full uniform, one on each side of the vehicle.
28      [IR at MCSO-0001.]

3. As I passed the vehicle, which was stopped on the North side of the roadway facing West, I observed the passenger of the car jump out and begin to run away from the vehicle. [IR at MCSO-0001.]

4. I observed the two officers give chase. [IR at MCSO-0001.]

5. I conducted a U-turn at the first opportunity and pulled back around to where the car was stopped. [IR at MCSO-0001.]

6. I exited his vehicle and activated my body-worn camera. [IR at MCSO-0001.]

7. I observed both officers on the ground with the suspect who was actively resisting their efforts to place him in custody. [IR at MCSO-0001.]

8. One of the officers called out to me asking me to keep an eye on the driver who was still seated behind the wheel of the stopped car. [IR at MCSO-0001.]

9. Deputy Macklin arrived on scene and began to assist the two Mesa officers to gain control of Plaintiff who continued to struggle. [IR at MCSO-0002.]

10. Deputy Macklin held Plaintiff's legs down while the Mesa officers applied leg chains to Plaintiff's legs. [IR at MCSO-0002; Shall Bodyworn Camera Video ("Shall Video") (Exh. 3), MCSO-0009, at 01:45 – 04:48]

11. I continued to monitor the driver of the vehicle. [Shall Video at 00:59 – 04:48]

12. Deputy Macklin did not deploy his Taser at any time during this interaction.

13. I did not deploy my Taser at any time during this interaction.

14. Deputy Macklin used only minimal force necessary to assist the Mesa Officers in gaining control of Plaintiff to place him under arrest.

15. While I was present at the scene, I observed the Mesa officers use only standard

tactical maneuvers to try to gain control of Plaintiff who was actively resisting arrest.

16. At the time I arrived on scene, I did not have any information about the reason the Mesa officers were detaining Plaintiff; I only knew that they were trying to detain him and he was actively resisting.

Executed on December 6th, 2020

Deputy Kevin Shall

1

2

3    **IN THE UNITED STATES DISTRICT COURT**

4    **FOR THE DISTRICT OF ARIZONA**

5    Cole Joseph Spencer,                    No. CV-20-00385-PHX-DGC (CDB)

6
           Plaintiff,
7                                            **DEFENDANT DEPUTY**
                                             **MACKLIN'S DECLARATION IN**
8    v.                                      **SUPPORT OF MOTION FOR**
                                             **SUMMARY JUDGMENT**
9    Aaron Pew #1983; Jacob Rozema #15724;
     Shall #1554; Macklin #1742; Mesa Police
10   Department; City of Mesa; Maricopa County
     Sheriff's Office; County of Maricopa;
11

12         Defendants.

13
           I, Deputy Macklin (S1742), have personal knowledge of the facts set forth in this
14

15   Declaration and certify pursuant to 28 U.S.C. § 1764 that the statements made herein are

16   true and correct.

17
     1. On Wednesday, March 21, 2018, I responded to a call for assistance at the Loop
18

19      202 interchange where a traffic stop was being conducted by Mesa Police

20      Department.

21
     2. When I arrived, Deputy Shall was standing by with the driver of the stopped vehicle
22

23      and both Mesa officers were on the ground with the suspect who was actively

24      resisting their efforts to detain him.

25
     3. I began to assist the two Mesa officers to gain control of the suspect who continued
26

27      to struggle by holding the suspect's legs down while the Mesa officers applied to

28      place him in handcuffs. [Incident Report # 18008163 dated March 21, 2018 ("IR")

(Ex. 1), MCSO-0001-0002.]

4. Once handcuffs were placed on the suspect he continued to kick me and attempt to flee; therefore, we placed leg chains on the suspect's legs. [IR at MCSO-0002.]

5. I did not deploy my Taser at any time during this interaction. Deputy Shall did not deploy his Taser at any time during this interaction.

6. I used only minimal force necessary to assist the Mesa Officers in gaining control of the suspect to place him under arrest.

7. I did not use any weapons to assist the Mesa officers; I only used open hand techniques and body weight to attempt to gain control of the suspect.

8. I observed the Mesa officers use only standard tactical maneuvers to try to gain control of the suspect.

9. Based on my training and experience, I believe the suspect was impaired by some type of substance due to his ability to avoid being detained while three officers struggled to keep control of him.

10. At the time I arrived on scene, I did not have any information about the reason the Mesa officers were detaining the suspect; I only knew that they were trying to detain him and he was actively resisting.

Executed on December _2_, 2020

_51742_

Deputy Justin Macklin

Telephonic

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cole Joseph Spencer, | ) NO. CV-20-00385-PHX-DGC(CDB) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Aaron Pew #1983; Jacob | ) |
| Rozema #15724; Shall #1554; | ) |
| Macklin #1742; Mesa Police | ) |
| Department; City of Mesa; | ) |
| Maricopa County Sheriff's | ) |
| Office; County of Maricopa, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

TELEPHONIC DEPOSITION OF COLE JOSEPH SPENCER
Florence, Arizona
September 18, 2020
10:15 a.m.

REPORTED BY:
PHYLLIS M. RISSKY, RPR
Certified Reporter
Certificate No. 50422

PREPARED FOR:
(ASCII/Certified Copy)

Telephonic

24

1      Q.    And you've been arrested before, right?

2      A.    Absolutely.

3      Q.    So you know how that goes.  You give them your

4   hands, they cuff you, they take you to jail?

5      A.    Right.  Absolutely.  But what they don't do is

6   bend your arm in a way that it's so bad that -- it's so

7   bad that your wrist is swollen, you know what I mean, as

8   it will show in the medical records.

9          So, yes, at that point I nudged him because he

10  called me by my real name.  He said CJ, and I hadn't given

11  him my real name yet.  So I knew that he knew who I was

12  and I knew that this was -- this is what they do.  They

13  have the SWAT team.  They don't wear body cameras.  And

14  they have them go do the dirty jobs.  They have them go do

15  special assignments and they assault citizens.  That's

16  what they do.

17     Q.    So you're saying you didn't shove him; you just

18  nudged him?

19     A.    Well, it's a shove, yes.  I committed aggravated

20  assault by shoving the officer.  And it's going to say

21  that in my change of plea hearing.  The factual basis, the

22  judge asks my attorney to enter -- to give a factual basis

23  of the event that took place.  My attorney said, "Okay.

24  Mr. Spencer shoved the officer and made a sudden

25  movement."  And that's when he hurt his hip.

Telephonic

36

1    they had ever taken --

2        Q.    Okay.

3        A.    -- which is useless to me.

4        Q.    Can we agree that Officer Shall did not use force

5    against you?

6        A.    I don't know.  I haven't seen all the videos.  I

7    have not seen all the videos.  I haven't seen all of his

8    videos.  But from Shall, from Shall, I can answer on

9    Shall, actually, that in the videos that I saw in the

10   amount of time I was allowed to see it, I did not see him

11   strike me.

12       Q.    How about Officer Macklin, the second officer

13   that arrived that was --

14       A.    I couldn't answer that.  I couldn't answer that.

15       Q.    Again, let me finish the question.  You're making

16   this job very difficult for our court reporter.

17       A.    All right.

18       Q.    In your complaint, you alleged that Officers

19   Macklin and Shall inflicted -- let's see.  I want to find

20   the exact language -- numerous punches, kicks,

21   strangulations, and electrocution.

22            You said that Officers Shall and Macklin did

23   those things to you?

24       A.    No.  You're reading it wrong.  Can you read it

25   back to me right now, the whole -- can you read the whole

Telephonic

69

```
 1   STATE OF ARIZONA      )
                           ) ss.
 2   COUNTY OF MARICOPA    )

 3        BE IT KNOWN that the foregoing proceedings were taken
     before me; that the witness before testifying was duly
 4   sworn by me to testify to the whole truth; that the
     foregoing pages are a full, true, and accurate record of
 5   the proceedings, all done to the best of my skill and
     ability; that the proceedings were taken down by me in
 6   shorthand and thereafter reduced to print under my
     direction.
 7
          I CERTIFY that I am in no way related to any of the
 8   parties hereto, nor am I in any way interested in the
     outcome hereof.
 9

10        Review and signature was waived.

11

12        I CERTIFY that I have complied with the ethical
     obligations set forth in ACJA 7-206(F)(3) and ACJA 7-206
13   J(1)(g)(1) and (2).

14        DATED at Scottsdale, Arizona, this 28th day of
     September 2020.
15

16                    /s/ Phyllis M. Rissky
                     PHYLLIS M. RISSKY, RPR
17                     Certified Reporter
                     Arizona CR No. 50422
18

19                     *  *  *  *  *

20        I CERTIFY that GRIFFIN GROUP INTERNATIONAL, has
     complied with the ethical obligations set forth in ACJA
21   7-206(J)(1)(g)(1) through (6).

22

23
                     _____
24                     GRIFFIN GROUP INTERNATIONAL
                        Registered Reporting Firm
25                      Arizona RRF No. R1005
```

1 ALLISTER ADEL
2 MARICOPA COUNTY ATTORNEY

3 By:    JENNIFER G. LOCKERBY (Bar No. 024041)
          lockerbj@mcao.maricopa.gov
4        CHRISTINE B. STUTZ (Bar No. 019664)
          stutzc@mcao.maricopa.gov
5        Deputy County Attorneys

6
7 CIVIL SERVICES DIVISION
  225 West Madison Street
8 Phoenix, Arizona 85003
  Telephone (602) 506-8541
9 Facsimile (602) 506-4317
  MCAO Firm No. 00032000
10 ca-civilmailbox@mcao.maricopa.gov

11 *Attorneys for Maricopa County Defendants*

12

13                **IN THE UNITED STATES DISTRICT COURT**

14                   **FOR THE DISTRICT OF ARIZONA**

15 Cole Joseph Spencer,                    No. CV-20-00385-PHX-DGC (CDB)

16           Plaintiff,

17 v.                                       **DEFENDANTS' STATEMENT OF
                                            FACTS IN SUPPORT OF MOTION
18 Aaron Pew #1983; Jacob Rozema #15724;    FOR SUMMARY JUDGMENT**
   Shall #1554; Macklin #1742; Mesa Police
19 Department; City of Mesa; Maricopa County
20 Sheriff's Office; County of Maricopa;

21
           Defendants.
22

23       Defendants Shall and Macklin set forth the following Statement of Facts in

24 support of their Motion for Summary Judgment:

25                        **STATEMENT OF FACTS**

26

27   1. On Wednesday, March 21, 2018, Deputy K. Shall (S1554) was traveling East on

28      Broadway Road approaching the Loop 202 interchange when he observed a traffic

stop being conducted by Mesa Police Department.  [Shall declaration ("Shall Dec.") (Exh. 2); Shall Body worn Camera Video ("Shall Video") (Exh. 3), MCSO-0009]

2.  Deputy Shall observed that there were 2 Mesa officers in full uniform, one on each side of the vehicle.  [Shall Dec. ¶ 2]

3.  As Deputy Shall passed the vehicle, which was stopped on the North side of the roadway facing West, he observed the passenger of the car jumped out and run. The two officers gave chase.  [Shall Dec. ¶ 3-4]

4.  Deputy Shall conducted a U-turn at the first opportunity and pulled back around to where the car was stopped.  [Shall Dec. ¶ 5]

5.  Deputy Shall exited his vehicle and activated his body-worn camera. [Shall Dec. ¶ 6]

6.  Deputy Shall observed both officers on the ground with the suspect who was actively resisting their efforts to place him in custody. [Shall Dec. ¶ 7]

7.  One of the Mesa officers called out to Deputy Shall asking him to keep an eye on the driver who was still seated behind the wheel of the stopped car. [Shall Dec. ¶ 8]

8.  Deputy Macklin arrived on scene and began to assist the two Mesa officers to gain control of Plaintiff who continued to struggle.  [Shall Dec. ¶ 9; Macklin Declaration ("Macklin Dec.") (Exh. 4) ¶ 3]

9.  Deputy Macklin held Plaintiff's legs down while the Mesa officers applied leg chains to Plaintiff's legs.  [Macklin Dec. ¶ 3]

10. Deputy Macklin did not deploy his Taser at any time during this interaction. Deputy Shall did not deploy his Taser at any time during this interaction. [Shall Dec. ¶ 13; Macklin Dec. ¶ 5]

11. Deputy Macklin used only minimal force necessary to assist the Mesa Officers in gaining control of Plaintiff to place him under arrest. Deputy Shall observed the Mesa officers use only standard tactical maneuvers to try to gain control of Plaintiff. [Macklin Dec. ¶ 6; Shall Dec. ¶ 15]

12. Deputy Macklin observed the Mesa officers use only standard tactical maneuvers to gain physical control over Plaintiff. [Macklin Dec. ¶ 8]

13. At the time Deputies Shall and Macklin arrived on the scene, they did not have any information about the reason the Mesa officers were detaining Plaintiff; they only knew that Mesa officers were trying to detain him and he was actively resisting. [Shall Dec. ¶ 16; Macklin Dec. ¶ 10]

14. On March 23, 2018, Plaintiff was booked into the Maricopa County Jail. [Booking photo  (Exh. 5), MCSO- 0013]

15. Plaintiff admitted that he shoved the officer which led to him being placed on the ground ("Well, it's a shove, yes. I committed aggravated assault by shoving the officer.") [Deposition of Cole Joseph Spencer dated September 18, 2020 ("Spencer Depo."), (Ex. 6), 24:17-25.]

16. Plaintiff admits that Deputies Shall and Macklin did not inflict any punches, kicks, strangulations, or electrocutions during the event in question. [Spencer Depo 36:18-24]

**RESPECTFULLY SUBMITTED** this 7th day of December 2020.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: */s/Jennifer G. Lockerby*
    JENNIFER G. LOCKERBY
    CHRISTINE B. STUTZ
    Deputy County Attorneys
    *Attorneys for Maricopa County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable David G. Campbell
UNITED STATES DISTRICT COURT

Honorable Camille D. Bibles
UNITED STATES DISTRICT COURT

ALEXANDER J. LINDVALL
CITY OF MESA ATTORNEY'S OFFICE
mesacityattorney@mesaaz.gov
*ATTORNEYS FOR DEFENDANTS PEW AND ROZEMA*

and copy MAILED to:

COLE JOSEPH SPENCER #226871
ASPC YUMA - DAKOTA UNIT
PO BOX 8909
SAN LUIS AZ  85349
*PLAINTIFF PRO SE*

/s/ *J. Christiansen*

S:\CIVIL\CIV\Matters\CJ\2020\Spencer v. Pew CJ2020-0066\Pleadings\MSJ\FINAL MSJ, SOF, Exhibits\SoF 120720.docx

1   ALLISTER ADEL
2   MARICOPA COUNTY ATTORNEY

3   By:    JENNIFER G. LOCKERBY (Bar No. 024041)
             lockerbj@mcao.maricopa.gov
4           CHRISTINE B. STUTZ (Bar No. 019664)
             stutzc@mcao.maricopa.gov
5           Deputy County Attorneys

6
7   CIVIL SERVICES DIVISION
    225 West Madison Street
8   Phoenix, Arizona 85003
    Telephone (602) 506-8541
9   Facsimile (602) 506-4317
    MCAO Firm No. 00032000
10  ca-civilmailbox@mcao.maricopa.gov

11  *Attorneys for Maricopa County Defendants*

12              **IN THE UNITED STATES DISTRICT COURT**

13              **FOR THE DISTRICT OF ARIZONA**

14

15  Cole Joseph Spencer,                    No. CV-20-00385-PHX-DGC (CDB)

16              Plaintiff,
                                            **DEFENDANTS SHALL AND**
17  v.                                      **MACKLIN'S MOTION FOR**
                                            **SUMMARY JUDGMENT**
18  Aaron Pew #1983; Jacob Rozema #15724;
19  Shall #1554; Macklin #1742; Mesa Police
    Department; City of Mesa; Maricopa County
20  Sheriff's Office; County of Maricopa;

21
22              Defendants.

23          Defendants, Deputies Shall #1554, and Macklin (#1742), through undersigned

24  counsel hereby submit their Motion for Summary Judgment pursuant to Rule 56 of the

25  Federal Rules of Civil Procedure and respectfully move this Court to enter summary

26  judgment in their favor because 1) Deputy Shall and Deputy Macklin used reasonable force

27

28

-1-

under the circumstances; and 2) Deputy Shall and Deputy Macklin are entitled to Qualified Immunity.

## I.      INTRODUCTION AND STATEMENT OF FACTS.

On Wednesday, March 21, 2018, Deputy K. Shall (S1554) was traveling East on Broadway Road approaching the Loop 202 interchange when he observed a traffic stop being conducted by Mesa Police Department. [DSOF ℙ 1] Deputy Shall observed that there were 2 officers in full uniform, one on each side of the vehicle.  [DSOF ℙ 2] As Deputy Shall passed the vehicle, which was stopped on the North side of the roadway facing West, he observed the passenger of the car jump out and started to run. [DSOF ℙ 3] The two Mesa Police officers gave chase. [DSOF ℙ 3] Deputy Shall conducted a U-turn at the first opportunity and pulled back around to where the car was stopped.  [DSOF ℙ 4] Deputy Shall exited his vehicle and activated his body-worn camera.  [DSOF ℙ 5] Deputy Shall observed both officers on the ground with the suspect who was actively resisting their efforts to place him in custody. [DSOF ℙ 6]

One of the Mesa officers called out to Deputy Shall asking him to keep an eye on the driver who was still seated behind the wheel of the stopped car. [DSOF ℙ 7] Deputy Macklin then arrived on scene and began to assist the two Mesa officers to gain control of Plaintiff who continued to struggle.  [DSOF ℙ 8] Deputy Macklin held Plaintiff's legs down while the Mesa officers applied leg chains to Plaintiff's legs.  [DSOF ℙ 9] Deputy Macklin did not deploy his Taser at any time during this interaction.  [DSOF ℙ 10] Deputy Shall did not deploy his Taser at any time during this interaction. [DSOF ℙ 10] Deputy Macklin used only minimal force (holding Plaintiff's legs with his body weight) that was

necessary to assist the Mesa Officers in gaining control of Plaintiff to place him under arrest. [DSOF ⁋ 11] Deputy Shall observed the Mesa officers use only standard tactical maneuvers to try to gain control of Plaintiff. [DSOF ⁋ 11]   Deputy Macklin observed the Mesa officers use only standard tactical maneuvers to gain physical control over Plaintiff. [DSOF ⁋ 12]

**Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

it must "come forward with specific facts showing that there is a genuine issue for trial."
*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal
citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and
determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,
477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw
all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited
materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**Qualified Immunity**

Qualified immunity affords limited protection to public officials faced with
liability under 42 U.S.C. § 1983, "'insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a reasonable person would have
known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)
(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
To determine whether qualified immunity applies in a given case, we must determine: (1)
whether a public official has violated a plaintiff's constitutionally protected right; and (2)
whether the particular right that the official has violated was clearly established at the time
of the violation. *Kirkpatrick v. Cty.* of Washoe, 843 F.3d 784, 788 (9th Cir. 2016) (en banc).
These two prongs of the analysis need not be considered in any particular order, and both
prongs must be satisfied for a plaintiff to overcome a qualified immunity defense. *See*
*Pearson*, 555 U.S. at 236, 129 S.Ct. 808.

**No Constitutional Violation - Excessive Force Under 42 U.S.C. § 1983**

Regarding the first prong of qualified immunity, the question is whether there was a constitutional violation as a result of the amount of force used against Plaintiff. A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham*, 490 U.S. at 395. This inquiry requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests." *Id.*

To determine whether a Fourth Amendment violation has occurred, the court must conduct a three-step analysis assessing: (1) the nature of force inflicted; (2) the governmental interests at stake, which involve factors such as the severity of the crime, the threat posed by the suspect, and whether the suspect is resisting arrest (the "*Graham* factors"); and (3) whether the force used was necessary. *Espinosa v. City & Cnty. of San Fran.*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Graham*, 490 U.S. at 396-97 and *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). At the summary judgment stage, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record," the question of whether or not an officer's actions were objectively reasonable under the Fourth Amendment is a "pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). But an officer is not entitled to summary judgment if the

evidence, viewed in the nonmovant's favor, could support a finding of excessive force. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Because the excessive force balancing test is "inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City and Cnty. of San Fran.*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks omitted); *see Smith*, 394 F.3d at 701 (excessive force cases often turn on credibility determinations, and the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom").

Deputy Shall did not use any physical force in the interaction with Plaintiff. [Exh. 3] Deputy Macklin used force that was objectively reasonable under the circumstances. Each of the *Graham* factors fall in favor of Defendants Shall and Macklin because the record establishes that the Mesa Officers were using standard tactical moves (knee strike, taser, open hand hold) to attempt to gain control of Plaintiff to place him in handcuffs. Additionally, Plaintiff was being arrested for an outstanding warrant[1] and he committed the felony offenses of resisting arrest and assault on a police officer upon the attempt to place him under arrest. And finally, Plaintiff was admittedly high on drugs and demonstrating super-human strength to the extent that it took three officers to prevent him from fleeing as Plaintiff continued to physically fight and resist the officers trying to arrest him. [Exhibit 3] The Ninth Circuit has repeatedly determined that officer safety is the most important consideration in use-of-force cases such as this. *Isayeva v. Sacramento Sheriff's*

---

[1] Keeping in mind that the MCSO officers did not have this information at the time. The only information they had was that two Mesa officers were attempting to place Plaintiff in custody and he was actively resisting. [DSOF ¶ 13]

*Dept.,* 872 F.3d 938, 947 (9th Cir. 2017); *George v. Morris,* 736 F.3d 820, 838 (9th Cir. 2013); *Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir. 2005).  Both the Mesa Officers and the Deputies who were assisting in the attempt to arrest Plaintiff were carrying firearms on their person and within the reach of Plaintiff. [Exhibit 3] This situation could have become dire at any moment given Plaintiff's erratic behavior.  While the use of force could be considered more than that amount of force used in a typical arrest, these facts were not typical given the level of impairment being exhibited by Plaintiff and his failure to respond to more typical uses of force.  These facts, when considered with the *Graham* factors and viewed in Plaintiff's favor, could not result in a jury reasonably finding that the use of force was excessively unconstitutional, and the deputies are therefore entitled to summary judgment.

**There is no "clearly established law" indicating that the use of force in this case was constitutionally excessive.**

Moving to the second prong of qualified immunity, a "clearly established" right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 (2015) (quoting *Reichle v. Howards*, 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, (2012)) In order to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074 (2011)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). The clearly established law must be "particularized" to the facts of the case.

*White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson*, 483 U.S. at 639).

When a law enforcement officer asserts the defense of qualified immunity, "the plaintiff bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. Cty. Of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). This means that the plaintiff must show that the law that was allegedly violated existed at the time of the claimed violation placing the constitutional issue "beyond debate," such that "every reasonable official would have understood . . . that the conduct [at issue] was a violation of a constitutional right." *Martinez v. City of Covis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

This requirement is "especially important in the Fourth Amendment context" because it is difficult to apply broad legal principles to more complex factual situations that officers are often confronted with. *Mullenix v. Luna*, 136 S. ct. 305, 308 (2015). Whether a right was "clearly established" is "solely a question of law for the judge." *Dunn v. Castro,* 621 F.3d 1196, 1199 (9th Cir. 2010).

In this case, specifically as the law pertains to Deputies Shall and Macklin, Plaintiff cannot show that "clearly established" rights were violated. Deputy Shall merely stood near the driver of the car to ensure his safety, and Deputy Macklin assisted the Mesa officers by holding Plaintiff's legs while he kicked and struggled to flee from officers.

Plaintiff put himself in this situation and escalated it through his noncompliance.  Deputies Shall and Macklin did not observe any action taken by the Mesa officers that exceeded standard tactical practices when taking an impaired resisting suspect into custody. Specifically, Deputies Shall and Macklin's actions and/or inactions when faced with this situation were reasonable under the circumstances and they are entitled to qualified immunity.

**Conclusion**

Qualified Immunity is meant to protect officers who are forced to make split-second decisions during a dicey situation. *Griggs v. Brewer,* 841 F.3d at 308, 316 (5th Cir. 2016).  Caselaw is particularly clear when it comes to officers who face impaired and physically resistant subjects.  For these reasons and the reasons provided above, Defendants Shall and Macklin did not violate Plaintiff's clearly established rights and thus summary judgment should be granted in their favor.

**RESPECTFULLY SUBMITTED** this 7th day of December 2020.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: */s/Jennifer G. Lockerby*
JENNIFER G. LOCKERBY
CHRISTINE B. STUTZ
Deputy County Attorneys
*Attorneys for Maricopa County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable David G. Campbell
UNITED STATES DISTRICT COURT

Honorable Camille D. Bibles
UNITED STATES DISTRICT COURT

ALEXANDER J. LINDVALL
CITY OF MESA ATTORNEY'S OFFICE
mesacityattorney@mesaaz.gov
*ATTORNEYS FOR DEFENDANTS PEW AND ROZEMA*

and copy MAILED to:

COLE JOSEPH SPENCER #226871
ASPC YUMA - DAKOTA UNIT
PO BOX 8909
SAN LUIS AZ  85349
*PLAINTIFF PRO SE*

/s/ *J. Christiansen*

S:\CIVIL\CIV\Matters\CJ\2020\Spencer v. Pew CJ2020-0066\Pleadings\MSJ\FINAL MSJ, SOF, Exhibits\z. MSJ draft with cites.docx

1  Alexander J. Lindvall (#034745)
   CITY OF MESA ATTORNEY'S OFFICE
2  P.O. Box 1466
   Mesa, Arizona 85211
3  Telephone: (480) 644-2343
   mesacityattorney@mesaaz.gov
4
   Attorneys for Defendants Pew and Rozema
5
                    UNITED STATES DISTRICT COURT
6
                        DISTRICT OF ARIZONA
7
   Cole Joseph Spencer,                   Case No. 2:20-cv-00385-DGC-CDB
8
                        Plaintiff,        **Statement of Facts**
9                                         **in Support of Summary Judgment**
        v.                                **on Behalf of Defendants Aaron Pew and**
10                                        **Jacob Rozema**
   Aaron Pew, et al.,
11
                        Defendants.
12

13         Pursuant to LRCiv 56.1(a), Defendants Aaron Pew and Jacob Rozema submit the following

14  statement of facts to support their motion for summary judgment.

15                    **DEFENDANTS' STATEMENT OF FACTS**

16         1.     Defendants Aaron Pew and Jacob Rozema are police officers employed by the City

17  of Mesa Police Department.  [Declaration of Officer Aaron Pew at 1 ¶ 2, attached hereto as

18  **Exhibit 1**; Declaration of Officer Jacob Rozema at 1 ¶ 2, attached hereto as **Exhibit 2**.]

19         2.     On March 21, 2018—the date of the incident giving rise to this lawsuit—both

20  Officer Pew and Officer Rozema were employed by the Mesa Police Department.  [**Exhibit 1** at

21  1 ¶ 2; **Exhibit 2** at 1 ¶ 2.]

22         3.     On March 21, 2018, Officer Aaron Pew and Officer Jacob Rozema pulled over a

23  vehicle for making an unsafe and illegal traffic maneuver.  [**Exhibit 1** at 1 ¶ 3.]  The driver of this

24  vehicle pulled out of a driveway in front of the officers' squad car, and Officer Pew had to slam

25  on his brakes to avoid hitting this vehicle.  [*Id.*]

1      4.      The plaintiff was the front-seat passenger in this vehicle. [**Exhibit 2** at 1 ¶ 4.]

2      5.      While speaking with the occupants of this vehicle, Officer Pew noticed that the

3   plaintiff appeared to be extremely nervous. [**Exhibit 1** at 1 ¶ 4.] He was heavily sweating and

4   seemed to be looking to a nearby residential area, as if he were looking for a potential escape

5   route. [*Id.*]

6      6.      During this traffic stop, Officer Rozema asked the plaintiff to identify himself.

7   [**Exhibit 2** at 1 ¶ 4.]

8      7.      The plaintiff identified himself to Officer Rozema as "Kenneth Cory." [*Id.*]

9      8.      An onsite records check, however, revealed that the plaintiff was lying about his

10  identity, and it was later revealed that his true identity was Cole Joseph Spencer. [*Id.*]

11     9.      Realizing that the plaintiff had given him a fake name, Officer Rozema asked the

12  plaintiff to exit the vehicle. [*Id.* at 1 ¶ 5.]

13     10.     Officer Rozema informed the plaintiff that he was being placed under arrest for

14  "false reporting" in violation of Arizona law. [*Id.*]

15     11.     When Officer Rozema attempted to handcuff the plaintiff, the plaintiff quickly

16  turned around, shoved Officer Rozema in the chest, and began to run away from the scene. [*Id.*

17  at 1 ¶ 6.]

18     12.     Officer Rozema quickly caught up to the plaintiff and tackled him to the ground.

19  [*Id.* at 1 ¶ 7.]

20     13.     The plaintiff then flipped over onto his back and swung his fist at Officer Rozema's

21  face several times and attempted to throw Officer Rozema off him. [*Id.*; **Exhibit 1** at 1 ¶ 6.]

22     14.     Officer Pew then ran around the vehicle to assist Officer Rozema, leaving the

23  vehicle's driver unsupervised. [**Exhibit 1** at 1 ¶ 6.]

24     15.     Officer Pew struck the plaintiff in the head in an attempt to subdue him, but this

25  strike had no effect on the plaintiff. [*Id.* at 1 ¶ 7.]

16.    Officer Pew and Officer Rozema then proceeded to wrestle with the plaintiff, attempting to get him in handcuffs, but the plaintiff continued to actively resist and fight with these officers.  [*Id.*]  Officer Pew and Officer Rozema repeatedly ordered the plaintiff to "give up his hands," but the plaintiff continued to fight with the officers to avoid being arrested.  [*Id.* at 1 ¶ 8; **Exhibit 2** at 1 ¶ 8.]

17.    After wrestling with the plaintiff for roughly a minute, Officer Pew again struck the plaintiff in the head, attempting to momentarily daze him so he could be handcuffed.  [**Exhibit 1** at 1 ¶ 9.]  The plaintiff, however, was again unphased and continued to aggressively fight with Officers Pew and Rozema.  [*Id.*]

18.    Officer Pew then tased the plaintiff in "probe" mode, hoping the electric shock from the taser would subdue the plaintiff for a moment so that he could be handcuffed.  [*Id.* at 1–2 ¶ 10.]

19.    This initial taser shock had no effect on the plaintiff.  [*Id.*]

20.    The plaintiff grabbed the taser's probes, ripped them off his body, threw them to the side, and continued wrestling with Officers Pew and Rozema.  [*Id.* at 2 ¶ 11.]

21.    Officer Pew then tased the plaintiff approximately three more times in "drive-stun" mode, but these shocks again had no discernable effect on the plaintiff, and he continued to fight with the officers.  [*Id.*]

22.    Around this time, two Maricopa County Sheriff's deputies arrived on the scene to assist Officers Pew and Rozema.  [**Exhibit 2** at 1 ¶ 10.]  One of the deputies helped Officers Pew and Rozema detain the plaintiff, while the other deputy kept an eye on the vehicle's driver.  [*Id.*]

23.    After approximately three-and-a-half minutes of wrestling with the plaintiff, these three officers were able to handcuff the plaintiff.  [**Exhibit 2** at 1 ¶ 11.]

24.    Both Officers Pew and Rozema were physically exhausted after this fight.  [*Id.* at 2 ¶ 12; **Exhibit 1** at 2 ¶ 13.]

25.     Given their experience in law enforcement, it seemed clear to both Officer Pew and Officer Rozema that the plaintiff was under the influence of powerful drugs. [**Exhibit 1** at 2 ¶ 14; **Exhibit 2** at 2 ¶ 13.] The plaintiff had an extremely high pain tolerance and what seemed like superhuman strength. [**Exhibit 1** at 2 ¶ 14; **Exhibit 2** at 2 ¶ 13.]

26.     It was later determined that the plaintiff was under the influence of methamphetamines and dimethyltryptamine (DMT). [**Exhibit 1** at 2 ¶ 14; **Exhibit 2** at 2 ¶ 13.]

27.     The plaintiff later admitted to Officer Rozema that he had smoked DMT about four minutes before this incident, which made him completely "out of it." [**Exhibit 2** at 2 ¶ 13.]

28.     Methamphetamines and heroin were later found in the plaintiff's backpack. [*Id.* at 2 ¶ 13.]

29.     The plaintiff subsequently pleaded guilty to second-degree burglary, third-degree burglary, and aggravated assault. [Sentencing Transcript (10/30/18) at 3–4, attached hereto as **Exhibit 3**; *see also* Pl. RFA Responses at 4 (admitting that he "committed aggravated assault against Officer Jacob Rozema" on the date of the incident).]

30.     The plaintiff is currently housed at the state prison in Florence, Arizona. [*See* Pl. FAC (Doc. 6) at 1.]

DATED this 26th day of August 2020.

CITY OF MESA ATTORNEY'S OFFICE

Alexander J. Lindvall
Assistant City Attorney

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 26, 2020, I served the attached document by mail on the

3

following, who is not a registered participant of the CM/ECF System:

4

Cole Joseph Spencer #226871

5

ASPC – Eyeman / Rynning Unit
4374 E. Butte Avenue

6

P.O. Box 3500
Florence, AZ  85132-3500

7

*Pro Se Plaintiff*

8

/s/ Toni Aglialoro

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## DECLARATION OF OFFICER AARON PEW

I, Aaron Pew, declare under penalty of perjury that the following is true and correct:

1.      This declaration is based on my personal knowledge relevant to the Arizona District Court case *Spencer v. Pew et al.* (2:20-cv-00385-DGC-CDB).

2.      I am currently a police officer employed by the Mesa Police Department. On March 21, 2018, I was a police officer employed by the Mesa Police Department. I have been employed by the Mesa Police Department for approximately six years.

3.      On March 21, 2018, Officer Jacob Rozema and I pulled over a vehicle for making an unsafe and illegal traffic maneuver. The driver of this vehicle pulled out of a driveway in front of my squad car, and I had to slam on my brakes to avoid hitting this vehicle.

4.      While speaking with the occupants of this vehicle, I noticed that the front-seat passenger appeared to be extremely nervous. He was heavily sweating and seemed to be looking to a nearby residential area, as if he were looking for a potential escape route. Officer Rozema then informed me that the front-seat passenger had given him a false name, which further caused me to believe that he might be a fight or flight risk.

5.      Officer Rozema then asked the passenger—later identified as Cole Spencer—to exit the vehicle and place his hands behind his back. When Officer Rozema attempted to place handcuffs on Mr. Spencer, Mr. Spencer shoved Officer Rozema in the chest and began to flee. Officer Rozema immediately tackled Mr. Spencer to the ground.

6.      I ran around the vehicle to assist Officer Rozema, leaving the vehicle's driver unsupervised. Our onsite records check revealed that the driver had an outstanding warrant for his arrest, so I was nervous about leaving this driver unsupervised. I was unaware whether the driver was armed or whether there were any weapons in the vehicle.

7.      When I approached Officer Rozema and Mr. Spencer, Mr. Spencer was on his back, facing upward at Officer Rozema. Mr. Spencer then punched at Officer Rozema's face, grabbed Officer Rozema's vest, and attempted to throw Officer Rozema off him. I then struck Mr. Spencer in the face in an attempt to subdue him. This seemed to have no effect on Mr. Spencer.

8.      Both Officer Rozema and I repeatedly ordered Mr. Spencer to give up his hands, but Mr. Spencer vigorously fought with us to avoid being handcuffed.

9.      After roughly a minute of wrestling with Mr. Spencer, I again struck Mr. Spencer in the head, attempting to momentarily daze him so he could be handcuffed. Mr. Spencer, however, was again unphased and continued to aggressively fight Officer Rozema and myself.

10.     I then tased Mr. Spencer in "probe" mode—meaning the taser shot two small, electrically charged probes onto Mr. Spencer. Both probes appeared to attach to Mr. Spencer's person. I was hoping that the electric shock from the taser would subdue Mr. Spencer for a moment

{00354956.1}                                  1

so that he could be handcuffed. I tased Mr. Spencer, but it did not affect Mr. Spencer in any way.

11.     Mr. Spencer then grabbed the taser's probes, ripped them off his body, threw them to the side, and continued wrestling with Officer Rozema and me. I then tased Mr. Spencer several times in "drive-stun" mode—meaning I activated the taser's electrical contact points and held the device to Mr. Spencer's body.  Again, this had no discernible effect on Mr. Spencer, and he continued to actively fight us.

12.     Around this time, two Maricopa County Sheriff's deputies arrived at the scene. One of the deputies helped Officer Rozema and I grapple with Mr. Spencer, while the other deputy supervised the vehicle's driver.

13.     After approximately three-and-a-half minutes of wrestling, we were able to handcuff and detain Mr. Spencer. I was completely exhausted after this fight.

14.     Given my experience as a law enforcement officer, it seemed clear to me that Mr. Spencer was under the influence of some sort of powerful drug.  Mr. Spencer had an extremely high pain tolerance and had what seemed like superhuman strength. It was later determined that Mr. Spencer was in fact under the influence of methamphetamines and dimethyltryptamine (DMT).

15.     Methamphetamines and heroin were found in Mr. Spencer's backpack.

16.     Mr. Spencer subsequently pled guilty to the aggravated assault of a police officer and was sentenced to a three-year prison sentence. From what I understand, he is currently housed at the state prison in Florence, Arizona.

17.     I have received training from the Mesa Police Department regarding proper use of force, restraining suspects, and custodial searches and interrogation.

18.     Given my training, experience, and recollection of this incident, I believe that the actions of the officers involved were reasonable given the circumstances.

Officer Aaron Pew
Badge #19183

## DECLARATION OF OFFICER JACOB ROZEMA

I, Jacob Rozema, declare under penalty of perjury that the following is true and correct:

1.        This declaration is based on my personal knowledge relevant to the Arizona District Court case *Spencer v. Pew et al.* (2:20-cv-00385-DGC-CDB).

2.        I am currently a police officer employed by the Mesa Police Department. On March 21, 2018, I was a police officer employed by the Mesa Police Department. I have been employed by the Mesa Police Department for approximately 15 years.

3.        On March 21, 2018, Officer Aaron Pew and I pulled over a vehicle for making an unsafe and illegal traffic maneuver. The driver of this vehicle pulled out a driveway in front of Officer Pew's squad car without yielding to our right-of-way, and Officer Pew had to slam on his brakes to avoid hitting this vehicle.

4.        During this traffic stop, I asked the vehicle's passenger to identify himself. The passenger identified himself as "Kenneth Cory." An onsite records check, however, revealed that the passenger was lying about his identity, and it was later revealed that the passenger's true identity was Cole Joseph Spencer.

5.        I then asked Mr. Spencer to exit the vehicle, and I attempted to place Mr. Spencer under arrest for "false reporting" in violation of A.R.S. § 13-2907.01.

6.        When I tried to place handcuffs on Mr. Spencer, he quickly turned around, shoved me in the chest, and began to run away from the scene.

7.        I quickly caught up to Mr. Spencer and tackled him to the ground. Mr. Spencer then flipped over onto his back and swiped his hands toward my face several times. To assist me, Officer Pew rushed over and struck Mr. Spencer in the face. Officer Pew's strike did not affect Mr. Spencer in any way.

8.        Officer Pew and I repeatedly ordered Mr. Spencer to surrender his hands so that he could be handcuffed, but Mr. Spencer actively resisted arrest and refused to give up his hands.

9.        After Officer Pew and I struggled with Mr. Spencer for roughly a minute, Officer Pew again struck Mr. Spencer in the head. Mr. Spencer again was not affected. I was physically exhausted at this point, but Mr. Spencer did not appear to be tired. Officer Pew then tased Mr. Spencer several times in both "probe" mode and "drive-stun" mode, but the taser also had no effect on Mr. Spencer whatsoever.

10.       During this struggle, two deputies from the Maricopa County Sheriff's Office arrived on the scene and began to help Officer Pew and I detain Mr. Spencer. One deputy helped Officer Pew and I wrestle Mr. Spencer, while the other kept an eye on the vehicle's driver. Even with three officers attempting to subdue Mr. Spencer, he was still able to fight us off and nearly got to his feet several times.

{00354965.1}

1

11.     After approximately three-and-a-half minutes, we were finally able to handcuff and detain Mr. Spencer.

12.     I was physically exhausted after this fight. My lungs burned and I was barely able to stand after the struggle ended. In my 15 years on the force, this was easily the worst fight I had ever been in. This altercation caused me to suffer a hip impingement, which still causes me problems to this day. I continue to have pain in my hip whenever it is abducted.

13.     Given my experience as a law enforcement officer, it seemed clear to me that Mr. Spencer was under the influence of a powerful drug. Mr. Spencer had an extremely high pain tolerance and had what seemed like superhuman strength. It was later determined that Mr. Spencer was in fact under the influence of methamphetamines and dimethyltryptamine (DMT). After reading Mr. Spencer his *Miranda* rights, Mr. Spencer informed me that he had smoked DMT about four minutes before this encounter, which made him completely "out of it." From what I understand, Mr. Spencer also reported to the responding EMTs that he had used methamphetamines as well.

14.     Methamphetamines and heroin were found in Mr. Spencer's backpack.

15.     Mr. Spencer subsequently pled guilty to the aggravated assault of a police officer and was sentenced to a three-year prison sentence. From what I understand, he is currently housed at the state prison in Florence, Arizona.

16.     I have received training from the Mesa Police Department regarding proper use of force, restraining suspects, and custodial searches and interrogation.

17.     Given my training, experience, and recollection of this incident, I believe that the actions of the officers involved were reasonable given the circumstances.

18.     An internal review of this incident concluded that "the force utilized was appropriate, necessary, and within Mesa Police Department policy."

Officer Jacob Rozema
Badge #15724

15724

08/13/20

{00354965.1}

2

ER 365

1

1      IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2           IN AND FOR THE COUNTY OF MARICOPA

3

4

5  STATE OF ARIZONA                )
                                   )
6        Plaintiff,                )
                                   )  CR2018-000814-001
7  v.                              )  CR2018-126694-001
                                   )  CR2012-114678-001
8  COLE JOSEPH SPENCER             )
                                   )
9        Defendant.                )
   ----------------------------------

10

11

12         REPORTER'S TRANSCRIPT OF PROCEEDINGS
                      SENTENCING

13
                      BEFORE:

14
            THE HONORABLE KATHLEEN H. MEAD

15              Judge of Superior Court

16

17

18                October 30, 2018
                  Phoenix, Arizona
19                   8:54 a.m.

20

21

22                        Vanessa Gartner, RPR
                          Certified Reporter
23                        Arizona No. 50601

24

25

2

1                    A P P E A R A N C E S

2

3

4    FOR THE STATE:

5              MS. TANYA ROUINTAN, ESQ.
               Maricopa County Attorney's Office
6

7

8

9    FOR THE DEFENDANT:

10             MR. MATTHEW FRANKLIN LEATHERS, ESQ.
               Matthew F. Leathers PC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                    P R O C E E D I N G S

2

3                    (Whereupon the proceedings commenced in

4  open court:)

5

6                    THE COURT:  This is the time set for

7  sentencing in CR2018-126694-001, CR2018-000814-001.  We

8  are here for disposition in CR2012-114678-001, all in the

9  matter of State of Arizona vs. Cole Joseph Spencer.

10                   Counsel?

11                   MS. ROUINTAN:  Good morning, Your Honor.

12 Tanya Rouintan on behalf of Mercedes Torres in all

13 matters.

14                   MR. LEATHERS:  Good morning.  Matthew

15 Leathers representing Cole Joseph Spencer in all matters

16 who is present in custody.  We are ready to proceed with

17 sentencing.

18                   THE COURT:  Sir, if you would state your

19 name?

20                   THE DEFENDANT:  Cole Joseph Spencer.

21                   THE COURT:  And your date of birth?

22                   THE DEFENDANT:  10/23/85.

23                   THE COURT:  Sir, you are before the Court

24 for Sentencing.  You pled guilty on September 27, 2018, in

25 the matter ending -964.  You pled guilty to Count 1,
```

4

1  Burglary in the Second-Degree, a Class 3 Non Dangerous

2  felony, with one prior felony conviction, occurring on

3  February 18, 2018, as well as to Count 2, Burglary in the

4  Third-Degree, a Class 4 Felony, occurring March 11, 2018.

5              In the matter ending -814, you pled guilty

6  to Count 1, Aggravated Assault, a Class 4 Non Dangerous

7  Felony with one prior felony conviction, occurring March

8  21, 2018.  You were found in automatic violation of your

9  probation.  You were -- in the matter ending -678, you

10 were on probation for Burglary, a Class 4 Felony,

11 occurring on September 20, 2011.

12             I have reviewed the plea agreements in this

13 case, the presentence report, the criminal history.  I did

14 the settlement conference as well, and reviewed

15 information provided to me for the settlement conference.

16             Does the State have anything to add?

17             MS. ROUINTAN:  Yes, Judge.  Ms. Torres would

18 request that the Court follow the terms of the plea

19 agreements in this case.  Regarding probation, she is

20 asking for at least four years of supervised probation.

21 She cited that the defendant has nine historical priors.

22             He was out of DOC only for two months when

23 he started committing crimes again.  These are victim

24 crimes; the crimes are escalating.  Most of his priors are

25 for burglary in the third-degree, and now he is going into

5

1   people's homes and committing aggravated assaults on

2   police officers.  Two of the officers are still recovering

3   from their injuries and are receiving testing for blood

4   exposure.  They wanted to see at least 10 years of DOC.

5              Given his criminal history, the escalation

6   of behavior, four years of probation is appropriate, once

7   he is released from his prison sentence, to ensure he does

8   remain law-abiding.

9              Regarding restitution, she would ask that

10  the Court order the amount that's included in the plea

11  agreement, but that you leave restitution open since there

12  are multiple victims in an aided case that they're still

13  awaiting documentation on.

14              THE COURT:  Thank you.

15              Counsel?

16              MR. LEATHERS:  Your Honor, I'm asking that

17  you follow the stipulations in the plea agreement.  I know

18  we had a settlement conference.  Regarding probation, I'm

19  asking that you place my client on two years of supervised

20  probation following his release from the Department of

21  Corrections.

22              Also, in the 2012 case, I'm asking that you

23  revoke his probation, run it concurrent with his DOC case

24  that way he will only have one probation tail when he gets

25  out.  It is clear that he has a substance abuse issue and

6

1  unfortunately, finds himself here.  But he understands

2  that he's gotta deal with the substance abuse issue and

3  make better choices.

4            THE COURT:  Sir, what would you like me to

5  know?

6            THE DEFENDANT:  I -- Can I have one second

7  to gather my thoughts?

8            THE COURT:  Sure.

9            THE DEFENDANT:  All right.  So when we went

10  to the settlement conference, I had asked my lawyer if I

11  could sever the cases in the assault case and he told me

12  that I could not sever the cases, that if I took one to

13  trial that I had to take all of them to trial.  I was

14  under the preconceived notion that I had to take all my

15  cases to trial, if I took -- so I just wanted to get that

16  confirmed from the Court?

17            THE COURT:  Well, it's the State that makes

18  the decision about whether they extend an offer.  In this

19  case on your plea agreement, they're contingent upon each

20  other.  So just reading your plea agreement, I would

21  assume that's the case but I don't know.

22            Counsel, is that correct, that the offers

23  are contingent upon accepting both of them?

24            MS. ROUINTAN:  That's my understanding.

25            THE DEFENDANT:  I think you might

7

1   misunderstand me.  I have been proclaiming my innocence on

2   the assault case.  I'm guilty on the other cases, of

3   course.  I was offered nine years for the burglaries and

4   three years for the assault.

5           THE COURT:  Here's the deal.  You took a

6   plea.

7           THE DEFENDANT:  Right.

8           THE COURT:  I found the factual basis.  But

9   if you're saying:  I don't want this plea and I want to go

10  to trial on everything right now --

11          THE DEFENDANT:  No, I don't want to go to

12  trial on everything, I just want to go to trial on the

13  assault.

14          THE COURT:  That's not your choice.  Your

15  choice right now is:  Go forward with these pleas or you

16  can withdraw from both pleas.  The State is the one who

17  are in charge of deciding whether or not they are going to

18  make offers.  They have made an offer that's contingent

19  upon each other.  You can do both of them or none of

20  them.  That's your choice.

21          Would you like to do both of them or none of

22  them?

23          MR. LEATHERS:  Just give me one moment.

24          THE COURT:  So you're indicating today that

25  you are not guilty of the offense that you previously

8

1  admitted to; is that correct?

2              THE DEFENDANT:  Yeah, I'm just --

3              THE COURT:  Just answer the question.  Are

4  you right now saying that you lied when you told me that

5  you were guilty of that offense; is that what you're

6  telling me?

7              THE DEFENDANT:  Essentially, yes.

8              THE COURT:  Okay.  And we're going to do a

9  brief Donald.

10             MS. ROUINTAN:  Judge, I apologize.  Would I

11 have an opportunity to reach out to the assigned attorney

12 to see if she wants to be present?

13             THE COURT:  That's a good idea.  We are

14 going to reset today's date, so you can think about

15 this.  I do want to do a brief Donald, however.

16             Sir, you are -- he is Category 3, correct?

17             MS. ROUINTAN:  Yes, Judge.

18             THE DEFENDANT:  Can I talk to my -- before

19 we do any of this, can I talk to him?  I've tried to call

20 him 10 times over the last month and I haven't -- I can't

21 even get ahold of him.  So I've made this decision

22 today --

23             MR. LEATHERS:  I'm advising you not to make

24 the decision.  I'm telling you that.

25             THE COURT:  Right.  And the State has a

1  right to -- hold on.

2              THE DEFENDANT:  I'm not having -- I don't

3  have any English -- I'm just --

4              THE COURT:  I'm going to ask you to stop for

5  a second, okay?  The State has requested that the assigned

6  attorney be present.  They can make -- in order for you to

7  withdraw from the plea, you have to convince me that there

8  was a manifest injustice.  The State can argue about that

9  and they can convince me that's not the case.

10             I was premature in saying I was going to

11 allow you to do it.  Quite frankly, mostly, if you want to

12 go to trial I'm going to let you.  I don't think it's

13 always the wisest move, and in your case it probably

14 isn't.

15             So we are not going to do anything today and

16 you can certainly talk to your attorney, but not right

17 now.  Right now, I'm just going to go over really quick

18 the -- what your exposure is.  And I know -- I think we

19 did this at the settlement conference but in the matter

20 ending -964, your most serious offense is a class 3

21 felony, and then you have three class 4 Felonies.

22             Counsel, he's a Category 3 in all of these,

23 right?

24             MR. LEATHERS:  Yes, and no less than the

25 presumptive.

1          THE COURT:  Because he was on probation.

2          So if you go to trial and lose, you must be

3    sentenced to a term in the Department of Corrections on

4    the class 3 felony between 11.25 years and 25 years.

5          On the class 4 felony, between 10 and 12 --

6    or 10 and 15 years.  You were on probation for a class 4

7    felony.  If you go to trial and lose, your probation will

8    be revoked and the law requires that your sentence be

9    stacked.  So on top of that 11.25 to 25 years, we have to

10   add the two and a half years or between one and 3.75 with

11   two and a half being the presumptive.

12         The State, they're in charge of whether or

13   not you get a plea or not.  And at least how I read this

14   plea, it's contingent upon each other.  So if you withdraw

15   from one, they are going to ask for -- for you to withdraw

16   from both.  And if I allow you to withdraw at all, that's

17   good, I just grant it because the plea agreement requires

18   that.

19         I would urge you to talk to your attorney.

20   Right now you have concurrent pleas for less than the

21   presumptive that you would get if you go to trial and

22   lose.  Whether or not you would actually get the

23   presumptive with the amounts of priors you have is a

24   question.  You might not get that because you have a lot

25   of priors and we have to stack the probation.

11

1                You've got a lot riding on this, which I

2    think might be why you took the plea in the first place.

3    But talk to your attorney.

4                MR. LEATHERS:  And then also, he had the

5    class 3 that he was on probation for that is no less than

6    15.75.

7                THE COURT:  Oh, I'm sorry.  That's right.  I

8    thought it was a class 4.  The probation matter was 3.5 to

9    8.75 with -- that's the presumptive.  I just missed that.

10   I thought it with was a class 4, I wasn't paying

11   attention.

12               So you're looking at, on your best day,

13   probably 15 years on one of your counts -- or plus the

14   probation.  That's not including the other count and it's

15   not taking into consideration stacking or aggravating.  So

16   make good choices and you can talk to your attorney.

17               MR. LEATHERS:  Judge, are we resetting this

18   or --

19               THE COURT:  I'm going to reset it any way

20   because the county attorney has the right to be here.  You

21   guys can talk now but we will go ahead and reset this.

22               THE BAILIFF:  How far do you want to reset

23   it?

24               THE COURT:  Not too far but before the

25   holidays if we can get it.

12

```
 1                    THE BAILIFF:  Do you want to send it out?
 2                    THE COURT:  I have to take care of it here
 3   before we decide that because you're right, the State has
 4   an opportunity to be here.
 5                    And I'm sorry.  We are not doing anything
 6   yet, we are waiting.  The State wants to be here, the
 7   asigned prosecutor.  So I have not made those decisions at
 8   this point.
 9                    THE CLERK:  So it's going to be a
10   sentencing?
11                    THE COURT:  It's a sentencing.
12                    Counsel, we are going to continue this to
13   November 14th.
14                    MR. LEATHERS:  What day of the week is that?
15                    THE BAILIFF:  On a Wednesday.
16                    MR. LEATHERS:  That's fine.
17                    THE COURT:  Okay.
18                    MR. LEATHERS:  Your Honor, can we recall it?
19   He is wishing to proceed to sentencing.
20                         (A recess was taken.)
21                    THE COURT:  We are back on the record in
22   CR2018-126694-001, CR2018-000814-001, CR2012-114678-001.
23   Both attorneys and Mr. Spencer are in court.
24                    Counsel, you had already spoken.  You had
25   earlier indicated you wished to withdraw from one of the
```

13

1   pleas, I told you that's not available.  You had an

2   opportunity to talk to your attorney about that.

3              Sir, how would you like to proceed?

4              THE DEFENDANT:  Let's go.

5              THE COURT:  Okay.  You're -- so you entered

6   a plea in one of the matters and gave me a factual basis

7   at that time.  You're not disputing that; is that correct?

8              THE DEFENDANT:  No.

9              THE COURT:  Okay.  I have reviewed the plea

10  agreement, the presentence report, the criminal history.

11  This is an unusual case where I have one sentence is a

12  aggravated sentence to nine years; so I have to make

13  aggravating factors.  The other is a mitigated sentence to

14  three years.  Not sure why it was done that way, but I am

15  going to proceed.

16              In the matter ending -964, the stipulation

17  is that the defendant is sentenced to a slightly

18  aggravated term of nine years in the Department of

19  Corrections, it is so ordered, with credit for 153 days

20  already served.  It is ordered dismissing the allegation

21  that the defendant was on probation, his additional

22  priors, and Counts 3, 4 and 5 of that indictment.

23              Sir, you are not to have contact with the

24  victim.  You are not to return to the scene of the crime.

25  You must submit to DNA testing and pay the cost of that

14

1   testing.  There is a stipulation to restitution in the

2   amount of $1,000.43 to the benefit of the victim, Danny

3   Mecham.

4              Counsel, the State needs to get information

5   to my clerk about that victim so that the order can

6   reflect all the information.  I'm not going to ask for it

7   on the record.

8              MS. ROUINTAN:  Yes, Judge.

9              THE COURT:  And that's to be paid at a rate

10   and amount to be determined by the Department of

11   Corrections.

12              As -- in that matter, as aggravating

13   factors:  The impact on the victim, the number of victims,

14   and the fact that the defendant has priors of the same

15   nature.

16              Mitigating factors:  He accepted

17   responsibility and it does appear that substance abuse has

18   contributed to his criminal history.  And he has a

19   probation tail.

20              When I'm balancing them for -- those

21   offenses which are similar to the ones that he has

22   previously been convicted of, I am going to impose the

23   aggravated term of nine years.

24              As to Count 2, the stipulation is that the

25   defendant be placed on probation upon his release from the

15

1  Department of Corrections, I believe that's

2  appropriate.  It is ordered suspending the imposition of

3  sentence and placing the defendant on three years of

4  supervised probation beginning upon his release from the

5  Department of Corrections.

6  As to the matter ending -814, there is a

7  stipulation that the defendant be sentenced to a mitigated

8  term in the Department of Corrections.  I find as

9  mitigating factors versus his out-of-character for the

10  defendant, that's one of them and I think that's why you

11  got the mitigated term.  You accepted responsibility for

12  your actions, there is a probation tail, and you have

13  substance abuse issues that have contributed to your

14  criminal history.

15  So I am going to impose the mitigated

16  sentence of three years with credit for -- is it 227 days,

17  Counsel?

18  MR. LEATHERS:  Yes.

19  THE COURT:  227 days already served.

20  It is ordered that the two DOC sentences be

21  served concurrently with each other.

22  Sir, you must submit to disease testing and

23  provide results to the victims.

24  As to the probation matter, the defendant

25  was on probation for Burglary, a Class 4 Felony, committed

16

1    September 20, 2011.  It is ordered revoking probation,

2    sentencing him to the presumptive term of two and a half

3    years.  And that one is actually the one with credit for

4    277 days, the other one -- 227; the other one was 177.

5    And that sentence shall also be served concurrently at the

6    same time as the matters in which he has just been ordered

7    into DOC.

8                   Sir, if you disagree with what I have done,

9    you have 90 days from today to file a petition for post

10   conviction relief.  If you fail to do so, you lose that

11   right.  If you could not afford it, an attorney, records

12   and transcripts would be provided to you free of cost for

13   that process.

14                   And if there's nothing further, this matter

15   is adjourned.  Good luck.

16                   THE DEFENDANT:  All right.  Thank you.

17                   (Whereupon proceedings concluded.)

18

19

20

21

22

23

24

25

17

1                        REPORTER'S CERTIFICATION

2

3

4            I, VANESSA GARTNER, RPR, do hereby certify that

5    the foregoing pages constitute a true and accurate

6    transcript of my stenographic notes, taken at said time

7    and place, all done to the best of my skill and ability.

8            DATED this 5th day of July, 2020.

9

10

11

12                                    _____/s/_____
                                      Vanessa Gartner, RPR
13                                    Certified Reporter
                                      No. 50601
14

15

16

17

18

19

20

21

22

23

24

25

1   Alexander J. Lindvall (#034745)
    CITY OF MESA ATTORNEY'S OFFICE
2   P.O. Box 1466
    Mesa, Arizona 85211
3   Telephone: (480) 644-2343
    mesacityattorney@mesaaz.gov
4
    Attorneys for Defendants Pew and Rozema
5
                      **UNITED STATES DISTRICT COURT**
6
                            **DISTRICT OF ARIZONA**
7
    Cole Joseph Spencer,                  Case No. 2:20-cv-00385-DGC-CDB
8
                          Plaintiff,      **Motion for Summary Judgment
9                                         on Behalf of Defendants Aaron Pew and
       v.                                 Jacob Rozema**
10
    Aaron Pew et al.,                     Oral Argument Requested
11
                          Defendants.
12

13          This is a § 1983 excessive-force case brought by a prisoner.  Officers Pew and Rozema are

14   entitled to summary judgment because they did not violate any of the plaintiff's clearly established

15   rights.  As such, they are entitled to qualified immunity and must be dismissed from this case.

16   **A.    DEFENDANTS' STATEMENT OF FACTS**

17          Defendants Aaron Pew and Jacob Rozema are police officers employed by the City of

18   Mesa Police Department.  [SOF ¶ 1.]  On March 21, 2018, Officer Aaron Pew and Officer Jacob

19   Rozema pulled over a vehicle for making an unsafe and illegal traffic maneuver.  [SOF ¶ 3.]  The

20   driver of this vehicle pulled out of a driveway in front of the officers' squad car, and Officer Pew

21   had to slam on his brakes to avoid hitting this vehicle.  [SOF ¶ 3.]  The plaintiff was the front-seat

22   passenger in this vehicle.  [SOF ¶ 4.]

23          While speaking with the occupants of this vehicle, Officer Pew noticed that the plaintiff

24   appeared to be extremely nervous.  [SOF ¶ 5.]  He was heavily sweating and seemed to be looking

25   to a nearby residential area, as if he were looking for a potential escape route.  [SOF ¶ 5.]  Officer

Rozema asked the plaintiff to identify himself.  [SOF ¶ 6.]  The plaintiff identified himself to Officer Rozema as "Kenneth Cory."  [SOF ¶ 7.]  An onsite records check, however, revealed that the plaintiff was lying about his identity, and it was later revealed that his true identity was Cole Joseph Spencer.  [SOF ¶ 8.]  Realizing that the plaintiff had given him a fake name, Officer Rozema asked the plaintiff to exit the vehicle.  [SOF ¶ 9.]  Officer Rozema informed the plaintiff that he was being placed under arrest for "false reporting" in violation of Arizona law.  [SOF ¶ 10.]

When Officer Rozema attempted to handcuff the plaintiff, the plaintiff quickly turned around, shoved Officer Rozema in the chest, and began to run away from the scene.  [SOF ¶ 11.] Officer Rozema quickly caught up to the plaintiff and tackled him to the ground.  [SOF ¶ 12.] The plaintiff then flipped over onto his back and swung his fist at Officer Rozema's face several times and attempted to throw Officer Rozema off him.  [SOF ¶ 13.]  Officer Pew then ran around the vehicle to assist Officer Rozema, leaving the vehicle's driver unsupervised.  [SOF ¶ 14.]

Officer Pew and Officer Rozema then proceeded to wrestle with the plaintiff, attempting to get him in handcuffs, but the plaintiff continued to actively resist and fight with these officers. [SOF ¶ 16.]  Officer Pew and Officer Rozema repeatedly ordered the plaintiff to "give up his hands," but the plaintiff continued to fight with the officers to avoid being arrested.  [SOF ¶ 16.] After wrestling with the plaintiff for roughly a minute, Officer Pew struck the plaintiff in the head, attempting to momentarily daze him so he could be handcuffed.  [SOF ¶ 17.]  The plaintiff, however, was again unphased and continued to aggressively fight with Officers Pew and Rozema. [SOF ¶ 17.]

Officer Pew then tased the plaintiff in "probe" mode, hoping the electric shock from the taser would subdue the plaintiff for a moment so that he could be handcuffed.  [SOF ¶ 18.]  This initial taser shock had no effect on the plaintiff.  [SOF ¶ 19.]  The plaintiff grabbed the taser's probes, ripped them off his body, threw them aside, and continued wrestling with Officers Pew

1    and Rozema. [SOF ¶ 20.] Officer Pew then tased the plaintiff approximately three more times in

2    "drive-stun" mode, but these shocks again had no discernable effect on the plaintiff, and he

3    continued to fight with the officers. [SOF ¶ 21.]

4         Around this time, two Maricopa County Sheriff's deputies arrived on the scene to assist

5    Officers Pew and Rozema. [SOF ¶ 22.] One of the deputies helped Officers Pew and Rozema

6    detain the plaintiff, while the other deputy kept an eye on the vehicle's driver. [SOF ¶ 22.] After

7    approximately three-and-a-half minutes of wrestling with the plaintiff, these three officers were

8    able to handcuff the plaintiff. [SOF ¶ 23.] Both Officers Pew and Rozema were physically

9    exhausted after this fight. [SOF ¶ 24.]

10        Given their experience in law enforcement, it seemed clear to both Officer Pew and Officer

11   Rozema that the plaintiff was under the influence of powerful drugs. [SOF ¶ 25.] The plaintiff

12   had an extremely high pain tolerance and what seemed like superhuman strength. [SOF ¶ 25.] It

13   was later determined that the plaintiff was under the influence of methamphetamines and

14   dimethyltryptamine (DMT). [SOF ¶ 26.] The plaintiff later admitted to Officer Rozema that he

15   had smoked DMT about four minutes before this incident, which made him completely "out of

16   it." [SOF ¶ 27.]

17        Methamphetamines and heroin were later found in the plaintiff's backpack. [SOF ¶ 28.]

18   The plaintiff subsequently pleaded guilty to second-degree burglary, third-degree burglary, and

19   aggravated assault. [SOF ¶ 29.] In his RFA responses, the plaintiff admitted that he committed

20   aggravated assault against Officer Jacob Rozema" on the date of the incident. [SOF ¶ 29.] He is

21   currently an inmate at the state prison in Florence, Arizona. [SOF ¶ 30.]

22   **B.**    **QUALIFIED IMMUNITY**

23        There are two issues in a case involving qualified immunity: (1) whether the facts show

24   the violation of a constitutional right; and (2) whether that right was "clearly established" at the

25   time of the violation. *Pearson v. Callaghan*, 555 U.S. 223, 232 (2009); *Lal v. California*, 746

1  F.3d 1112, 1116 (9th Cir. 2014).   As shown below, Officers Pew and Rozema are entitled to

2  qualified immunity because they did not violate any of the plaintiff's clearly established rights.

3         **1.**    **Officers Pew's and Officer Rozema's use of force was objectively reasonable**

4                **under the circumstances.**

5        The *Graham* factors all tip in the officers' favor because the plaintiff, while high on mind-

6  altering drugs, was physically fighting with officers to avoid being arrested for a serious crime.

7  Additionally, the available caselaw shows that Officers Pew and Rozema acted reasonably,

8  because the courts have held that more serious uses of force do not offend the Fourth Amendment,

9  especially when the officers are dealing with a suspect who is intoxicated and uncooperative.

10              **a.**    **The three *Graham* factors all tip in the officers' favor.**

11        The ultimate touchstone in a use-of-force case—as in all Fourth Amendment cases—is

12  whether the officers' conduct was objectively unreasonable under the circumstances.  *Scott v.*

13  *Harris*, 550 U.S. 372, 383 (2007); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)

14  ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'"). "The reasonableness

15  of a particular use of force must be judged from the perspective of a reasonable officer at the

16  scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396

17  (1989).   And "the calculus of reasonableness must embody allowance for the fact that police

18  officers are often forced to make split-second judgments—in circumstances that are tense,

19  uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

20  situation." *Id.* at 396–97.

21        As the Ninth Circuit has explained, "an officer need not have perfect judgment, nor must

22  he resort only to the least amount of force necessary to accomplish legitimate law enforcement

23  objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). "Whether officers

24  hypothetically could have used less painful, less injurious, or more effective force in executing an

25  arrest is simply not the issue." *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994).

Rather, the only germane issue is whether the officers' conduct was unconstitutionally excessive given the "range of force" that may have been reasonable under the circumstances. *Bryan*, 630 F.3d at 818.

When determining whether an officer's use of force was "excessive" or "unreasonable," the courts look to three main factors: (1) the seriousness of the crime at issue; (2) whether the suspect posed an immediate threat to the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. The Ninth Circuit has also directed the courts to consider the suspect's apparent intoxication when analyzing excessive-force cases. *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014 (9th Cir. 2002); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that issues of officer safety have "even greater salience" when a suspect is intoxicated).

All three *Graham* factors tip in the officers' favor. First, when the officers resorted to physical force, the plaintiff was being arrested for a serious crime. Although the plaintiff was initially arrested for a relatively minor crime (false reporting), once he shoved and struck Officer Rozema, he was being arrested for aggravated assault and resisting arrest. These are both serious felonies, and the officers were justified in using physical force to restrain the plaintiff.

Second, the plaintiff posed a risk of harm to the officers. The plaintiff was actively trying to harm the arresting officers. As Officer Pew described in his report: "It was obvious to me [that the plaintiff] was willing to do anything, including active violence toward a police officer[,] to avoid arrest." The plaintiff, as the initial aggressor, struck Officer Rozema in the face and proceeded to wrestle and fight the officers for roughly three-and-a-half minutes. During this three-and-a-half-minute wrestling match—as with most officer-involved altercations—the officers' service weapons were in the open and within the suspect's reach. The Ninth Circuit has repeatedly stated that officer safety is the "most important" consideration in use-of-force cases. *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 947 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829,

838 (9th Cir. 2013); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). This altercation had the potential to turn deadly at any moment, especially because the plaintiff was exhibiting erratic, violent, and unpredictable behavior. As such, these officers were justified in using physical force to protect themselves and others.

Third, the plaintiff was actively resisting arrest and attempting to flee. Even before the officers attempted to place the plaintiff under arrest, he was sweaty, nervous, and appeared to be looking at the area nearby to plan out his escape path. And once the officers attempted to handcuff the plaintiff, he struck his arresting officer and began to run toward the nearby residential area. Additionally, because of the plaintiff's drug use, he was extremely difficult to detain. In his report, Officer Pew stated that the plaintiff "was not feeling any pain" and seemed to have "superhuman strength." Given the plaintiff's drug-fueled rage and increased pain tolerance, the officers were justified in using a greater-than-normal level of force to subdue the plaintiff. The officers were not acting out of malice toward the plaintiff, but rather were using the force necessary to subdue someone who was "out if it" on hallucinogens.

Because all three *Graham* factors tip in the officers' favor, they were constitutionally justified in using force against the plaintiff. And because the plaintiff was "out of it" on mind-altering drugs—thereby increasing his strength and pain tolerance—the officers were justified in using a greater-than-normal amount of force to detain the plaintiff. Because the officers' use of force was reasonable under *Graham*, they did not violate the plaintiff's Fourth Amendment rights and are entitled to summary judgment.

        **b.**    **Existing caselaw favors the officers.**

The available caselaw further shows that the officers' use of force was reasonable in this case. *See, e.g.*, *Beaver v. City of Federal Way*, 301 Fed. Appx. 704, 705 (9th Cir. 2008) (finding that officers acted reasonably when they tased an intoxicated, resistive suspect five times); *Cadena v. Ray*, 728 Fed. Appx. 293, 295–96 (5th Cir. 2018) (finding it was reasonable for three officers

to body-slam, wrestle, and tase a suspect because the suspect was intoxicated and belligerent); *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (holding that it was reasonable for an officer to use deadly force against a suspect because the suspect was high on PCP, initiated a physical altercation with the officer, and appeared to reach toward the officer's gun).

In *Beaver*, 301 Fed. Appx. at 705, for example, the Ninth Circuit found that officers acted reasonably when they tased a noncooperative suspect five times. There, a suspect was fleeing a residential burglary. *Id.* When officers eventually caught the suspect, they tackled him to the ground, but the suspect refused to give up his hands, largely because he was "highly intoxicated on drugs." *Id.* at 705–06. The officers then proceeded to tase the suspect until he gave up his hands. *Id.* The suspect subsequently sued the officers under § 1983, arguing they had used excessive force during his arrest. *Id.* at 705. The district court granted the officers' motion for summary judgment. *Id.* On appeal, the Ninth Circuit affirmed, holding that the officers were justified in using the taser because the suspect had committed a serious crime, attempted to flee, and was noncompliant once caught. *Id.*

Similarly, in *Cadena*, 728 Fed. Appx. at 295–96, the Fifth Circuit found that three officers acted reasonably when they body-slammed, wrestled, kneed, and tased a suspect because the suspect was intoxicated and acting belligerent. In *Cadena*, three officers were attempting to arrest a suspect for public intoxication. *Id.* at 294. The suspect refused several lawful orders, was shouting loudly, and tried to run away from the arresting officers. *Id.* To effectuate the arrest, one of the officers pushed the suspect against a wall and wrestled him to the ground. *Id.* Once on the ground, the suspect refused to give up his hands, leading the other officers to repeatedly knee and tase him. *Id.* at 294–95. The plaintiff subsequently brought a § 1983 excessive-force claim against these officers. *Id.* at 295.

The district court granted the officers' motion for summary judgment. *Id.* On appeal, the Fifth Circuit affirmed, holding that the officers' greater-than-normal use of force did not violate

1   the Fourth Amendment.  *Id.* at 296.  Because the suspect refused to place his hands behind his back

2   and actively resisted the officers, the court found that he posed an immediate threat to the officers'

3   safety.  *Id.*  Additionally, the suspect's "intoxicated state and erratic behavior gave the [o]fficers

4   further reason to believe he was a threat."  *Id.*  Given the suspect's belligerent behavior, the court

5   concluded that the officers' use of force "corresponded to [the suspect's] level of resistance, and

6   was thus reasonable."  *Id.* at 297.

7        The Third Circuit also recently found that an officer acted reasonably when he used deadly

8   force against a suspect who was high on PCP and initiated a street-fight with the officer.  *Johnson*,

9   837 F.3d at 350.  In *Johnson*, an officer came across a confused, angry man who appeared to be

10  high on drugs.  *Id.* at 346.  When the officer approached the suspect, he began running toward the

11  officer, shouting.  *Id.*  The officer tased the suspect several times, but it did not have any effect.

12  *Id.*  A "violent struggle ensued," where the officer struck the suspect in the head multiple times,

13  threw him against a parked car, and wrestled him to the ground.  *Id.*  As they wrestled on the

14  ground, the officer believed the suspect was reaching for his gun.  *Id.*  The officer then drew his

15  gun and shot the suspect twice in the chest.  *Id.*  The suspect was not phased and continued

16  struggling with the officer.  *Id.*  The officer then shot the suspect again, but the suspect kept

17  fighting.  *Id.*  The officer then shot the suspect for a fourth time, killing him.  *Id.*

18       The district court subsequently granted the officer's motion for summary judgment, finding

19  that he acted reasonably given the circumstances.  *Id.* at 348.  On appeal, the Third Circuit affirmed,

20  holding that the officer was justified in using deadly force against the suspect because the suspect

21  started a drug-fueled brawl with the officer, causing the officer to reasonably fear for his safety.

22  *Id.* at 350.  The *Johnson* Court believed the Fourth Amendment issue was "straightforward"

23  because of the "extraordinary" circumstances the officer faced.  *Id.* at 352, 353.  Because the

24  suspect (i) initiated the altercation, (ii) exhibited "extraordinary violence," and (iii) was "unfazed"

25  by the officer's taser, the officer was justified in using deadly force—because the Fourth

Amendment "does not oblige an officer to passively endure a life-threatening physical assault, regardless of the assailant's mental state." *Id.* at 353. To borrow the *Cadena* Court's phrasing: the officer's use of force was reasonable because it "corresponded to [the suspect's] level of resistance." *Cadena*, 728 Fed. Appx. at 297.

*Beaver*, *Cadena*, and *Johnson* show that Officer Pew and Officer Rozema acted reasonably in this case. In each of these cases, the officers were justified in using serious (sometimes even deadly) force because their suspects were intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive towards the arresting officers. The same is true in this case. As soon as the plaintiff realized he was going to be arrested, he assaulted the arresting officer and attempted to flee the scene. And like the officers in the cases above, Officer Pew's and Officer Rozema's force always "corresponded to [their suspect's] level of resistance," meaning their actions fell within the bounds of the Fourth Amendment. *Cadena*, 728 Fed. Appx. at 297. There are no meaningful differences between this case and the cases cited above. In those cases, the officers were awarded summary judgment. Accordingly, in this case, Officers Pew and Rozema should be awarded summary judgment as well.

\* \* \* \*

In short, the plaintiff, while high on mind-altering drugs, was physically fighting officers to avoid being arrested for a serious crime. This sort of situation checks all three *Graham* boxes; and Officers Pew and Rozema were justified in using serious physical force to detain the plaintiff. Although the force seen in this case might be unreasonable under normal circumstances, these officers were not faced with normal circumstances. Rather, they faced a violent, drug-fueled suspect with a heightened pain tolerance who started a brawl with his arresting officers. The officers used the force necessary to apprehend the plaintiff given the circumstances, and their force always "corresponded to [the plaintiff's] level of resistance." *Cadena*, 728 Fed. Appx. at 297. This is all the Fourth Amendment requires.

1   **2.      There is no "clearly established" law showing that the officers' force was**

2   **unconstitutionally excessive.**

3   Once an officer raises the defense of qualified immunity, "the plaintiff bears the burden of

4   proof regarding whether the right is clearly established." *DiRuzza v. Cty. of Tehama*, 206 F.3d

5   1304, 1313 (9th Cir. 2000). In this regard, the plaintiff is required to show that the law that existed

6   at the time of the alleged violation had placed the relevant constitutional issue "beyond debate,"

7   such that "every reasonable official would have understood…that the conduct [at issue] was a

8   violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir.

9   2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

10   The specificity of precedent is "especially important in the Fourth Amendment context"

11   because it is difficult for officers to apply broad, ethereal principles to the complicated factual

12   situations they often confront. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also Morrow v.*

13   *Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) ("[O]vercoming qualified immunity is especially

14   difficult in excessive-force cases."). "Use of excessive force," in other words, "is an area of the

15   law 'in which the result depends very much on the facts of each case,' and thus police officers are

16   entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at

17   issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 136 S. Ct. at 309).

18   Whether a right was "clearly established" is "solely a question of law for the judge."[1] *Dunn v.*

19   *Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

20   In this case, the plaintiff cannot show that Officers Pew and Rozema violated any of his

21   "clearly established" rights. This case has two aspects that differentiate it from a typical police-

22   suspect interaction: (i) the plaintiff was "out of it" on hallucinogenic drugs, which apparently made

23   him irrational, unusually strong, and near-impervious to pain; and (ii) the plaintiff initiated a brawl

24

25   [1] The Supreme Court has also admonished the lower courts to decide issues of qualified immunity at "the earliest possible stage in litigation" to keep court costs down and to ensure that officers aren't forced to respond to unnecessary discovery. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

by shoving and then punching his arresting officer.  An extensive search of federal caselaw did not reveal any precedent favorable to the plaintiff that "squarely governs" this case.  In fact, as shown above, the available caselaw holds that officers should be given extensive leeway when dealing with intoxicated, unpredictable suspects, and that these officers should almost always be awarded immunity.  *See*, *e.g.*, *Cadena*, 728 Fed. Appx. at 295–96; *Beaver*, 301 Fed. Appx. at 705; *Johnson*, 837 F.3d at 350; *see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that issues of officer safety have "even greater salience" when the suspect is intoxicated).

Likewise, in *Griggs v. Brewer*, 841 F.3d 308, 314–15 (5th Cir. 2016), the Fifth Circuit awarded immunity to an officer who punched, kicked, and tackled a noncooperative drunk-driving suspect because the suspect was noncompliant and resisted arrest.  In *Griggs*, the officer stopped a suspect for running a red light.  *Id.* at 311.  The officer smelled alcohol on the suspect and believed that he was intoxicated.  *Id.*  The officer eventually decided to arrest the suspect for drunk driving after he failed a sobriety test.  *Id.*  When the officer attempted to handcuff the suspect, however, the suspect "lurched to the side" and would not give up his hands.  *Id.*  The officer immediately "performed a 'takedown' maneuver and threw [the suspect] face-down onto the [ground] and landed on top of him." *Id.*  When the suspect still refused to give up his hands, the officer "punched [the suspect] with a closed fist to the back of the head" several times.  *Id.*  The suspect subsequently sued the officer for excessive force.  *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity.  *Id.*  On appeal, the Fifth Circuit affirmed, finding both that the officer's conduct was reasonable and that there was no "clearly established" law that proscribed his conduct.  *Id.* at 314–15.  Although the officer's "actions may not have been as restrained as we would like," the court reasoned, "qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force.'"  *Id.* at 315 (quoting *Saucier v. Katz*, 533 U.S.

194, 206 (2001)).  And <u>because the officer's "use of force was the sort of 'split-second judgment'</u> <u>in a difficult situation that qualified immunity [was] designed to protect," the court found that</u> <u>summary judgment was appropriate</u>.  *Id.* at 316 (citing *Graham*, 490 U.S. at 396–97).

Similarly, in *Donovan v. Phillips*, 685 Fed Appx. 611, 613 (9th Cir. 2017), the Ninth Circuit awarded immunity to an officer who body-slammed a noncooperative, intoxicated suspect.  In *Donovan*, the officer pulled over a vehicle on suspicion of drunk driving.  *Id.* at 612.  While the officer was administering a sobriety test on the driver, the vehicle's passenger exited the vehicle. *Id.*  After the passenger "failed to comply with [the officer's] repeated orders to remain in her vehicle," the officer bear-hugged the passenger and threw her to the ground.  *Id.*  The passenger subsequently sued the officer for excessive force.  *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity.  *Id.*  On appeal, the Ninth Circuit affirmed, holding both that the officer's force was reasonable and that there was no clearly established law to the contrary.  *Id.* at 612–13.  Although the passenger "made no aggressive movements towards" the officer, the *Donovan* Court nonetheless found that the officer "had a substantial interest in taking the necessary steps to secure [the passenger] quickly once she exited her car," because traffic stops are "fraught with danger to police officers," especially when the suspect(s) may be intoxicated.  *Id.*  The court went on to hold that the officer would be entitled to immunity even if the court assumed the his use of force was excessive, because "it was not beyond debate that the totality of the circumstances surrounding [the officer's] seizure of [the suspect] would indicate that his use of force was clearly unreasonable."  *Id.* at 613.

The same is true in this case.  For one, as outlined above, the officers' use of force in this case was reasonable under the circumstances because the plaintiff was intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive towards his arresting officers.  So, although the officers used an above-average amount of force, this force always "corresponded to [their

suspect's] level of resistance, and was thus reasonable." *Cadena*, 728 Fed. Appx. at 297.

Additionally, because the available caselaw emphatically tips in the officers' favor, the plaintiff cannot show that his "clearly established" rights were violated.  These officers were in the sort of "tense, uncertain, and rapidly evolving" situation that qualified immunity was designed to safeguard.  *Griggs*, 841 F.3d at 316; *Graham*, 490 U.S. at 397.  And because the plaintiff cannot point to any favorable precedent case that "squarely governs" the circumstances seen in this case, the officers are entitled to summary judgment.

* * * *

"[O]vercoming qualified immunity is especially difficult in excessive-force cases." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).  To overcome this defense, the plaintiff must make "an extraordinary showing"—i.e., he must show that "existing precedent 'squarely governs'" this case and clearly entitles him to relief.  *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).  The plaintiff cannot meet this burden.  Given the above-referenced caselaw, there is no way for this Court to conclude that "every reasonable official would have understood, beyond debate, that [Officer Pew's and Officer Rozema's] conduct was a violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).  To the contrary, the caselaw shows that the level of force seen in this case was surely reasonable—especially when you consider the plaintiff's aggressive behavior, unusual pain tolerance, and unhinged mental state.  Accordingly, because Officers Pew and Rozema did not violate any of the plaintiff's clearly established rights, they are entitled to qualified immunity and summary judgment in their favor.

**C.    <u>CONCLUSION</u>**

Qualified immunity is designed to protect officers who were forced to make split-second decisions during a dicey situation.  *Griggs*, 841 F.3d at 316.  In all the cases discussed in this motion—*Beaver*, *Cadena*, *Johnson*, *Griggs*, and *Donovan*—the defendant-officers were awarded

summary judgment because they dealt with intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive suspects.  Officers Pew and Rozema confronted the same sort of suspect in this case—a suspect who assaulted his arresting officer then challenged three officers to a three-and-a-half-minute-long, drug-fueled wrestling match.  Because this case is not meaningfully different from the cases cited in this motion, Officers Pew and Rozema should be awarded summary judgment as well.

**ACCORDINGLY,** because Officers Pew and Rozema did not violate any of the plaintiff's clearly established rights, they respectfully ask this Court to enter summary judgment in their favor.

DATED this 26th day of August 2020.

CITY OF MESA ATTORNEY'S OFFICE

Alexander J. Lindvall
Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2020, I served the attached document by mail on the following, who is not a registered participant of the CM/ECF System:

Cole Joseph Spencer #226871
ASPC – Eyeman / Rynning Unit
4374 E. Butte Avenue
P.O. Box 3500
Florence, AZ  85132-3500
*Pro Se Plaintiff*

/s/ Toni Aglialoro

1   ALLISTER ADEL
2   MARICOPA COUNTY ATTORNEY

3   By:   JENNIFER G. LOCKERBY (Bar No. 024041)
          lockerbj@mcao.maricopa.gov
4        CHRISTINE B. STUTZ (Bar No. 019664)
          stutzc@mcao.maricopa.gov
5        Deputy County Attorneys

6

7   CIVIL SERVICES DIVISION
   Security Center Building
8   222 North Central Avenue, Suite 1100
   Phoenix, Arizona 85004
9   Telephone (602) 506-8541
   Facsimile (602) 506-8567
10   MCAO Firm No. 00032000
   ca-civilmailbox@mcao.maricopa.gov
11

12   *Attorneys for Defendants Maricopa County,*

13

             **IN THE UNITED STATES DISTRICT COURT**
14

                **FOR THE DISTRICT OF ARIZONA**
15

16   Cole Joseph Spencer,           No. CV-20-00385-PHX-DGC (CDB)

17          Plaintiff,       **DEFENDANTS' SHALL AND MACKLIN**
                            **ANSWER TO PLAINTIFF'S FIRST**
18   v.                          **AMENDED COMPLAINT**

19   Aaron Pew #1983; Jacob Rozema
20   #15724; Shall #1554; Macklin #1742;
   Mesa Police Department; City of Mesa;
21   Maricopa County Sheriff's Office;
   County of Maricopa;
22

23          Defendants.

24        Defendants Shall #1554 and Macklin (#1742), through undersigned counsel,

25
26   answer Plaintiff's First Amended Complaint by admitting, denying, or affirmatively

27   alleging as follows:

28

**I.    JURISDICTION**

    1.      Admit that this Court has jurisdiction over this action.

    2.      Admit that the alleged acts occurred in Mesa, Arizona.

**II.    DEFENDANTS**

    1.      In response to Paragraph 1, Answering Defendants note that none of the allegations contained therein pertain to Answering Defendants and, as such, there is no need or ability for Answering Defendants to admit or deny the same.

    2.      In response to Paragraph 2, Answering Defendants note that none of the allegations contained therein pertain to Answering Defendants and, as such, there is no need or ability for Answering Defendants to admit or deny the same.

    3.      In response to Paragraph 3, Answering Defendants admit that Defendant Shall is a deputy with MCSO assigned to the serial number #1554. The remainder of the matter alleged in Paragraph 3 does not require admission or denial.

    4.      In response to Paragraph 4, Answering Defendants admit that Defendant Macklin is a deputy with MCSO assigned to the serial number #1742. The remainder of the matter alleged in Paragraph 4 does not require admission or denial.

    5.      In response to Paragraph 5, Answering Defendants note that none of the allegations contained therein pertain to Answering Defendants and, as such, there is no need or ability for Answering Defendants to admit or deny the same.

    6.      In response to Paragraph 6, Answering Defendants note that none of the allegations contained therein pertain to Answering Defendants and, as such, there is no need or ability for Answering Defendants to admit or deny the same.

7.      In response to Paragraph 7, Maricopa County Sheriff's Office has been dismissed pursuant to the Court's Screening Order and, as such, there is no need or ability for Answering Defendants to admit or deny same.

8.      In response to Paragraph 8, Maricopa County Sheriff's Office has been dismissed pursuant to the Court's Screening Order and, as such, there is no need or ability for Answering Defendants to admit or deny same.

## III.    PREVIOUS LAWSUITS

1.      Defendants lacks sufficient knowledge or information upon which to base a belief as to the assertions made in this paragraph.

## IV.    CAUSE OF ACTION

### Count I

Defendants Shall and Macklin incorporate all of the responses to the First Amended Complaint as if set forth fully herein.   Defendants deny as untrue the allegations of excessive force.   Defendant admits that administrative remedies are available within the Maricopa County Sheriff's Office Jails.   Defendant lacks sufficient knowledge or information upon which to base a belief as to the truth of the remaining allegations contained in this paragraph and all subparagraphs and therefore denies the allegations as untrue.

## V.    REQUEST FOR RELIEF

1.      Defendants deny as untrue that Plaintiff is entitled to any of the requested relief contained in this paragraph.

## VI.    AFFIRMATIVE DEFENSES

Having fully answered Plaintiff's First Amended Complaint, Defendants hereby assert the following affirmative defenses:

1.    Plaintiff has failed to state a claim against Defendants upon which relief can be granted.

2.    Plaintiff has failed to sufficiently allege constitutional violations against Defendants.

3.    Prior to filing suit, Plaintiff failed to exhaust all available administrative remedies as required by the Prison Reform Litigation Act.

4.    Plaintiff is comparatively at fault for any alleged injuries and damages and did commit willful misconduct and/or negligent conduct in and about the matters alleged in Plaintiff's First Amended Complaint, and therefore proximately and comparatively caused and contributed to whatever injury and/or damages Plaintiff may have sustained.

5.    Any alleged injuries and/or damages to Plaintiff were proximately caused by the Plaintiff.

6.    Defendants assert that the Plaintiff has failed to mitigate his damages.

7.    Defendants assert that Plaintiff has sustained no damages and that his claim is precluded by applicable law including the PLRA.

8.    Defendants allege all affirmative defenses listed in the Federal Rules of Civil Procedure, Rules 8(c) and 12(b), as well as any other affirmative defenses that may come to light during discovery, including but not limited to: failure to join responsible parties, assumption of risk, insufficiency of process, insufficiency of service of process,

absolute and qualified immunity, estoppel, laches, statute of limitations, waiver, lack of *respondeat superior*, contributory negligence, comparative negligence, non-parties at fault, failure to exhaust administrative remedies, and any other matter which constitutes an avoidance or affirmative defense.

9.   At all times herein mentioned, Defendants acted in good faith and with reasonable belief as to the legality of things and matters attributed to the Defendants, and that as a consequence thereof, no liability should or can be imposed on Defendants pursuant to the doctrine of qualified immunity.

10.   Plaintiff cannot demonstrate that any deprivation of constitutional rights occurred as a result of any officially adopted policy, practice or custom and, thus, no officially adopted policy, practice or custom can give rise to liability on the part of Defendants.   Further, Plaintiff cannot establish that any policy, practice or custom proximately caused his alleged damages.

11.   Plaintiff failed to file and serve a timely, statutorily complaint, and sufficient notice of claim for each of stated claim, if any, in violation of A.R.S. §12-821.01.

12.   The damages, if any, sustained by Plaintiff were proximately caused by Plaintiff or other persons, whether named as parties herein or not, and such persons were not within the care, custody or control of Defendants.

13.   Plaintiff has failed to join responsible parties, necessary and proper parties and any party who must or may be joined pursuant to Federal Rules of Civil Procedure, Rules 19 and 20.

14.   Plaintiff's claims are in violation of PLRA.

15.     Defendants are entitled to absolute and/or qualified immunity under Federal and/or State law.

16.     Plaintiff is barred from recovering punitive damages against Defendants.

17.     Neither Defendants' actions nor inactions violated the state or federal constitutional rights of Plaintiff.

WHEREFORE, having fully answered Plaintiff's First Amended Complaint, Defendants hereby request the following relief:

1.     That this action be dismissed in its entirety, with Plaintiff taking nothing and with Judgment entered in favor of Defendants;

2.     That Plaintiff be ordered to pay Defendants costs and attorney fees; and

3.     Such other and further relief as this Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Penzone hereby demands a trial by jury pursuant to Rule 38, Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED** this 8th day of June 2020.

ALLISTER ADEL
MARICOPA COUNTY ATTORNEY

BY: */s/Jennifer G. Lockerby*
     JENNIFER G. LOCKERBY
     CHRISTINE B. STUTZ
     Deputy County Attorneys
     *Attorneys for Defendants Maricopa County,*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2020, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable David G. Campbell
UNITED STATES DISTRICT COURT

Honorable Camille D. Bibles
UNITED STATES DISTRICT COURT

and copy MAILED to:

COLE JOSEPH SPENCER #226871
ASPC EYMAN/RYNNING UNIT
4374 E BUTTE AVE
FLORENCE AZ  85132
*PLAINTIFF PRO SE*

/s/ *J. Christiansen*

S:\CIV\Matters\CJ\2020\Spencer v. Pew CJ2020-0066\Pleadings\Answer.docx

1   Alexander J. Lindvall (#034745)
    CITY OF MESA ATTORNEY'S OFFICE
2   MS-1077
    P.O. Box 1466
3   Mesa, AZ  85211-1466
    Telephone:  (480) 644-2343
4   mesacityattorney@mesaaz.gov

5   Attorneys for Defendants Pew and Rozema

6                   **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8   Cole Joseph Spencer,                    Case No. CV-20-00385-PHX-DGC (CDB)

9                            Plaintiff,     **Answer to Plaintiff's First Amended**
                                            **Complaint on Behalf of Defendants**
10      v.                                  **Aaron Pew and Jacob Rozema**

11                                          **And Demand for Jury Trial**

12  Aaron Pew, et al.,

13                           Defendants.

14

15          Per this Court's March 20, 2020 Screening Order (Doc. 9), Defendants Aaron Pew and

16  Jacob Rozema answer Plaintiff's First Amended Complaint as follows and demand a jury trial in

17  this matter:

18                                 **JURISDICTION**

19          1.      Defendants Pew and Rozema admit that this Court has jurisdiction over this matter

20  pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a).

21          2.      Defendants Pew and Rozema admit that the events giving rise to this lawsuit

22  occurred in Mesa, Arizona.

23                                 **DEFENDANTS**

24          3.      Defendants Pew and Rozema admit that Aaron Pew is employed as a Police Officer

25  by the City of Mesa, Badge #19183.

26

4.      Defendants admit that Jacob Rozema is employed as a Police Officer by the City of Mesa, Badge # 15724.

**PREVIOUS LAWSUITS**

5.      Defendants Pew and Rozema lack sufficient information to admit or deny whether Plaintiff has previously filed lawsuits while he was a prisoner.

**CAUSE OF ACTION**
**COUNT I**
**(Fourth Amendment Violation)**

6.      Defendants Pew and Rozema deny that they violated Plaintiff's Fourth Amendment rights.

7.      Defendants Pew and Rozema deny that they used excessive force during their encounter with Plaintiff.

8.      Defendants Pew and Rozema admit that they pulled over a vehicle in which Plaintiff was a passenger on March 21, 2018.

9.      Defendants Pew and Rozema deny that they punched, kicked, strangled, and electrocuted Plaintiff without provocation.  Defendants Pew and Rozema affirmatively allege that Plaintiff actively resisted arrest and was the initial aggressor in this confrontation.  Defendants Pew and Rozema further allege that Plaintiff was under the influence of methamphetamine and dimethyltryptamine (DMT) at the time of his arrest, which gave him hallucinations, increased energy and strength, and a heightened pain tolerance. Because of Plaintiff's drug use, the arresting officers' use of force had little to no effect on Plaintiff.  Plaintiff actively and aggressively fought the arresting officers for approximately three straight minutes, causing them to be physically exhausted.   Defendants Pew and Rozema allege their actions were reasonable under the circumstances.

10.      Defendants Pew and Rozema lack sufficient information to admit or deny Plaintiff's alleged injuries and damages.

1

**REQUEST FOR RELIEF**

2     11.   Defendants Pew and Rozema deny that Plaintiff is entitled to the relief he is seeking.

3

**JURY TRIAL DEMAND**

4     12.   Defendants hereby request a jury trial as to all triable issues in this case.

5

**AFFIRMATIVE DEFENSES**

6     1.    The First Amended Complaint, in whole or in part, fails to state a claim against the

7   Defendants upon which relief can be granted.

8     2.    Defendants Pew's and Rozema's actions were objectively reasonable under the

9   circumstances.

10    3.    The actions of Defendants Pew and Rozema were not negligent, grossly negligent,

11  or reckless.

12    4.    Defendants Pew and Rozema acted reasonably, in good faith, and without malice at

13  all relevant times.

14    5.    Defendants Pew and Rozema had reasonable suspicion to stop the vehicle in which

15  Plaintiff was a passenger.  The driver of this vehicle made an illegal U-turn in front of Officer

16  Pew, and Officer Pew had to slam on his brakes to avoid hitting the vehicle.

17    6.    Defendants Pew and Rozema acted with probable cause at all relevant times.

18    7.    Defendants Pew and Rozema are entitled to immunity because they did not violate

19  any of Plaintiff's clearly established constitutional rights.  *See*, *e.g.*, *District of Columbia v. Wesby*,

20  138 S. Ct. 577, 589–90 (2018).

21    8.    The actions of Defendants Pew and Rozema were justified pursuant to A.R.S. § 13-

22  409.

23    9.    Defendants Pew and Rozema are not subject to civil liability for engaging in

24  justified conduct pursuant to A.R.S. § 13-413.

25

26

10.     The Court shall award reasonable attorney fees, costs, compensation for lost income and all expenses incurred by a defendant in the defense of any civil action based on conduct otherwise justified if the defendant prevails in the action.  A.R.S. § 13-420.

11.     Plaintiff's alleged injuries and damages, if any and none being admitted, were caused or contributed to by the negligence or fault of Plaintiff or others, and Plaintiff's recovery, if any, should be diminished or barred in accordance with the applicable law, including A.R.S. §§ 12-2506, 12-711, 12-712, and 12-716.

12.     Pursuant to A.R.S. § 12-2506, the comparative fault of Plaintiff was the sole cause of the injury of Plaintiff.

13.     The Defendants are entitled to all privileges, immunities, and defenses extended to public entities and public employees pursuant to state and federal law.

14.     The Defendants are protected by the doctrines of qualified or absolute immunity.

15.     The Defendants are protected by one or more common law immunity defenses.

16.     The Defendants are not liable for punitive or exemplary damages under state law.

17.     Plaintiff violated multiple criminal laws.

18.     Plaintiff failed to mitigate his alleged damages.

19.     Plaintiff is precluded from recovering special damages for failing to comply with Fed. R. Civ. P. 9(g).

20.     Further discovery may show that Defendants have other viable defenses in this case. Accordingly, Defendants preserve the right to invoke the affirmative defenses contained in Federal Rules of Civil Procedure 8 and 12.

**ACCORDINGLY,** having fully answered Plaintiff's First Amended Complaint, Defendants Aaron Pew and Jacob Rozema respectfully request that this action be dismissed, that Plaintiff be ordered to pay the costs and attorneys' fees incurred by the Defendants, and for any further relief that the Court deems just and proper.

DATED this 8th day of June, 2020.

CITY OF MESA ATTORNEY'S OFFICE

Alexander J. Lindvall
Assistant City Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2020, I served the attached document by mail on the following, who is not a registered participant of the CM/ECF System:

Cole Joseph Spencer #226871
ASPC – Eyeman / Rynning Unit
4374 E. Butte Avenue
P.O. Box 3500
Florence, AZ  85132-3500
*Pro Se Plaintiff*

/s/   Kathy Cook

Cole Joseph Spencer 226871
Name and Prisoner/Booking Number
A.S.P.C. EYMAN /RYNNING unit
Place of Confinement
4374 E. Butte Ave
Mailing Address
Florence AZ 85132
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Cole Joseph Spencer,
(Full Name of Plaintiff)      Pro Se

Plaintiff,

v.

(1) Aaron Pew #19183,
(Full Name of Defendant)

(2) And Others,

(3) _____,

(4) _____,

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-20-00385-PHX-DGC-(CDB)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**
Jury Trial Demanded

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
    ☐ Other: _____.

2.  Institution/city where violation occurred: 8702 E. Broadway rd. Mesa AZ 85207

Revised 3/11/16                                         1

**550/555**

1-A    Heading: Defendants

    1. Aaron Pew #19183

    2. Jacob Rozema #15724

    3. Shall #1554

    4. Macklin #1742

    5. Mesa Police Department

    6. City of Mesa

    7. Maricopa County Sheriffs Office

    8. County of Maricopa

1-A

## B.  DEFENDANTS

1.  Name of first Defendant: _Aaron Pew #19183_. The first Defendant is employed
as: _Police Officer_ at _Mesa Police Department_.
(Position and Title)                              (Institution)

2.  Name of second Defendant: _Jacob Rozema #15724_. The second Defendant is employed as:
as: _Police Officer_ at _Mesa Police Department_.
(Position and Title)                              (Institution)

3.  Name of third Defendant: _Shall #1554_. The third Defendant is employed
as: _Sheriffs Deputy_ at _Maricopa County Sherrifs Office_.
(Position and Title)                              (Institution)

4.  Name of fourth Defendant: _Macklin #1742_. The fourth Defendant is employed
as: _Sheriffs Deputy_ at _Moricopa County Sherrifs Office_.
(Position and Title)                              (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?  ☐ Yes   ☒ No

2.  If yes, how many lawsuits have you filed? _____.  Describe the previous lawsuits:

   a.  First prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
      _____

   b.  Second prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
      _____

   c.  Third prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
      _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

2-A          Defendants

Defendant 5: _Name_: Mesa Police Department
              Mesa  Arizona, united states of America


Defendant 6: _Name_: City of Mesa
              Mesa Arizona, U.S.A.


Defendant 7: _Name_: Maricopa County Sheriffs Office
              Maricopa County Arizona, U.S.A.


Defendant 8: _Name_: County of Maricopa
              Maricopa County Arizona, U.S.A.


2-A

### D.  CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated: __4th Amendment__

2.  **Count I.**  Identify the issue involved.  Check **only one**.  State additional issues in separate counts.

☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☐ Medical care
☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation
☒ Excessive force by an officer     ☐ Threat to safety   ☐ Other:_____

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

On March 21st 2018 at 5:20pm, Cole Spencer was pulled over as a passenger on a routine traffic stop by Officer Aaron Pew #19183 of the Mesa Police Department, along with officer Jacob Rozema #15724 of the Mesa Police Department. After being pulled out of the vehicle for suspicion of comitting a misdemeanor violation of "False Reporting", officer Pew and officer Rozema violated Mr. Spencers 4th amendment constitutional right to be secure in his persons against unreasonable search and seizures. Without any provocation from Mr. Spencer, Officer Pew and officer Rozema proceeded to punch, kick, knee, strangle and electrocute (via Tazer) Mr. Spencer for a total of 3 minutes as described in Mesa report #: 2018-0800614. Driver of the vehicle (Jamie Kern) willing to testify to all facts stated in the Summary. In adition, the second witness who will remain anonymous until it is necessary to testify. The reason for this is Due to fear of retalatory measures by Mesa Police officers as Mesa PD Has had local and national Media attention from an investigation propelled by the FBI, into the mesa Police Department for on-going acts of police brutality and excessive force. (continued)

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

As a result of the punchs, kicks, knees, electrocutions and strangulations inflicted by Aaron Pew and Jacob Rozema, Cole Spencer suffered the following injuries supported by medical records from Banner Baywood and Banner.

5.  **Administrative Remedies:**
   a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☐ Yes   ☒ No
   b.  Did you submit a request for administrative relief on Count I?    ☐ Yes   ☒ No
   c.  Did you appeal your request for relief on Count I to the highest level?    ☐ Yes   ☒ No
   d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## COUNT II

1.  State the constitutional or other federal civil right that was violated: _____

2.  **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
    ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
    ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☐ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    _____
    _____

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?          ☐ Yes    ☐ No
    b.  Did you submit a request for administrative relief on Count II?          ☐ Yes    ☐ No
    c.  Did you appeal your request for relief on Count II to the highest level?          ☐ Yes    ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## COUNT III

1. State the constitutional or other federal civil right that was violated: _____
_____

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☐ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                    ☐ Yes    ☐ No
   b. Did you submit a request for administrative relief on Count III?        ☐ Yes    ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☐ Yes    ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
_____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

5-A   Cause Of Action (supporting Facts)   Count 1

During said incident, Sheriffs Deputy Shall #1554 and Sheriffs Deputy Macklin #1742, both employed by Maricopa County Sheriffs office, responded to what appeared to be an officer involved, use of force incident involving Cole Spencer, as well as Aaron Pew #19183 and Jacob Rozema #15724, both employed as Officers of the Mesa police Department. Both Officer Shall and Officer Macklin violated Mr. Spencers 4th Amendment Constitutional right to be secure in His persons against unreasonable search and Seizures. Considering the testimony in Mesa report #2018-0800614 by Officer Pew and Jacob Rozema of Mesa PD, which states that both Macklin and Shall arrived "shortly into the fight" after which they attest to inflicting numerous punchs, kicks, Knees, strangulations, and electrocutions, shows that their presence during the time Mr. Spencer sustained damages and injuries is reason enough to Hold them responsible as any reasonable minded officer would Have intervened as opposed to aiding and assisting Officer Pew and Officer Rozema in the Beating. Officer Shall and Officer Macklin both maliciously prosecuted Mr. Spencer by not reporting the presence of their body-cams and footage in their MCSO report (#18-008163)

Defendant Ⅴ (Mesa Police Department) and Defendant Ⅵ (city of Mesa) are both, in an individual Capacity, held

5-A

5-B   Couse OF Action (supporting Facts)   Count 1

responsible/liable for the actions laid out in this
summary by, Defendant I (Aaron Pew) and Defendant II
(Jacob Rozema) because of the fact they are both Defendant
I and Defendant II's employer and furnisher of authority
which sole'ly enables them to act under the color
of state law. When considering these facts, Defendant V
and Defendant VI violated Cole Spencers 4th amendment
Constitutional right to be secure in his persons against
any unreasonable search and Seizures.

Defendant VII (Maricopa County Sheriffs Office) and
Defendant VIII (county of Maricopa) are both, in an individual
capacity, Held responsible/liable for the actions laid out in
this summary by, Defendant III (shall #1554) and Defendant IV
(Macklin #1742) because of the fact that they are Both
Defendant III and Defendant IV's employer and furnisher of
authority which sole'ly enables them to act under the color
of state law. When considering these facts, Defendant VII
and Defendant VIII violated Cole Spencers 4th Amendment
constitutional right to be secure in his persons against
any unreasonable search and seizures.

It is Necessary to elaborate on the physical Condition
of Cole Spencer at the time of this incident. The initial
Kick that broke Mr. Spencers nose, Covered His Face with blood

5-B

5-C      Cause of Action (supporting Facts) Count 1

Which in turn poured into his eyes along with gravel. From that moment till what seemed to be 1-2 days later when a nurse cleaned out Mr. Spencer's eyes, Mr. Spencer was unable to see. this inability to see who exactly was inflicting the punches and combat strikes during the incident is the reason for not elaborating in the beginning of this summary as to which officer comitted a particular act. Because mr. Spencer was conscious during most of the incident and the police reports submitted by the defendants support Mr. Spencers claim, Mr. Spencer did not want to assume and guess, which officer comitted a particular act as Mr. Spencer would not have been able to differentiate between the two officers and would have no clue as to who did what if mr. Spencer had not read the police reports which they themselves contained manipulated accounts of the events leading up to and after the incident.

Note: I Cole Spencer wrote these accounts, but Did not write them in the First person and refered to myself as Mr. Spencer

5-C

5-B          Cause Of Action (Injuries)   Count 1

Desert Hostpitals; Fractured orbital bone, fractured nose, lacerated nose, bruised vertabrae, swollen and sprained wrist, Numerous abrasions cuts and scropes to His Face, which were photographed by C.S.S. Zemojtel at Banner Baywood Hostpital. Since the incident Mr. Spencer Has had problems with His vision in both eyes, experiencing "Black Spots that Come and go. Due to Mr. Spencers incarceration since the incident (all but 24 Days), His only access to Healthcare is through the Arizona Department OF Corrections (via Corizon and Centurion). To receive medical core, an inmate must submit an HNR (Health Needs Request) To be Seen. Mr. Spencer Has submitted multiple HNR's for issues including elbow and shoulder pain, pain and Numbness in His Back Neck Feet and Hands, as well as Numbness in face. Dates of some of the Submitted HNR's are as follows; 12-14-2018, 12-26-2018 8-20-2019, 9-25-2019, 11-12-2019 and 11-12-2019. As well as HNR's regarding Mr. Spencers Heart which resulted in a "cryo-ablation" Surgery. HNR's dates as Follows; 3-5-2019, 4-9-2019, 8-20-2019. Sheriffs Deputies, Shall and Macklin are both responsible for all the injuries/Damages described in this summary, for failing to intervene and attempting to stop the Beating by officers Pew and Rozema on Cole Spencer. Equaly responsible are both Defendant V (Mesa Police Department) and Defendant VI (City of Mesa)

5-D

5-E       Cause of Action (Injuries) count 1

For the actions of their employees,
(Defendant I, Aaron Pew) as well as (Defendant II,
Jacob Rozema) which resulted in said injuries sustained
by Cole Spencer. Defendant VII (Maricopa County Sheriffs
Office) and Defendant VIII (County of Maricopa) are both
responsible for the inactions of their employees,
Defendant III, (shall) and Defendant IV (Macklin), which
resulted in said injuries sustained by cole Spencer.

5-E

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

_Seeking The following relief from each of the "8" Defendants:_
_$100,000 in Compensatory relief/Damages from each Defendant_
_$100,000 in Punitive Monetary releif from each Defendant_
_As well as any and all relief Deemed appropriate by the Courts/Jury_

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _3-10-2020_

        DATE                                 SIGNATURE OF PLAINTIFF

_____

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____

(Signature of attorney, if any)

_____

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may
attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable.
If you attach additional pages, be sure to identify which section of the complaint is being continued and number
all pages.

6

IN THE UNITED STATES DISTRICT COURT OF ARIZONA

Cole J. Spencer

CV-20-00385-DGC-CDB

V.

Motion to initiate appeal

Aaron Pew, et. al.

FILED _____ LODGED
_____ RECEIVED _____ COPY

MAR 2 2 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

    Plaintiff recieved Judge Campbell's decision on
March 16th. He is now requesting the proper application
to proceed in Forma Pauperis on his appeal to
the 9th Circuit. Also requesting the proper application
to file appeal. It is his understanding that he
is allowed 30 days to complete the appeal
request. If this letter is not sufficient to begin
the appeal ~~the~~ ~~can~~ ~~cases~~ plaintiff request an extention
to complete the appeal process.

Cole Spencer                    3-17-2021

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE CIVLR 5.4, 7.1(c)/4
(Rule Number/Section)

Query    Reports    Utilities    Help    Log Out

APPEAL,CASREF,CLOSED,DTE

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00385-DGC-CDB

Spencer v. Pew et al                                 Date Filed: 02/21/2020
Assigned to: Senior Judge David G Campbell           Date Terminated: 03/11/2021
Referred to: Magistrate Judge Camille D Bibles       Jury Demand: Both
Demand: $700,000                                     Nature of Suit: 550 Prisoner: Civil Rights
Case in other court: Ninth Circuit, 21-15521         Jurisdiction: Federal Question
Cause: 42:1983 Prisoner Civil Rights

**Plaintiff**

**Cole Joseph Spencer**                  represented by  **Cole Joseph Spencer**
                                                         #226871
                                                         SAN LUIS-AZ-YUMA-ASPC-DAKOTA
                                                         DAKOTA UNIT
                                                         P.O. BOX 8909
                                                         SAN LUIS, AZ 85349
                                                         PRO SE

V.

**Defendant**

**Aaron Pew**                            represented by  **Alexander Joseph Lindvall**
*#19183, police officer*                                 Mesa City Attorneys Office
                                                         P.O. Box 1466
                                                         Mesa, AZ 85211-1466
                                                         480-644-2343
                                                         Email: alexander.lindvall@mesaaz.gov
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Jacob Rozema**                         represented by  **Alexander Joseph Lindvall**
*#15724, police officer*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Shall**                        represented by  **Charles E Trullinger**
*#1554, deputy sheriff*                                   Maricopa County Attorney Civil Services
                                                         Division
                                                         225 W Madison St.
                                                         Phoenix, AZ 85003
                                                         602-506-8541
                                                         Fax: 602-506-8144

ER 423

Email: trullinc@mcao.maricopa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christine Bailey Stutz**
Maricopa County Attorney Civil Services
Division
225 W Madison St.
Phoenix, AZ 85003
602-506-8541
Email: stutzc@mcao.maricopa.gov
*TERMINATED: 01/20/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Gail Lockerby**
Maricopa County Attorney Civil Services
Division
225 W Madison St.
Phoenix, AZ 85003
602-506-8541
Fax: 602-506-4316
Email: lockerbj@mcao.maricopa.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Macklin**                    represented by **Charles E Trullinger**
*#1742, deputy sheriff*                                (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Christine Bailey Stutz**
                                                        (See above for address)
                                                        *TERMINATED: 01/20/2021*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jennifer Gail Lockerby**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Mesa Police Department**
*TERMINATED: 03/20/2020*

**Defendant**

**Mesa, City of**
*TERMINATED: 03/20/2020*

**Defendant**

**Maricopa County Sheriff's Office**

ER 424

*TERMINATED: 03/20/2020*

**Defendant**

**Maricopa, County of**
*TERMINATED: 03/20/2020*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/21/2020 | 1 | PRISONER CIVIL RIGHTS COMPLAINT filed by Cole Joseph Spencer.(SLQ) (10 pages). (Entered: 02/21/2020) |
| 02/21/2020 | 2 | APPLICATION for Leave to Proceed In Forma Pauperis by Cole Joseph Spencer. (SLQ) (2 pages). (Entered: 02/21/2020) |
| 02/21/2020 | 3 | Prisoner Trust Fund Account Statement by Cole Joseph Spencer. (SLQ) (7 pages). (Entered: 02/21/2020) |
| 02/21/2020 | 4 | NOTICE OF ASSIGNMENT (SLQ) (Entered: 02/21/2020) |
| 02/21/2020 | 5 | NOTICE: This case is subject to electronic filing. Please review the attached documents. (SLQ) (Entered: 02/21/2020) |
| 03/11/2020 | 6 | First AMENDED COMPLAINT against Unknown Macklin, Maricopa County Sheriff's Office, Maricopa, County of, Mesa Police Department, Mesa, City of, Aaron Pew, Jacob Rozema, Unknown Shall filed by Cole Joseph Spencer. (13 pages) (REK) (Entered: 03/11/2020) |
| 03/11/2020 | 7 | AMENDED APPLICATION for Leave to Proceed In Forma Pauperis by Cole Joseph Spencer. (3 pages) (REK) (Entered: 03/11/2020) |
| 03/11/2020 | 8 | Prisoner Trust Fund Account Statement by Cole Joseph Spencer. (7 pages) (REK) (Entered: 03/11/2020) |
| 03/20/2020 | 9 | ORDER (Service Packet) - Plaintiff's 7 Amended Application to Proceed In Forma Pauperis is granted. Defendants Mesa Police Department, City of Mesa, Maricopa County Sheriff's Office, and Maricopa County are dismissed without prejudice. Defendants Pew, Rozema, Shall, and Macklin must answer the excessive force claim in the First Amended Complaint. The Clerk of Court must send Plaintiff this Order, and a copy of the Marshals Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Pew, Rozema, Shall, and Macklin. Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. This matter is referred to Magistrate Judge Camille D. Bibles pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1). See document for complete details. Signed by Senior Judge David G Campbell on 3/20/2020. (Attachments: # 1 Letter, # 2 Samples and Blank Forms, # 3 Defendant 2 forms, # 4 Defendant 3 forms, # 5 Defendant 4 forms, # 6 Rule 4, # 7 GO 14-17)(MSA) (Entered: 03/20/2020) |
| 03/20/2020 | 10 | ORDER Directing Monthly Payments be made from Prison Account of Cole Joseph Spencer. Signed by Senior Judge David G Campbell on 3/20/2020. (MSA) (Entered: 03/20/2020) |
| 03/27/2020 | 11 | NOTICE to Plaintiff: Service packets received on 3/26/2020. The forms are being returned to you for completion. Please Review the attached letter and documents. (Attachments: # 1 Return Letter, # 2 Samples and Blank Forms, # 3 Forms for Defendant 2, # 4 Forms for Defendant 3, # 5 Forms for Defendant 4)(MSA) (Entered: 03/27/2020) |

| 04/03/2020 | | Service Packet Forwarded to USMS. USM 285 Summons/notice/complaint/order, forwarded to USMS this date as to Pew, Rozema, Shall, and Macklin. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (SLQ) (Entered: 04/03/2020) |
|---|---|---|
| 04/14/2020 | 13 | MOTION for Appointment of Counsel by Cole Joseph Spencer. (SST) (3 pages) (Entered: 04/16/2020) |
| 04/17/2020 | 14 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 13 is denied. See document for complete details. Signed by Magistrate Judge Camille D Bibles on 4/16/2020. (WLP) (Entered: 04/17/2020) |
| 05/07/2020 | 15 | SERVICE EXECUTED: Rule 4 Waiver of Service of Summons. Waiver sent on 4/9/20 to Unknown Shall. (SST) (Entered: 05/08/2020) |
| 05/07/2020 | 16 | SERVICE EXECUTED: Rule 4 Waiver of Service of Summons. Waiver sent on 4/9/20 to Unknown Macklin. (SST) (Entered: 05/08/2020) |
| 06/05/2020 | 20 | SERVICE EXECUTED : Rule 4 Waiver of Service of Summons. Waiver sent on 4/9/20 to Aaron Pew. (SJF) (Entered: 06/08/2020) |
| 06/05/2020 | 21 | SERVICE EXECUTED : Rule 4 Waiver of Service of Summons. Waiver sent on 4/9/20 to Jacob Rozema. (SJF) (Entered: 06/08/2020) |
| 06/08/2020 | 17 | ANSWER to 6 Amended Complaint with Jury Demand by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 06/08/2020) |
| 06/08/2020 | 18 | SCHEDULING ORDER: Written Discovery due by 11/5/2020. Motions regarding Discovery due by 11/30/2020. Dispositive motions due by 12/7/2020. See order for complete details. Signed by Magistrate Judge Camille D. Bibles on 6/8/20. (NKS) (Entered: 06/08/2020) |
| 06/08/2020 | 19 | ANSWER to 6 Amended Complaint with Jury Demand by Unknown Macklin, Unknown Shall.(Lockerby, Jennifer) (Entered: 06/08/2020) |
| 06/11/2020 | 22 | MOTION for Clarification of Scheduling Order by Cole Joseph Spencer. (SST) (2 pages) (Entered: 06/12/2020) |
| 06/15/2020 | 23 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 22 , asking the Court to advise him as to how to proceed with disclosure and discovery in this matter, is denied. Signed by Magistrate Judge Camille D Bibles on 6/15/2020. (WLP) (Entered: 06/15/2020) |
| 07/07/2020 | 24 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 07/07/2020) |
| 07/07/2020 | 25 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 07/07/2020) |
| 07/07/2020 | 26 | NOTICE: Certificate of Service (Alexander Lindvall) by Cole Joseph Spencer. (SST) (1 page) (Entered: 07/08/2020) |
| 07/07/2020 | 27 | NOTICE: Certificate of Service (Jennifer Lockerby) by Cole Joseph Spencer. (SST) (1 page) (Entered: 07/08/2020) |
| 07/08/2020 | 28 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 07/08/2020) |
| 07/08/2020 | 29 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 07/08/2020) |

ER 426

| 07/14/2020 | 30 | NOTICE OF ATTORNEY'S CHANGE OF ADDRESS/FIRM NAME by Jennifer Gail Lockerby. (Lockerby, Jennifer) (Entered: 07/14/2020) |
|---|---|---|
| 07/16/2020 | 31 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 07/16/2020) |
| 07/21/2020 | 32 | MOTION for a Request for a Court Order by Cole Joseph Spencer. (SST) (3 pages) (Entered: 07/21/2020) |
| 07/23/2020 | 33 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 07/23/2020) |
| 07/28/2020 | 34 | MOTION to Compel Mesa PD and Mr. Lindvall to Answer Requests by Cole Joseph Spencer. (SST) (3 pages) (Entered: 07/28/2020) |
| 07/28/2020 | 35 | MOTION to Compel Production of Evidence by Cole Joseph Spencer. (SST) (3 pages) (Entered: 07/28/2020) |
| 07/30/2020 | 36 | RESPONSE to Motion re: 34 MOTION to Compel filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 07/30/2020) |
| 08/04/2020 | 37 | RESPONSE in Opposition re: 32 MOTION *FOR A REQUEST FOR A COURT ORDER* filed by Unknown Macklin, Unknown Shall. (Attachments: # 1 Exhibit List - Exhibit 1) (Lockerby, Jennifer) (Entered: 08/04/2020) |
| 08/06/2020 | 38 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/06/2020) |
| 08/06/2020 | 39 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 08/06/2020) |
| 08/07/2020 | 40 | MOTION for Extension of Time by Cole Joseph Spencer. (SST) (3 pages) (Entered: 08/07/2020) |
| 08/10/2020 | 41 | MOTION to Strike 35 MOTION to Compel Production of Evidence by Unknown Macklin, Unknown Shall. (Attachments: # 1 Text of Proposed Order [PROPOSED] ORDER STRIKING PLAINTIFF'S MOTION FOR SANCTIONS)(Lockerby, Jennifer) (Entered: 08/10/2020) |
| 08/12/2020 | 42 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/12/2020) |
| 08/13/2020 | 44 | REPLY to Response to Motion re: 32 MOTION filed by Cole Joseph Spencer. (SLQ) (2 pages). (Entered: 08/17/2020) |
| 08/13/2020 | 45 | REPLY to Response to Motion re: 34 MOTION to Compel filed by Cole Joseph Spencer. (SLQ) (2 pages). (Entered: 08/17/2020) |
| 08/13/2020 | 46 | MOTION to Compel by Cole Joseph Spencer. (SLQ) (3 pages). (Entered: 08/17/2020) |
| 08/17/2020 | 43 | ORDER - IT IS ORDERED that the motion to strike at ECF No. 41 is denied, and Plaintiff's motion to compel at ECF No. 35 is granted as unopposed. Defendants are ordered to serve Plaintiff with the discovery sought in his motion to compel at ECF No. 35 within fourteen (14) days of the date this Order is entered. See document for complete details. Signed by Magistrate Judge Camille D Bibles on 8/14/2020. (WLP) (Entered: 08/17/2020) |
| 08/18/2020 | 47 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 32 , asking the Court to order Defendants to participate in a telephonic conference regarding discovery, is denied as moot. See ECF No. 37 . IT IS FURTHER ORDERED that Plaintiff's motion at ECF No. 34 is denied; Defendants aver they have responded to Plaintiff's requests for |

| | | |
|---|---|---|
| | | discovery (ECF No. 36 ), and because Plaintiff has not replied to this assertion, it is presumed Plaintiff received the requested discovery. Signed by Magistrate Judge Camille D Bibles on 8/17/2020. (WLP) (Entered: 08/18/2020) |
| 08/18/2020 | 48 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/18/2020) |
| 08/19/2020 | 49 | *Corrected document re-filed at 50 -- RESPONSE to Motion re: 46 MOTION to Compel filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) *Modified on 8/20/2020 (WLP). (Entered: 08/19/2020) |
| 08/19/2020 | 50 | RESPONSE to Motion re: 46 MOTION to Compel filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 08/19/2020) |
| 08/20/2020 | 51 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 08/20/2020) |
| 08/21/2020 | 52 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/21/2020) |
| 08/21/2020 | 53 | NOTICE re: Compliance by Unknown Macklin, Maricopa, County of, Aaron Pew, Jacob Rozema, Unknown Shall re: 43 Order, Terminate Motions *[NOTICE OF COMPLIANCE WITH COURT ORDER (DOC. 43)]*. (Lockerby, Jennifer) (Entered: 08/21/2020) |
| 08/25/2020 | 54 | REPLY to Response to 46 MOTION to Compel filed by Cole Joseph Spencer. (5 pages) (WLP) (Entered: 08/25/2020) |
| 08/26/2020 | 55 | MOTION for Summary Judgment by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 08/26/2020) |
| 08/26/2020 | 56 | STATEMENT OF FACTS re: 55 MOTION for Summary Judgment by Defendants Aaron Pew, Jacob Rozema. (Attachments: # 1 Affidavit Exhibit 1, # 2 Affidavit Exhibit 2, # 3 Exhibit Exhibit 3)(Lindvall, Alexander) (Entered: 08/26/2020) |
| 08/27/2020 | 57 | NOTICE of Deposition of Cole J. Spencer, filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/27/2020) |
| 08/27/2020 | 58 | ORDER - IT IS THEREFORE ORDERED that Plaintiff shall have thirty (30) days from the date this order is filed to file any response to Defendants' motion for summary judgment at ECF No. 55 , including any supporting evidence and a separate statement of facts. IT IS FURTHER ORDERED that Defendants shall file any reply within fifteen (15) days from the date Plaintiff's response is filed. IT IS FURTHER ORDERED that the motion shall be deemed ready for decision without oral argument on the day following the date set for filing a reply unless otherwise ordered by the Court. See document for complete details. Signed by Magistrate Judge Camille D Bibles on 8/26/2020. (WLP) (Entered: 08/27/2020) |
| 08/31/2020 | 59 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 08/31/2020) |
| 08/31/2020 | 60 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 40 , seeking an extension of the deadline for amending his complaint, is denied, as Plaintiff has failed to show good cause warranting an extension of the deadline. IT IS FURTHER ORDERED that Plaintiff's motion (ECF No. 46 ) to compel discovery regarding the Defendants' whereabouts prior to the encounter allegedly resulting in the Defendants' use of excessive force against Plaintiff in the context of a traffic stop, is denied as the sought-after discovery is not relevant to the issue before the Court. Signed by Magistrate Judge Camille D Bibles on 8/31/20. (SLQ) (Entered: 08/31/2020) |

ER 428

| 09/01/2020 | 61 | MOTION to Compel Discovery by Cole Joseph Spencer. (8 pages) (CLB) (Entered: 09/01/2020) |
| 09/01/2020 | 62 | MOTION Court Order by Cole Joseph Spencer. (2 pages) (CLB) (Entered: 09/01/2020) |
| 09/01/2020 | 63 | MOTION to Obtain Subpoena by Cole Joseph Spencer. (6 pages) (CLB) (Entered: 09/01/2020) |
| 09/03/2020 | 64 | RESPONSE to Motion re: 61 MOTION to Compel Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 09/03/2020) |
| 09/03/2020 | 65 | RESPONSE to Motion re: 55 MOTION for Summary Judgment filed by Cole Joseph Spencer. (22 pages) (EJA) (Entered: 09/03/2020) |
| 09/04/2020 | 66 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 09/04/2020) |
| 09/08/2020 | 68 | AMENDED MOTION to Obtain a Subpoena by Cole Joseph Spencer. (7 pages) (WLP) (Entered: 09/09/2020) |
| 09/09/2020 | 67 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 09/09/2020) |
| 09/10/2020 | 69 | REPLY to Response to Motion re: 61 MOTION to Compel Discovery filed by Cole Joseph Spencer. (SLQ) (2 pages). (Entered: 09/11/2020) |
| 09/14/2020 | 70 | RESPONSE *to Plaintiff's Motion for Additional Response Time (Doc. 65 )* by Defendants Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 09/14/2020) |
| 09/15/2020 | 71 | RESPONSE in Opposition re: 61 MOTION to Compel Discovery filed by Unknown Macklin, Aaron Pew, Jacob Rozema, Unknown Shall. (Lockerby, Jennifer) (Entered: 09/15/2020) |
| 09/17/2020 | 72 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 09/17/2020) |
| 09/18/2020 | 73 | ORDER: Defendants shall respond to Plaintiff's motion at ECF No. 62 no later than September 25, 2020. Signed by Senior Judge David G Campbell on 9/18/2020. (REK) (Entered: 09/18/2020) |
| 09/18/2020 | 74 | ORDER: The motion at ECF No. 61 is denied. Signed by Magistrate Judge Camille D Bibles on 9/18/2020. (REK) (Entered: 09/18/2020) |
| 09/21/2020 | 75 | RESPONSE to Motion re: 62 MOTION Court Order filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 09/21/2020) |
| 09/21/2020 | 76 | RESPONSE to Motion re: 62 MOTION Court Order filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 09/21/2020) |
| 09/22/2020 | 77 | Mail Returned as Undeliverable. Mail sent to Cole Joseph Spencer. Reason for return: Return to Sender: Inmate No Longer Housed at ASPC - Eyman - Rynning Unit. Document number 73. (REK) (Entered: 09/23/2020) |
| 09/22/2020 | 78 | Mail Returned as Undeliverable. Mail sent to Cole Joseph Spencer. Reason for return: Inmate no longer housed at ASPC Eyman - Rynning Unit. Document number 74. (REK) (Entered: 09/23/2020) |
| 09/23/2020 | 79 | NOTICE of Pending Location/Address Change by Cole Joseph Spencer. (1 page and envelope) (REK) (Entered: 09/23/2020) |
| 10/01/2020 | 80 | ORDER that Defendants shall respond to Plaintiff's motion at ECF No. 68 no later than |

ER 429

| | | October 9, 2020. Defendants are admonished that they must respond to each motion filed by Plaintiff within the time specified in the Local Rules of Civil Procedure. Signed by Magistrate Judge Camille D Bibles on 10/01/2020. (REK) (Entered: 10/01/2020) |
|---|---|---|
| 10/01/2020 | 81 | RESPONSE to Motion re: 68 MOTION re: 63 MOTION to Obtain Subpoena filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 10/01/2020) |
| 10/01/2020 | 83 | MOTION for Permission for Deposition by Cole Joseph Spencer. (SLQ) (6 pages). (Entered: 10/05/2020) |
| 10/02/2020 | 82 | REPLY to Response to Motion re: 68 MOTION re: 63 MOTION to Obtain Subpoena filed by Cole Joseph Spencer. (SLQ) (19 pages). (Entered: 10/02/2020) |
| 10/02/2020 | 84 | NOTICE OF PARTY'S CHANGE OF ADDRESS by Cole Joseph Spencer: #226871, ASPC Yuma - Dakota Unit, PO Box 8909, San Luis, AZ 85349. (SLQ) (2 pages). (Entered: 10/05/2020) |
| 10/02/2020 | 85 | REPLY to Response to Motion re: 61 MOTION to Compel Discovery filed by Cole Joseph Spencer. (SLQ) (14 pages. Reply previously filed at document 69 ). (Entered: 10/05/2020) |
| 10/06/2020 | 86 | RESPONSE to Motion re: 68 MOTION re: 63 MOTION to Obtain Subpoena filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 10/06/2020) |
| 10/06/2020 | 87 | RESPONSE to Motion re: 83 MOTION for Permission for Deposition filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 10/06/2020) |
| 10/16/2020 | 88 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 10/16/2020) |
| 10/19/2020 | 89 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 10/19/2020) |
| 10/19/2020 | 90 | REPLY to Response to Motion re: 68 MOTION re: 63 MOTION to Obtain Subpoena filed by Cole Joseph Spencer. (3 pages) (EJA) (Entered: 10/20/2020) |
| 10/19/2020 | 91 | REPLY to Response to Motion re: 83 MOTION for Permission for Deposition filed by Cole Joseph Spencer. (8 pages) (EJA) (Entered: 10/20/2020) |
| 10/21/2020 | 92 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 68 , seeking an order to have the United States Marshal serve a subpoena on non-party Axon, is denied as Defendants have averred that the video of the subject incident in this matter served on Plaintiff was not altered. IT IS FURTHER ORDERED that Plaintiff's motion at ECF No. 83 , asking he be allowed to telephonically depose Defendants Pew and Rozema, is denied as Plaintiff may obtain the information sought by means of deposition through discovery. Signed by Magistrate Judge Camille D Bibles on 10/20/2020. (WLP) (Entered: 10/21/2020) |
| 10/22/2020 | 93 | MOTION requesting missing documents by Cole Joseph Spencer. (1 page) (WLP) (Entered: 10/22/2020) |
| 10/23/2020 | 94 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 93 is granted only as provided herein. Plaintiff's motion at ECF No. 61 was denied and Plaintiff's motion at ECF No. 62 is pending before Judge Campbell. Signed by Magistrate Judge Camille D Bibles on 10/22/2020. (WLP) (Entered: 10/23/2020) |
| 10/26/2020 | 95 | Mail Returned as Undeliverable. Mail sent to Cole Joseph Spencer. Reason for return: No Such Number. Document number 80. (WLP) (Entered: 10/27/2020) |
| 10/28/2020 | 96 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. |

| | | (Lockerby, Jennifer) (Entered: 10/28/2020) |
|---|---|---|
| 10/30/2020 | 97 | ORDER: The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion Requesting a Court Order 62 . Plaintiff's Motion Requesting a Court Order 62 is denied. Within 45 days of the date of this Order, Plaintiff must file a Response to Defendants' Motion for Summary Judgment. Signed by Senior Judge David G Campbell on 10/30/2020. (REK) (Entered: 10/30/2020) |
| 11/09/2020 | 98 | MOTION for Extension of Time to Complete Discovery by Cole Joseph Spencer. (2 Pages) (REK) (Entered: 11/10/2020) |
| 11/09/2020 | 99 | MOTION to Verify Postal Date of Prison Legal Mail by Cole Joseph Spencer. (3 Pages) (REK) (Entered: 11/10/2020) |
| 11/12/2020 | 100 | RESPONSE to Motion re: 98 MOTION for Extension of Time to Complete Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 11/12/2020) |
| 11/12/2020 | 101 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 11/12/2020) |
| 11/12/2020 | 102 | ORDER: Plaintiff's motion at ECF No. 98 , seeking to extend the deadline for completing discovery in this matter, is denied as extensive discovery has been conducted and a motion for summary judgment is pending. Signed by Magistrate Judge Camille D Bibles on 11/12/2020. (REK) (Entered: 11/12/2020) |
| 12/03/2020 | 103 | MOTION for Leave to File a Non-Electronic Exhibit *in Support of Defendant's Motion for Summary Judgement* by Unknown Macklin, Unknown Shall. (Attachments: # 1 Text of Proposed Order [Proposed] Order)(Lockerby, Jennifer) (Entered: 12/03/2020) |
| 12/03/2020 | 104 | ORDER - IT IS ORDERED that the motion at ECF No. 103 is granted. Accordingly, Defendants Shall and Macklin may file a non-electronic document, i.e., a CD of the body-cam video recorded by Deputy Shall on March 21, 2018, as an exhibit to their statement of facts in support of a motion for summary judgment which Defendants intend to file by December 7, 2020. Defendants must, in addition to providing this non-electronic exhibit to the Clerk of the Court, serve a copy of non-electronic exhibit on Plaintiff. Signed by Magistrate Judge Camille D Bibles on 12/3/2020. (WLP) (Entered: 12/03/2020) |
| 12/07/2020 | 105 | NOTICE of Service of Discovery filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 12/07/2020) |
| 12/07/2020 | 106 | MOTION for Summary Judgment by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 12/07/2020) |
| 12/07/2020 | 107 | STATEMENT OF FACTS re: 106 MOTION for Summary Judgment by Defendants Unknown Macklin, Unknown Shall. (Attachments: # 1 Exhibit Index + Exhs 1-7) (Lockerby, Jennifer) (Entered: 12/07/2020) |
| 12/07/2020 | 108 | NOTICE re: Filing Non-Electronic Exhibit as an Attachment to Defendants' Seperate Statement of Facts in Support of Motion for Summary Judgment by Unknown Macklin, Unknown Shall . (Lockerby, Jennifer) (Entered: 12/07/2020) |
| 12/07/2020 | | Remark: 1 Disk - as outlined in the Defendants Unknown Macklin and Unknown Shalls Notice re: Filing of Exhibit (Exhibit 1 body-cam video recorded by Deputy Shall on March, 21, 2018) in support of the Defendants Motion for Summary Judgment (Doc. 108 ) has been received, and will be stored in the Phoenix file room. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (HLA) (Entered: 12/07/2020) |

| 12/08/2020 | 109 | ORDER that the motion at ECF No. 99 is denied, as the "motion" seeks only to verify to the Court the dates that Plaintiff sent a motion to the Court and served requests for discovery, and the motion does not seek any specific relief. Signed by Magistrate Judge Camille D Bibles on 12/07/2020. (REK) (Entered: 12/08/2020) |
|---|---|---|
| 12/08/2020 | 110 | ORDER: Plaintiff shall have thirty (30) days from the date this order is filed to file any response to Defendants' motion for summary judgment at ECF No. 106, including any supporting evidence and a separate statement of facts. Defendants shall file any reply within fifteen (15) days from the date Plaintiff's response is filed. The motions shall be deemed ready for decision without oral argument on the day following the date set for filing a reply unless otherwise ordered by the Court. Signed by Magistrate Judge Camille D Bibles on 12/07/20. (REK) (Entered: 12/08/2020) |
| 12/08/2020 | 111 | NOTICE of Service of Discovery filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 12/08/2020) |
| 12/17/2020 | 112 | REPLY to Response to Motion re: 68 Amended MOTION re: 63 MOTION to Obtain Subpoena filed by Cole Joseph Spencer. (LAD) (2 pages) (Entered: 12/18/2020) |
| 12/17/2020 | 113 | MOTION Requesting to Use Exhibit 22 as Evidence in MCSO Defendants' Motion for Summary Judgment by Cole Joseph Spencer. (LAD) (1 page) (Entered: 12/18/2020) |
| 12/21/2020 | 114 | MOTION for Extension of Time to File Response/Reply (Titled: Motion for Relief) as to 106 MOTION for Summary Judgment by Cole Joseph Spencer. (1 Page) (REK) (Entered: 12/22/2020) |
| 12/23/2020 | 115 | ORDER: The motion 114 is granted only insofar as Plaintiff asks to be provided with an additional copy of the motion for summary judgment 106 and the statement of facts 107, and to the extent Plaintiff seeks additional time to respond to the motion for summary judgment. The motion is denied to the extent it seeks any other relief. The Clerk of the Court shall send Plaintiff a copy of the pleadings at ECF No. 106 and ECF No. 107. IT IS FURTHER ORDERED that Plaintiff shall have until February 12, 2021 to file a response to the motion for summary judgment at ECF No. 106. Signed by Magistrate Judge Camille D Bibles on 12/23/2020. (REK) (Entered: 12/23/2020) |
| 12/28/2020 | 116 | RESPONSE to Motion re: 55 MOTION for Summary Judgment filed by Cole Joseph Spencer. (23 Pages) (REK) (Entered: 12/30/2020) |
| 12/28/2020 | 117 | STATEMENT OF FACTS re: 116 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (7 Pages) (REK) (Entered: 12/30/2020) |
| 12/28/2020 | 118 | SUPPLEMENT (Additional Material Facts Supporting Opposition to Defendants Motion for Summary Judgment) re: 116 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (298 Pages) (Attachments: # 1 Exhibit List, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12 Part 1, # 14 Exhibit Exhibit 12 Part 2, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Exhibit 25, # 28 Exhibit 26, # 29 Exhibit 27, # 30 Exhibit 28, # 31 Exhibit 29, # 32 Exhibit 30, # 33 Exhibit 31) (REK) (Entered: 12/30/2020) |
| 12/28/2020 | 119 | Plaintiff's "Disputed" STATEMENT OF FACTS re: 116 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (19 Pages) (REK) (Entered: 12/30/2020) |
| 12/28/2020 | | Remark: One (1) DVD submitted as Exhibit 22 with Plaintiff's Supplement (Doc. 118) has been received, and will be stored in the Phoenix file room. This is a TEXT ENTRY |

| | | |
|---|---|---|
| | | ONLY. There is no PDF document associated with this entry. (HLA) (Entered: 01/04/2021) |
| 01/05/2021 | 120 | ORDER: Plaintiff's motion 113 is granted only insofar as Plaintiff asks leave of the Court to "use" the non-electronic exhibit provided by Defendants in his response to the motion for summary judgment at 106 . The motion is denied to the extent it seeks any other relief. Signed by Magistrate Judge Camille D Bibles on 1/04/2021. (REK) (Entered: 01/05/2021) |
| 01/12/2021 | 121 | REPLY to Response to Motion re: 55 MOTION for Summary Judgment filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 01/12/2021) |
| 01/19/2021 | 123 | MOTION for Copies re: 121 Reply to Response to Motion by Cole Joseph Spencer. (1 Page) (REK) (Entered: 01/21/2021) |
| 01/20/2021 | 122 | NOTICE of Attorney Substitution by Jennifer Gail Lockerby. (Lockerby, Jennifer) (Entered: 01/20/2021) |
| 01/27/2021 | 124 | ORDER that the motion at ECF No. 123 is denied as moot. Signed by Magistrate Judge Camille D Bibles on 1/27/2021. (REK) (Entered: 01/27/2021) |
| 02/16/2021 | 125 | MOTION for Extension of Time to File Response/Reply as to 106 MOTION for Summary Judgment by Cole Joseph Spencer. (1 Page) (REK) (Entered: 02/17/2021) |
| 02/18/2021 | 126 | ORDER: Plaintiff's motion at ECF No. 125 is granted. Plaintiff shall have until February 26, 2021 to respond to the motion for summary judgment at ECF No. 106 . Signed by Magistrate Judge Camille D Bibles on 2/18/2021. (REK) (Entered: 02/18/2021) |
| 02/19/2021 | 127 | RESPONSE to Motion re: 106 MOTION for Summary Judgment filed by Cole Joseph Spencer. (15 Pages) (REK) (Entered: 02/22/2021) |
| 02/19/2021 | 128 | STATEMENT OF FACTS re: 127 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (47 Pages) (Attachments: # 1 Exhibit)(REK) (Entered: 02/22/2021) |
| 02/19/2021 | 129 | "Disputed" STATEMENT OF FACTS in Support of Opposition to Defendants' Motion for Summary Judgment re: 127 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (6 Pages) (REK) (Entered: 02/22/2021) |
| 02/19/2021 | 130 | SUPPLEMENT (Additional Material Facts Supporting Opposition) re: 127 Response to Motion for Summary Judgment by Plaintiff Cole Joseph Spencer. (3 Pages) (REK) (Entered: 02/22/2021) |
| 02/19/2021 | 131 | MOTION to Clarify Exhibits by Cole Joseph Spencer. (1 Page) (REK) (Entered: 02/22/2021) |
| 03/04/2021 | 132 | REPLY to Response to Motion re: 106 MOTION for Summary Judgment *IN SUPPORT OF* filed by Unknown Macklin, Unknown Shall. (Lockerby, Jennifer) (Entered: 03/04/2021) |
| 03/11/2021 | 133 | ORDER: The reference to the Magistrate Judge is withdrawn as to the Motion for Summary Judgment on Behalf of Defendants Aaron Pew and Jacob Rozema 55 , Defendants Shall and Macklin's Motion for Summary Judgment 106 , and Plaintiff's Motion to Clarify Exhibits 131 . Plaintiff's Motion to Clarify Exhibits 131 is denied as moot. The Motion for Summary Judgment on Behalf of Defendants Aaron Pew and Jacob Rozema 55 is granted. Defendants Shall and Macklin's Motion for Summary Judgment 106 is granted. This action is terminated with prejudice. The Clerk of Court must enter judgment accordingly. Signed by Senior Judge David G Campbell on 3/11/2021. (REK) (Entered: 03/11/2021) |

ER 433

| 03/11/2021 | 134 | CLERK'S JUDGMENT - Pursuant to the Court's Order filed March 11, 2021, which granted the Motions for Summary Judgment, judgment is entered in favor of defendants and against plaintiff. Plaintiff to take nothing, and the complaint and action are dismissed with prejudice. (REK) (Entered: 03/11/2021) |
| 03/22/2021 | 135 | NOTICE OF APPEAL to 9th Circuit Court of Appeals re: 134 Clerks Judgment, 133 Order by Cole Joseph Spencer. (1 Page) (REK) (Entered: 03/23/2021) |
| 03/25/2021 | 136 | USCA Case Number re: 135 Notice of Appeal. Case number 21-15521, Ninth Circuit. (DXD) (Entered: 03/25/2021) |
| 04/02/2021 | 137 | MOTION to Appoint Counsel by Cole Joseph Spencer. (1 Page) (REK) (Entered: 04/05/2021) |
| 04/02/2021 | 138 | MOTION for Leave to Appeal in forma pauperis (Titled: Motion to Initiate Appeal) re: 135 Notice of Appeal by Cole Joseph Spencer. (1 Page) (REK) (Entered: 04/05/2021) |
| 04/15/2021 | 139 | RESPONSE to Motion re: 137 MOTION to Appoint Counsel filed by Aaron Pew, Jacob Rozema. (Lindvall, Alexander) (Entered: 04/15/2021) |
| 04/19/2021 | 140 | ORDER - IT IS ORDERED that Plaintiff's motion at ECF No. 137 , seeking the appointment of counsel to prosecute his appeal, is denied, as Plaintiff has not yet been given leave to proceed on appeal in forma pauperis. Signed by Magistrate Judge Camille D Bibles on 4/16/2021. (LAD) (Entered: 04/19/2021) |
| 06/11/2021 | 141 | ORDER of USCA - Appellant granted leave to proceed in form pauperis in this appeal; Prison officials to assess, collect and forward fees to the District Court pursuant to 28:1915(b)(1) and (2) re: 21-15521 as to 135 Notice of Appeal. (Attachments: # 1 Authorization Form)(DXD) (Entered: 06/11/2021) |
| 07/12/2021 | 142 | ORDER: Plaintiff's Motion for Leave to Appeal In Forma Pauperis 138 is denied as moot. Signed by Senior Judge David G Campbell on 7/12/2021. (REK) (Entered: 07/12/2021) |
| 09/16/2021 | 143 | MOTION for Copies of Exhibits by Cole Joseph Spencer. (2 Pages) (REK) (Entered: 09/17/2021) |
| 10/06/2021 | 144 | ORDER denying 143 Motion. See document for details. Signed by Magistrate Judge Camille D Bibles on 10/6/2021. (WLP) (Entered: 10/06/2021) |
| 11/08/2021 | 145 | TRANSMITTED RECORD ON APPEAL to 9th Circuit Court of Appeals re: 135 Notice of Appeal ; Other: 1 DVD. (REK) (Entered: 11/08/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/22/2022 11:43:42 | | |
| **PACER Login:** | Hrfitzmo | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:20-cv-00385-DGC-CDB |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

ER 434