No. 21-15521

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**COLE JOSEPH SPENCER**,
*Plaintiff-Appellant,*

v.

**AARON PEW et al.**,
*Defendants-Appellees.*

---

## On Appeal from the United States District Court
## for the District of Arizona
No. 2:20-cv-00385-DGC-CDB
Hon. David G. Campbell

---

# REPLACEMENT ANSWERING BRIEF
# ON BEHALF OF APPELLEES PEW AND ROZEMA

---

Alexander J. Lindvall (Ariz. Bar No. 034745)
CITY OF MESA ATTORNEY'S OFFICE
MS-1077
P.O. Box 1466
Mesa, Arizona 85211
Phone: (480) 644-2343
Fax: (480) 644-2498
alexander.lindvall@mesaaz.gov

*Counsel for Defendants-Appellees Aaron Pew and Jacob Rozema*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................... 1

ISSUES FOR REVIEW ........................................................................ 1

STATEMENT OF THE CASE ............................................................... 1

    A.   Factual Background. ................................................................ 2

    B.   Procedural History. ................................................................ 7

SUMMARY OF THE ARGUMENT ....................................................... 8

STANDARD OF REVIEW ................................................................... 9

LEGAL ARGUMENT ......................................................................... 9

    A.  The defendant-officers' actions were reasonable under the
circumstances. ...................................................................... 10

        1.  All the *Graham* factors clearly favor the defendant-officers. 11

        2.  Existing caselaw strongly favors the defendant-officers. ....... 17

    B.  At a minimum, Officers Pew and Rozema are entitled to
qualified immunity because there is no existing law clearly
establishing that their conduct was unconstitutional. ............... 23

    C.  This Court's decision in *LaLonde* does not undermine the
defendant-officers' claim to immunity, and more recent caselaw
makes clear that the defendant-officers are entitled to immunity.
.......................................................................................... 32

        1.  The facts of *LaLonde* are glaringly different from the facts of
this case. ........................................................................ 32

        2.  The Supreme Court's decision in *Rivas-Villegas* further
shows that the defendant-officers are entitled to immunity. 38

        3.  The Eighth Circuit's recent decision in *Lombardo* further
show that the defendant-officers are entitled to immunity. . 43

CONCLUSION ................................................................................ 47

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Johnson*, 555 U.S. 323 (2009) ........................................... 19, 42

*Beaver v. City of Federal Way*, 301 F. App'x 704 (9th Cir. 2008) ..... 21, 29

*Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010) ........................... 6

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ......................... 12, 16

*Cadena v. Ray*, 728 F. App'x 293 (5th Cir. 2018) ................. 22, 25, 29, 33

*City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9 (2021) ............................. 29

*Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997) .............................. 20, 29

*Cortesluna v. Leon*, 979 F.3d 645 (9th Cir. 2020) ...................... 37, 40 , 44

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ....................... 11, 51

*Donovan v. Phillips*, 685 F. App'x 611 (9th Cir. 2017) ........................... 31

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) ............. 40

*Dunn v. Castro*, 621 F.3d 1196 (9th Cir. 2010) ....................................... 28

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) ................... 12

*Giannetti v. City of Stillwater*, 216 F. App'x 756 (10th Cir. 2007) ......... 53

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S.
    418 (2006) ................................................................................ 8

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ............. 14, 29

*Graham v. Connor*, 490 U.S. 386 (1989) ............................... 12, 13, 26, 41

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013) ................... 6

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016) ......................... 30, 33, 53

*Hanson v. Best*, 915 F.3d 543, 548 (8th Cir. 2019) ........................... 51, 53

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022) .............................. 27

*Johnson v. City of Phila.*, 837 F.3d 343 (3d Cir. 2016) ......... 23, 29, 43, 47

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) ............................................ 28, 46

*Kramer v. Cullinan*, 878 F.3d 1156 (9th Cir. 2018) ................................ 26

*LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000) ...... *passim*

*Lash v. Lemke*, 786 F.3d 1 (D.C. Cir. 2015) ............................................ 34

*Lombardo v. City of St. Louis*, 38 F.4th 684 (8th Cir. 2022) ...... 37, 48, 52

*Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019) ............... 27, 36

*Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) .................. 6, 16, 29

*Mendez v. Poitevent*, 823 F.3d 326 (5th Cir. 2016) ................................ 16

*Miller v. Clark Cty.*, 340 F.3d 959 (9th Cir. 2003) ................................. 14

*Moreno v. Baca*, 431 F.3d 633 (9th Cir. 2005) ........................................ 20

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) ................................ 35

*Mullenix v. Luna*, 577 U.S. 7 (2015) ................................................. 27, 40

*O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021) ................................. 10

*Payton v. New York*, 445 U.S. 573 (1980) ............................................... 42

*Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) ................ 29, 37, 44, 45

*Robinson v. Solano Cty.*, 278 F.3d 1007 (9th Cir. 2002) ................... 13, 18

*Ryburn v. Huff*, 565 U.S. 469 (2012) ....................................................... 26

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ....................................... 13

*Seidner v. de Vries*, 39 F.4th 591 (9th Cir. 2022) ................................. 34

*Thompson v. Rahr*, 885 F.3d 582 (9th Cir. 2018) ....................... 42, 43, 47

*United States v. Martinez-Martinez*, 295 F.3d 1041 (9th Cir. 2002) ...... 10

*Ventura v. Rutledge*, 978 F.3d 1088 (9th Cir. 2020) .............................. 11

## **Rules**

Fed. R. Civ. P. 56(a) ................................................................................. 9

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291. The order being appealed was entered on March 11, 2021, and the plaintiff filed his notice of appeal on March 22, 2021, which is within the 30-day timeframe required by 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a)(1)(A).

## ISSUES FOR REVIEW

1. Whether Officer Pew's and Officer Rozema's force was reasonable under the Fourth Amendment, given that the plaintiff was high on drugs, physically aggressive, actively resisting arrest, and attempting to flee.

2. Whether the district court properly awarded Officer Pew and Officer Rozema qualified immunity from the plaintiff's excessive-force claim.

## STATEMENT OF THE CASE

This is a § 1983 excessive-force case. The plaintiff alleged that two City of Mesa police officers and two Maricopa County Sheriff's deputies used excessive force in detaining him. The defendant-officers argued that

their force was reasonable under the circumstances and that, at a minimum, they were entitled to qualified immunity. The district court agreed with the defendant-officers and granted their motions for summary judgment.

At bottom, the defendant-officers' force was justified because, at the time of arrest, the plaintiff was high on mind-altering drugs, belligerent, uncooperative, actively trying to flee, being arrested for assaulting a police officer, and physically fighting with his arresting officers. And, as the district court found, these officers are entitled to qualified immunity because (i) the plaintiff cannot identify any case that clearly establishes the law in his favor, and (ii) the available caselaw strongly favors the officers, showing that the courts give officers extensive leeway when dealing with intoxicated, uncooperative, aggressive, violent, flight-prone suspects.

A. **Factual Background.**[1]

Aaron Pew and Jacob Rozema are police officers employed by the

---

[1] The latter half of the incident in question was captured on video. As the district court recounted: "The video shows three large officers straining to get Plaintiff into a position where he could be successfully handcuffed, that Plaintiff is repeatedly not complying with the officer's orders, and that he is struggling against them." [1-ER-10.]

City of Mesa Police Department. [1-ER-6.] On March 21, 2018, Officers Pew and Rozema pulled over a vehicle for making an unsafe and illegal traffic maneuver. [*Id.*] The driver of this vehicle pulled out of a driveway in front of the officers' squad car, and Officer Pew had to slam on his brakes to avoid hitting this vehicle. [*Id.*] The plaintiff was the front-seat passenger in this vehicle. [*Id.*]

While speaking with the vehicle's occupants, Officer Pew noticed that the plaintiff appeared to be extremely nervous. [*Id.*] He was heavily sweating and seemed to be looking to a nearby residential area, as if he were looking for a potential escape route. [*Id.*] The plaintiff admits that he was nervous. [*Id.*]

Officer Rozema asked the plaintiff to identify himself. [*Id.*] The plaintiff identified himself to Officer Rozema as "Kenneth Cory." [*Id.*] An onsite records check, however, revealed that the plaintiff was lying about his identity, and it was later revealed that his true identity was Cole Joseph Spencer. [*Id.*] Realizing that the plaintiff had given him a fake name, Officer Rozema asked the plaintiff to exit the vehicle. [1-ER-6-7.] Officer Rozema then attempted to arrest the plaintiff for "false reporting" in violation of Arizona law. [1-ER-7.]

When Officer Rozema attempted to handcuff the plaintiff, the plaintiff "panicked," shoved Officer Rozema in the chest, and began to run away from the scene. [*Id.*] Officer Rozema quickly caught up to the plaintiff and tackled him to the ground. [*Id.*] The plaintiff then flipped over onto his back and swung his fist at Officer Rozema's face several times and attempted to throw Officer Rozema off him. [*Id.*] Officer Pew then ran around the vehicle to assist Officer Rozema, leaving the vehicle's driver unsupervised. [*Id.*]

Officer Pew and Officer Rozema then proceeded to wrestle with the plaintiff, attempting to get him in handcuffs, but the plaintiff continued to actively resist and fight with these officers. [*Id.*] Officer Pew and Officer Rozema repeatedly ordered the plaintiff to "give up his hands," but the plaintiff continued to fight with the officers to avoid being arrested. [*Id.*] After wrestling with the plaintiff for about a minute, Officer Pew struck the plaintiff in the head, attempting to momentarily daze him so he could be handcuffed. [1-ER-8.] The plaintiff, however, was unphased and continued to aggressively fight with Officers Pew and Rozema. [*Id.*]

Officer Pew then tased the plaintiff in "dart" mode,[2] hoping the electric shock from the taser would subdue the plaintiff for a moment so that he could be handcuffed. [*Id.*] This initial taser shock had no effect on the plaintiff. [*Id.*] The plaintiff grabbed the taser's probes, ripped them off his body, threw them aside, and continued fighting with Officers Pew and Rozema. [*Id.*] Officer Pew then tased the plaintiff approximately three more times in "drive-stun" mode,[3] but these shocks again had no discernable effect on the plaintiff, and he continued to fight with his arresting officers. [*Id.*]

Around this time, two Maricopa County Sheriff's deputies arrived on the scene to assist Officers Pew and Rozema. [*Id.*] One of the deputies

---

[2] A taser in "dart" mode shoots a pair of metal darts into the target's skin and delivers a 1200-volt, low-amperage electrical charge. *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011). This electrical charge "overrides the [target's] central nervous system, paralyzing the muscles throughout the body, rendering the target limp…" *Id.* This Court has characterized tasers used in dart-mode as an "intermediate" level of force. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013).

[3] When a taser is used in "drive-stun" mode, "the operator removes the dart cartridge and pushes two electrode contacts…directly against the [target]." *Mattos*, 661 F.3d at 443. The taser then "delivers an electric shock to the [target], but does not cause an override of the [target's] central nervous system as it does in dart-mode." *Id.* This Court has characterized tasers used in drive-stun mode as a "less than intermediate" level of force. *Brooks v. City of Seattle*, 599 F.3d 1018, 1028 (9th Cir. 2010).

(Deputy Macklin) helped Officers Pew and Rozema detain the plaintiff,[4] while the other deputy (Deputy Shall) kept an eye on the vehicle's driver. [*Id.*] After approximately three and a half minutes of wrestling and fighting with the plaintiff, these three officers were finally able to handcuff him. [*Id.*] Both Officers Pew and Rozema were physically exhausted after this fight. [*Id.*]

Given their experience in law enforcement, it was clear to both Officer Pew and Officer Rozema that the plaintiff was under the influence of powerful drugs[5] because had an extremely high pain tolerance and

---

[4] As noted in the district court's order, Deputy Macklin held Plaintiff's legs down to stop him from flailing while Officers Pew and Rozema attempted to handcuff him. [1-ER-8.] "[Deputy] Macklin witnessed Plaintiff failing to follow the other officers' orders and actively resisting arrest." [1-ER-14.]

[5] In responding to the defendants' motion for summary judgment, the plaintiff submitted medical records showing that he told hospital staff that he was "altered on a drug called DMT." [1-ER-9 n.2.] These records also noted that the plaintiff's most recent substance abuse occurred on the day of the incident and frequently mentioned the plaintiff's "altered mental status," drug withdrawals, and "polysubstance abuse." [*Id.*] The Mesa Fire Department's report states that the plaintiff admitted he took methamphetamines. [*Id.*] At the hospital, the plaintiff admitted to Officer Rozema that he had smoked DMT about four minutes before the incident, which made him completely "out of it." [1-ER-9.] Meth and heroin were later found in the plaintiff's backpack. [*Id.*] And during his criminal sentencing, the plaintiff's attorney said, "It is clear that [Plaintiff] has a substance abuse issue and unfortunately, finds himself here." [1-ER-9 n.2.]

what seemed like superhuman strength.  [*Id.*]  It was later determined that the plaintiff was under the influence of methamphetamine and dimethyltryptamine (DMT).[6]  [1-ER-9.]  Methamphetamines and heroin were later found in the plaintiff's backpack.  [*Id.*]  The plaintiff subsequently pled guilty to second-degree burglary, third-degree burglary, and aggravated assault on a police officer.  [*Id.*]

## B.  __Procedural History__.

The plaintiff filed his first amended complaint on March 11, 2020. The district court dismissed part of that complaint during the screening process, but it allowed the plaintiff's excessive-force claims against Officer Pew and Officer Rozema to proceed.  Officers Pew and Rozema filed their motion for summary judgment on August 26, 2020, and Deputies Shall and Macklin filed their motion for summary judgment on December 7, 2020.  In a single order, the district court granted both motions on March 11, 2021.  The plaintiff appeals that order.

---

[6] DMT is a Schedule-I hallucinogenic drug.  *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425 (2006) (citing 21 U.S.C. § 812(c)).  DMT is "exceptionally dangerous" because it causes "psychotic reactions, cardiac irregularities, and adverse drug interactions."  *Id.* at 426, 432.

# SUMMARY OF THE ARGUMENT

The district court properly granted the defendant-officers' motions for summary judgment. The undisputed facts in this case show that (i) the plaintiff was "out of it" on hallucinogenic drugs at the time of arrest, (ii) he was being arrested for a serious and violent felony, (iii) he assaulted and physically fought his arresting officers, and (iv) he actively resisted arrest and tried to flee. [*See* 1-ER-10–12.] The plaintiff tries to mislead this Court in his brief by misstating what happened, exaggerating the extent of his injuries, and downplaying his level of resistance. But this is precisely the sort of case in which force is justified: the plaintiff, while high on mind-altering drugs, was aggressively fighting the police to avoid being arrested for a serious and dangerous felony. And to make matters worse, these drugs gave the plaintiff an extraordinarily high pain tolerance and what seemed like "superhuman strength." [1-ER-8.] These facts—and the cases cited in this brief—show that all the *Graham* factors are in the officers' favor and that their use of force was reasonable under the tense, uncertain, and rapidly evolving circumstances they faced.

Additionally, as the district court correctly recognized, these

officers are, at a minimum, entitled to qualified immunity because there are no cases favorable to the plaintiff that squarely govern this case. [1-ER-11-13.] To the contrary, the existing caselaw shows that the courts give officers considerable leeway when dealing with intoxicated, unpredictable, uncooperative, physically aggressive suspects. Because the available caselaw favors the officers, there is no way the plaintiff can show that these officers violated his "clearly established" rights. The district court's ruling, therefore, should be affirmed.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021). Summary judgment must be granted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court also reviews de novo all legal issues, *United States v. Martinez-Martinez*, 295 F.3d 1041, 1043 (9th Cir. 2002), including whether a police officer is entitled to qualified immunity, *Ventura v. Rutledge*, 978 F.3d 1088, 1090 (9th Cir. 2020).

## LEGAL ARGUMENT

There are two issues in a case involving qualified immunity: (1)

whether the facts show the violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged violation. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). As shown below, the district court properly awarded summary judgment to Officers Pew and Rozema because they did not violate any of the plaintiff's (clearly established) rights.

## A.   The defendant-officers' actions were reasonable under the circumstances.

The ultimate issue in a use-of-force case—as in all Fourth Amendment cases—is whether the officer's conduct was objectively unreasonable under the circumstances. *Cty. of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). And "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

As this Court has explained, "an officer need not have perfect

judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994); *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("[T]he appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them."). Rather, the only issue is "whether the officers acted reasonably," *Scott*, 39 F.3d at 915, given the "range of force that may [have] be[en] reasonable under the circumstances," *Bryan*, 630 F.3d at 818.

### 1. All the *Graham* factors clearly favor the defendant-officers.

When determining whether an officer's use of force was "excessive" or "unreasonable," the courts look to three main factors: (1) the seriousness of the crime at issue; (2) whether the suspect posed an immediate threat to the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. This Court has also directed the lower courts to consider the

suspect's apparent intoxication when analyzing excessive-force cases. *Robinson v. Solano Cty.*, 278 F.3d 1007, 1014 (9th Cir. 2002); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that issues of officer safety have "even greater salience" when a suspect is intoxicated).

In this case, all three *Graham* factors tip in the officers' favor. First, when the officers resorted to physical force, the plaintiff was being arrested for a serious crime. Although the plaintiff was initially being arrested for a relatively minor crime (false reporting), once he shoved and struck Officer Rozema, he was being arrested for aggravated assault and resisting arrest. These are both serious felonies, and the officers were justified in using physical force to restrain the plaintiff. *See Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003) (when a suspect commits a felony, the first *Graham* factor usually "strongly favors the government"). The district court properly found that the first *Graham* factor favors the officers. [*See* 1-ER-10.]

Second, the plaintiff clearly posed a risk of harm to the officers (he pled guilty to assaulting one of the officers). The plaintiff was actively trying to harm his arresting officers. In his brief, the plaintiff repeatedly

tries to downplay his level of resistance.[7] But the video footage and case record show that the plaintiff went absolutely berserk on his arresting officers. As Officer Pew described in his report: "It was obvious to me [that the plaintiff] was willing to do anything, including active violence toward a police officer[,] to avoid arrest." [3-ER-387.] The plaintiff, as the initial aggressor, struck Officer Rozema in the face and proceeded to wrestle and fight the officers for roughly three and a half minutes. And during this three-and-a-half-minute street brawl, the officers' service weapons were in the open and within the plaintiff's reach.

This Court has repeatedly stated that officer safety is the "most important" consideration in use-of-force cases. *E.g.*, *Mattos*, 661 F.3d at 441; *Bryan*, 630 F.3d at 826. This altercation had the potential to turn deadly at any moment, especially because the plaintiff was exhibiting

---

[7] At one point in his brief, the plaintiff claims that he "never punched, kicked, or otherwise moved offensively towards either officer…" [Appellant's Replacement Opening Brief (DktEntry 57) at 18.] This is a flagrant lie that is clearly contradicted by the video evidence, the officers' sworn testimony, and his guilty plea for aggravated assault on an officer. In addressing the plaintiff's claim that he was "not resisting," Judge Campbell noted that "Plaintiff's assertion is plainly contradicted by the video evidence." [1-ER-10.] The video clearly shows the plaintiff going absolutely berserk to avoid being handcuffed. He physically fought three police officers for three and a half minutes. The plaintiff's threadbare, self-serving assertion that he was not resisting is beyond ridiculous—it is a bald-faced lie to the Court.

erratic, violent, and unpredictable behavior.  As such, these officers were justified in using physical force to protect themselves and others.  *See Mendez v. Poitevent*, 823 F.3d 326, 332–33 (5th Cir. 2016) (approving an officer's use of deadly force because the suspect was violently and aggressively struggling against his arresting officer).  Given his drug-altered and erratic mental state, the plaintiff was obviously a danger to everyone around him.  The "most important" *Graham* factor thus favors the officers.

Third, the plaintiff admits that he was actively resisting arrest and attempting to flee.[8]  [Appellant's Original Opening Brief (DktEntry 23) at 15 ("I don't feel that there is any need to waste the court's time convincing you that I was not resisting.  This much is obvious…"); *id.* at 17 (plaintiff openly admitting that he was resisting).]  Even before the officers attempted to place the plaintiff under arrest, he was sweaty, nervous, and appeared to be looking at the area nearby to plan out his

---

[8]  At the summary judgment stage, the plaintiff argued that "he could not give up his hands because…his hands and body were 'locked up due to neuro-muscular incapacitation.'"  [1-ER-7-8.]  The plaintiff seems to have abandoned that argument.  The plaintiff has offered shifting justifications for his actions throughout this case, and he has never once taken any responsibility for starting a street fight with three police officers for no reason.

escape path. And once the officers attempted to handcuff the plaintiff, he struck his arresting officer and began to run toward the nearby residential area. Additionally, because of the plaintiff's drug use, he was extremely difficult to restrain. In his report, Officer Pew stated that the plaintiff "was not feeling any pain" and seemed to have "superhuman strength." [3-ER-388.] Given the plaintiff's drug-fueled rage and heightened pain tolerance, these officers were justified in using a greater-than-normal level of force to subdue him. The officers were not acting out of malice toward the plaintiff, but rather were using the force necessary to subdue a violent and frenzied suspect who was "out of it" on meth and hallucinogenic drugs. The district court properly found that the third *Graham* factor favors the officers. [*See* 1-ER-11.]

Additionally, in excessive-force cases, this Court has also directed the lower courts to consider "whether the plaintiff was sober" and "whether other dangerous…circumstances existed at the time of arrest." *Robinson*, 278 F.3d at 1014. These considerations further show that the officers' use of force was justified in this case. At the time of arrest, the plaintiff was high on mind-altering drugs. These drugs gave the plaintiff a distorted sense of reality, a heightened pain tolerance, and an unusual

amount of strength.  The defendant-officers were not dealing with a calm, level-headed suspect; they were dealing with a violent, unusually strong drug-abuser [*see* 1-ER-9 n.2] who seemingly could not feel pain.  These unusual facts show that a greater-than-normal level of force was justified in this case, and they also show that this case is easily distinguishable from most other excessive-force cases.

Once the plaintiff attempted to flee and resisted arrest, moreover, Officers Pew and Rozema were forced to turn their backs on the vehicle's driver and leave him unattended.  These officers did not know whether this driver had weapons, whether he was violent, whether he was also high on drugs, etc.  Because the vehicle's driver was left unsupervised and because traffic stops are "especially fraught with danger to police officers," Officers Pew and Rozema were justified in taking immediate, forceful control over the situation, thereby minimizing the "risk of harm to both the police and the occupants."  *See Arizona v. Johnson*, 555 U.S. 323, 330 (2009); *see also id.* (advising officers to "exercise unquestioned command" over traffic stops); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998) (noting that officers should stop fleeing suspects to "show that flight from the law is no way to freedom").

Because all the *Graham* factors (and other relevant factors) tip in the officers' favor, they were constitutionally justified in using force to detain the plaintiff.  And because the plaintiff was physically fighting with these officers while "out of it" on mind-altering drugs—thereby increasing his strength and pain tolerance—the officers were justified in using significant force to detain him.  Because the officers' use of force was reasonable under *Graham*, they did not violate the plaintiff's Fourth Amendment rights and are entitled to judgment in their favor.  The district court's ruling should be affirmed.[9]

### 2.      Existing caselaw strongly favors the defendant-officers.

The available caselaw further shows that the officers' use of force was reasonable in this case.  This case is very similar to *Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997).  In *Colston*, two officers stopped a vehicle for a routine traffic stop.  *Id.* at 97.  During the stop, the vehicle's passenger gave the officers a fake name.  *Id.*  The officers then decided to arrest the passenger for providing a false name to police.  *Id.* at 98.  Like

---

[9]      Although the district court awarded summary judgment to Officers Pew and Rozema on qualified immunity grounds, this Court "may affirm the district court on any basis supported by the record." *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

the plaintiff in this case, the passenger in *Colston* disobeyed the officers' orders to get on the ground, forcefully resisted the officers' attempts to handcuff him, and initiated a street fight with his arresting officer. *Id.* After the passenger threw one of the officers to the ground, that officer drew his gun and fired two shots that struck the passenger in the back of his arm and in his buttocks. *Id.*

The passenger subsequently filed an excessive-force claim against this officer. *Id.* The district court denied the officer's motion for summary judgment. *Id.* On interlocutory appeal, the Fifth Circuit reversed. *Id.* at 100. The officer's use of deadly force was reasonable, the court held, because (i) the suspect repeatedly disobeyed the officer's commands, (ii) the suspect aggressively resisted the officer's attempts to gain control over him, (iii) the officer's lesser uses of force were ineffective, and (iv) the officer reasonably feared for his safety. *Id.* at 99–100.

In *Beaver v. City of Federal Way*, 301 F. App'x 704 (9th Cir. 2008), moreover, this Court found that two officers acted reasonably when they repeatedly tased an intoxicated, uncooperative suspect. *Id.* at 705. There, a suspect was fleeing a residential burglary. *Id.* When officers eventually caught the suspect, they tackled him to the ground, but the

suspect refused to give up his hands, largely because he was "highly intoxicated on drugs." *Id.* at 705–06. The officers then proceeded to tase the suspect until he gave up his hands. *Id.*

The suspect subsequently sued the officers under § 1983, arguing they had used excessive force by repeatedly tasing him during his arrest. *Id.* at 705. The district court granted the officers' motion for summary judgment. *Id.* On appeal, this Court affirmed, holding that the officers were justified in using their tasers because the suspect had committed a serious crime, attempted to flee, and was noncompliant once caught. *Id.*

Similarly, in *Cadena v. Ray*, 728 F. App'x 293 (5th Cir. 2018), the Fifth Circuit found that three officers acted reasonably when they body-slammed, wrestled, kneed, and tased a suspect because the suspect was intoxicated and belligerent. *Id.* at 295–96. In *Cadena*, three officers were attempting to arrest a suspect for public intoxication. *Id.* at 294. The suspect refused several lawful orders, was shouting loudly, and tried to run away from the arresting officers. *Id.* To effectuate the arrest, one of the officers pushed the suspect against a wall and wrestled him to the ground. *Id.* Once on the ground, the suspect refused to give up his hands, leading the other officers to repeatedly knee and tase him. *Id.* at 294–95.

The plaintiff subsequently sued these officers for excessive-force. *Id.* at 295.

On appeal, the Fifth Circuit held that the officers' greater-than-normal use of force did not violate the Fourth Amendment. *Id.* at 296. Because the suspect refused to place his hands behind his back and actively resisted the officers, the court found that he posed an immediate threat to the officers' safety. *Id.* Additionally, the suspect's "intoxicated state and erratic behavior gave the [o]fficers further reason to believe he was a threat." *Id.* Given the suspect's belligerent behavior, the court concluded that the officers' use of force "corresponded to [the suspect's] level of resistance, and was thus reasonable." *Id.* at 297.

The Third Circuit also recently found that an officer acted reasonably when he used deadly force against a suspect who was high on PCP and initiated a street-fight with the officer. *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016). In *Johnson*, an officer came across a confused, angry man who appeared to be high on drugs. *Id.* at 346. When the officer approached the suspect, he began running toward the officer, shouting. *Id.* The officer tased the suspect several times, but it did not have any effect. *Id.* A "violent struggle ensued,"

where the officer struck the suspect in the head multiple times, threw him against a parked car, and wrestled him to the ground. *Id.* As they wrestled on the ground, the officer drew his gun and shot the suspect twice in the chest. *Id.* The suspect was not phased and continued struggling with the officer. *Id.* The officer then shot the suspect again, but the suspect kept fighting. *Id.* The officer then shot the suspect for a fourth time, killing him. *Id.*

The district court subsequently granted the officer's motion for summary judgment, finding that he acted reasonably given the circumstances. *Id.* at 348. On appeal, the Third Circuit affirmed, holding that the officer was justified in using deadly force against the suspect because the suspect started a drug-fueled brawl with the officer, causing the officer to reasonably fear for his safety. *Id.* at 350. The *Johnson* court believed the Fourth Amendment issue was "straightforward" because of the "extraordinary" circumstances the officer faced. *Id.* at 352, 353. Because the suspect initiated the altercation, exhibited "extraordinary violence," and was "unfazed" by the officer's less-than-lethal uses of force, the officer was justified in using deadly force, because the Fourth Amendment "does not oblige an officer to passively endure a life-

threatening physical assault, regardless of the assailant's mental state."
*Id.* at 353. To borrow the *Cadena* court's phrasing: the officer's use of force was reasonable because it "corresponded to [the suspect's] level of resistance." *Cadena*, 728 F. App'x at 297.

*Colston*, *Beaver*, *Cadena*, and *Johnson* show that Officer Pew and Officer Rozema acted reasonably in this case. In each of these cases, the officers were justified in using serious (sometimes even deadly) force because their suspects were intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive towards the arresting officers. The same is true in this case. There are no meaningful differences between this case and the cases cited above. In those cases, the officers were awarded summary judgment. Accordingly, in this case, the district court properly awarded Officers Pew and Rozema summary judgment as well.

\* \* \* \*

In short, the plaintiff, while high on hallucinogenic drugs, was physically fighting with the police to avoid being arrested for a serious felony. This sort of situation checks all three *Graham* boxes, and Officers Pew and Rozema were justified in using significant physical force to detain the plaintiff. These officers were tasked with detaining a violent,

drug-fueled suspect with a heightened pain tolerance and an unusual amount of strength.  This is precisely the sort of situation the Supreme Court has sought to insulate, *see Graham*, 490 U.S. at 396–97, and this Court should not second-guess these officers' decisions, *see Ryburn v. Huff*, 565 U.S. 469, 477 (2012) ("[J]udges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation.").  The district court's ruling should be affirmed.

**B.**   **At a minimum, Officers Pew and Rozema are entitled to qualified immunity because there is no existing law clearly establishing that their conduct was unconstitutional.**

Once an officer asserts qualified immunity, "[t]he plaintiff bears the burden of demonstrating that the right at issue was clearly established." *Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018).  In this regard, the plaintiff is required to show that the law that existed at the time of the alleged violation had placed the relevant constitutional issue "beyond debate," such that "every reasonable official would have understood…that the conduct [at issue] was a violation of a constitutional right."  *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019).  Typically, this means the plaintiff must point to "prior case law that

articulates a constitutional rule specific enough to alert [the defendant-officers] that their particular conduct was unlawful." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).

The specificity of precedent is "especially important in the Fourth Amendment context" because it is difficult for officers to apply broad principles of reasonableness to the complicated factual situations they often confront. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "Use of excessive force," in other words, "is an area of the law 'in which the result depends very much on the facts of each case,' and thus <u>police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue</u>." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 13). Whether a right was "clearly established" is "solely a question of law for the judge." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010).

In this case, the plaintiff cannot show that the defendant-officers violated clearly established law. In his brief, the plaintiff cites a few use-of-force cases that he believes to clearly establish the law in his favor. [Appellant's Replacement Opening Brief (DktEntry 57) at 35, 39–41.] But this case has three aspects that differentiate it from a typical police-

suspect interaction: (1) the plaintiff was "out of it" on drugs, which made him irrational, aggressive, unusually strong, and near-impervious to pain; (2) the plaintiff initiated a brawl by shoving and then punching his arresting officer; and (3) the plaintiff fought with three officers and refused to give up his hands for well over three minutes, despite the officers' repeated commands, warnings, and escalating levels of force.

Given these facts, an extensive search of federal caselaw did not reveal any precedent favorable to the plaintiff that "squarely governs" this case (as evidenced by the district court's ruling). In fact, as shown above, the available caselaw shows that officers should be given considerable leeway when dealing with intoxicated, violent, unpredictable suspects—and these officers should typically be awarded immunity. *See*, *e.g.*, *City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 10–12 (2021); *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–9 (2021); *Colston*, 130 F.3d at 99–100; *Cadena*, 728 F. App'x at 295–96; *Beaver*, 301 F. App'x at 705; *Johnson*, 837 F.3d at 350; *Gonzalez*, 747 F.3d at 804; *see also Mattos v. Agarano*, 661 F.3d 443, 445–46 (9th Cir. 2011) (awarding qualified immunity to officers who tased an uncooperative woman during a traffic stop, even though her offenses were minor, she was not a serious safety threat, and she did not attempt

to flee).

Likewise, in *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016), the Fifth Circuit awarded immunity to an officer who punched, kicked, and tackled an uncooperative drunk-driving suspect because the suspect was noncompliant and resisted arrest. *Id.* at 314–15. In *Griggs*, the officer stopped a suspect for running a red light. *Id.* at 311. The officer smelled alcohol on the suspect and believed that he was intoxicated. *Id.* The officer eventually decided to arrest the suspect for drunk driving after he failed a sobriety test. *Id.* When the officer attempted to handcuff the suspect, however, the suspect "lurched to the side" and would not give up his hands. *Id.* The officer immediately "performed a 'takedown' maneuver and threw [the suspect] face-down onto the [ground] and landed on top of him." *Id.* When the suspect still refused to give up his hands, the officer "punched [the suspect] with a closed fist to the back of the head" several times, at which point the suspect surrendered and gave up his hands. *Id.* The suspect subsequently sued the officer for excessive force. *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity. *Id.* On

appeal, the Fifth Circuit affirmed, finding both that the officer's conduct was reasonable and that there was no "clearly established" law that proscribed his conduct. *Id.* at 314–15. Although the officer's "actions may not have been as restrained as we would like," the court reasoned, "qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force.'" *Id.* at 315 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). And because the officer's "use of force was the sort of 'split-second judgment' in a difficult situation that qualified immunity [was] designed to protect," the court found that summary judgment was appropriate. *Id.* at 316 (citing *Graham*, 490 U.S. at 396–97).

Similarly, this Court awarded immunity to an officer who body-slammed an intoxicated, uncooperative suspect in *Donovan v. Phillips*, 685 F. App'x 611, 613 (9th Cir. 2017). In *Donovan*, the officer pulled over a vehicle on suspicion of drunk driving. *Id.* at 612. While the officer was administering a sobriety test on the driver, the vehicle's passenger exited the vehicle. *Id.* After the passenger "failed to comply with [the officer's] repeated orders to remain in [the] vehicle," the officer bear-hugged the passenger and threw her to the ground. *Id.* The passenger subsequently

sued the officer for excessive force. *Id.*

The district court granted the officer's motion for summary judgment, finding that he was entitled to qualified immunity. *Id.* On appeal, this Court affirmed, holding both that the officer's force was reasonable and that there was no clearly established law to the contrary. *Id.* at 612–13. Although the passenger "made no aggressive movements towards" the officer, this Court nonetheless found that the officer "had a substantial interest in taking the necessary steps to secure [the passenger] quickly once she exited her car," because traffic stops are "fraught with danger to police officers," especially when the suspect(s) may be intoxicated. *Id.* The court went on to hold that the officer would be entitled to immunity even if the court assumed his use of force was excessive, because "it was not beyond debate that the totality of the circumstances surrounding [the officer's] seizure of [the suspect] would indicate that his use of force was clearly unreasonable." *Id.* at 613.

The same is true in this case. For one, as outlined above, the officers' use of force in this case was reasonable under the circumstances because the plaintiff was intoxicated, belligerent, uncooperative, flight-prone, and physically fighting his arresting officers. So, although the officers used

an above-average amount of force, this force always "corresponded to [the plaintiff's] level of resistance, and was thus reasonable." *See Cadena*, 728 F. App'x at 297.

Additionally, because the available caselaw is in the officers' favor, the plaintiff cannot show that his "clearly established" rights were violated. These officers were in the exact sort of "tense, uncertain, and rapidly evolving" situation that qualified immunity was designed to safeguard. *Griggs*, 841 F.3d at 316 (citing *Graham*, 490 U.S. at 397). And because the plaintiff cannot point to any favorable precedent that "squarely governs" the circumstances seen in this case, the officers are entitled to immunity, as the district court recognized.

Realizing that the caselaw is not in his favor, the plaintiff shifts gears and argues that he was "subdued" when these officers used force on him. [Appellant's Replacement Opening Brief (DktEntry 57) at 41, 42.] This is absurd. The plaintiff made a similar argument in the district court; and as Judge Campbell correctly noted in his summary judgment order, this argument "is plainly contradicted by the video evidence." [1-ER-10.] "The video shows three large officers straining to get Plaintiff into a position where he could be successfully handcuffed, that Plaintiff is

repeatedly not complying with the officers' orders, and that he is struggling against them." [*Id.*] The plaintiff's "I was subdued" argument should not be taken seriously because it is clearly contradicted by the video evidence in this case. *See Seidner v. de Vries*, 39 F.4th 591, 594–95 (9th Cir. 2022) (observing that courts "do not accept a version of the events that the record, such as an unchallenged video recording of the incident, quite clearly contradicts"); *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015) (refusing to accept a plaintiff's claim that he was not resisting arrest because "[m]ultiple video recordings of the episode ma[d]e perfectly clear that [the plaintiff] resisted the officers' efforts to arrest him"); *id.* at 7 ("No matter what [the plaintiff] claims now, we know to a certainty that he resisted arrest because we can see him doing so.").

All the evidence in this case points to one conclusion: the plaintiff, while high on meth and DMT, physically fought three police officers for a prolonged period of time to avoid being arrested for a violent felony. As such, the defendant-officers were justified in using significant force to get the plaintiff under control. Given these unusually dangerous and uncertain circumstances, the district court's ruling should be easily affirmed.

* * * *

"[O]vercoming qualified immunity is especially difficult in excessive-force cases." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019). To overcome this defense, the plaintiff must meet a "demanding standard." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). He must show that "existing precedent 'squarely governs'" this case and clearly entitles him to relief. *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)).

The plaintiff cannot meet this burden. Given the above-referenced caselaw and the volatile circumstances seen in this case, there is no way for this Court to conclude that "every reasonable official would have understood, beyond debate, that [Officer Pew's and Officer Rozema's] conduct was a violation of a constitutional right." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019). To the contrary, the existing caselaw shows that the level of force seen in this case was surely reasonable—especially when you consider the plaintiff's intoxication, aggressive behavior, unusual strength and pain tolerance, and unhinged mental state. Accordingly, because Officers Pew and Rozema did not violate any of the plaintiff's clearly established rights, the district court

properly granted their motion for summary judgment. The district court's ruling should be affirmed.

## C. **This Court's decision in *LaLonde* does not undermine the defendant-officers' claim to immunity, and more recent caselaw makes clear that the defendant-officers are entitled to immunity.**

In a prior order, this Court directed the parties to specifically address two cases: *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000), and *Cortesluna v. Leon*, 979 F.3d 645 (9th Cir. 2020), *rev'd sub nom. Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021). [DktEntry 46.] *LaLonde* does not undermine the defendant-officers' claim to immunity, and the Supreme Court's recent decision in *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021), and the Eighth Circuit's recent decision in *Lombardo v. City of St. Louis*, 38 F.4th 684 (8th Cir. 2022), make clear that the defendant-officers are entitled to qualified immunity.

### 1. **The facts of *LaLonde* are glaringly different from the facts of this case.**

In *LaLonde*, this Court held that an officer violated the Fourth Amendment when he "deliberately dug his knee into [a suspect's] back" because the suspect was not resisting and was suspected of only a minor crime. *LaLonde*, 204 F.3d at 959 & n.17. In *LaLonde*, officers responded

to a noise complaint at an apartment complex. *Id.* at 950–51. When they knocked on the suspect's door, he "appeared in his underwear and a T-shirt, holding a sandwich in his hand." *Id.* at 951. After speaking with the suspect for a bit, a scuffle ensued. *Id.* at 951–52. An officer tackled the suspect to the ground and sprayed his face with pepper-spray. *Id.* at 952. After being pepper-sprayed, the suspect stopped resisting. *Id.* Nonetheless, even though the suspect was lying face-down and was no longer resisting, another officer "deliberately dug his knee into [the suspect's] back," causing him to suffer a serious back injury. *Id.* at 952, 959 & n.17.

The suspect subsequently sued this officer under § 1983. *Id.* at 953. The suspect argued that, because he was not resisting and was suspected of committing only a minor crime, the officer violated his clearly established rights when he forcefully dug his knee into his back. *Id.* The district court dismissed the suspect's case, but this Court reversed, holding that the officer violated clearly established Fourth Amendment law by digging his knee into the suspect's back because (a) he was in a prone position, (b) he was not resisting, and (c) he was suspected of only a minor crime. *Id.* at 953, 959.

In this case, *LaLonde* cannot clearly establish the law in the plaintiff's favor because *LaLonde*'s facts are markedly different from this case's facts.

First, the suspect in *LaLonde* was seemingly rational and sober, but the plaintiff in this case was high on methamphetamines and DMT—the combination of which made him extraordinarily dangerous, irrational, frenzied, and unpredictable. This factual distinction by itself is more than enough to show that *LaLonde* does not govern this case. In *LaLonde*, the officers were dealing with a non-resistive, sandwich-eating, ponytailed man who was being investigated for only a noise complaint. *Id.* at 950–52, 959. In this case, the defendant-officers were dealing with an extremely aggressive, dangerous, intoxicated, and resistive felon who was being arrested for assaulting a police officer, and who challenged three officers to a three-and-a-half-minute-long, drug-fueled street brawl. These drugs, moreover, made the plaintiff unusually strong and gave him a significantly heightened pain tolerance.

*LaLonde* and this case, in other words, are nothing alike: *LaLonde* involved a sober, non-resistive, noisy neighbor; this case involves an aggressive, resistive, drug-fueled felon who had heightened strength and

pain tolerance and who actively fought with several police officers for an extended period of time. Given these glaring, material factual distinctions, there is no way for this Court to conclude that *LaLonde* "squarely governs" this case. *See Mullenix*, 577 U.S. at 12–13 (stressing that the specificity of precedent is "especially important" in the excessive-force context, and that officers are entitled to qualified immunity unless existing precedent "squarely governs" the case at hand).

Second, the suspect in *LaLonde* was not resisting when the officer dug his knee into his back, but the plaintiff in this case was clearly resisting and fighting with his arresting officers. This Court—consistent with several of its sister circuits—has held that "police may not kneel on a prone *and non-resisting* person's back so hard as to cause injury." *Cortesluna*, 979 F.3d at 655 (emphasis added); *see also Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003); *LaLonde*, 204 F.3d at 959. But this Court has never held that an officer may not kneel on a *resistive* suspect's back—and it certainly has never held that officers may not kneel on the back of a resistive suspect who is also high on drugs, aggressively fighting with multiple officers for an extended period of time, and being arrested for a violent felony. The plaintiff's resistance in

this case dwarfs any resistance seen in *LaLonde*. In *LaLonde*, the suspect offered no resistance; in this case, the plaintiff fought his arresting officers for over three and a half minutes. This distinction by itself shows that *LaLonde* and this Court's other knee-on-the-back cases do not squarely govern this case.

Third, the suspect in *LaLonde* was suspected of only a very minor crime (noise disturbance), but the plaintiff in this case was being arrested for a serious and violent felony (assaulting a police officer). The severity of the plaintiff's crime is obviously highly relevant to an excessive-force analysis. *Graham*, 490 U.S. at 396. And the plaintiff's crime in this case was far more serious than the suspect's crime in *LaLonde*. The government, accordingly, had a much stronger interest in this case than it did in *LaLonde*, and this material factual distinction further shows that the law is not clearly established in this case.

Fourth, the seizure in *LaLonde* took place in the suspect's home, but the seizure in this case occurred on the street during a traffic stop. The Supreme Court and this Court have both drawn sharp distinctions between in-home seizures and traffic stops. *E.g.*, *Thompson v. Rahr*, 885 F.3d 582, 589 (9th Cir. 2018). Warrantless in-home seizures are

presumptively unconstitutional, *Payton v. New York*, 445 U.S. 573, 586 (1980), and homes are afforded the highest form of Fourth Amendment protection, *see Thompson*, 885 F.3d at 589. Traffic stops, on the other hand, are "especially fraught with danger to police officers," *Arizona v. Johnson*, 555 U.S. 323, 330 (2009), and the courts give police far more leeway during traffic stops, *see Thompson*, 885 F.3d at 589. This material distinction further shows that the law is not clearly established in this case.

The facts of *LaLonde*, in other words, are wildly different from the facts of this case. In *LaLonde*, the officer knelt on the back of a sober, compliant, non-resistive man who was suspected of only a noise disturbance. *LaLonde*, 204 F.3d at 953, 959. In this case, on the other hand, the plaintiff was nowhere near sober, he was not compliant, he was constantly resisting, and he was being arrested for a violent felony. The plaintiff in this case challenged three police officers to a three-and-a-half-minute-long, drug-fueled street brawl, and because of the drugs and adrenaline in his system, the plaintiff was seemingly immune to pain and had what seemed like a "superhuman" amount of strength. [1-ER-8.] The seizure in this case, moreover, occurred during a traffic stop—a

circumstance that is "especially fraught with danger to police officers," *Johnson*, 555 U.S. at 330—while the seizure in *LaLonde* took place in the suspect's home, which is afforded the highest form of Fourth Amendment protection, *see Thompson*, 885 F.3d at 589. This case's facts are nothing like the facts of *LaLonde*. And for this reason, *LaLonde* cannot clearly establish the law in the plaintiff's favor in this case.

### 2. The Supreme Court's decision in *Rivas-Villegas* further shows that the defendant-officers are entitled to immunity.

The Supreme Court's recent decision in *Rivas-Villegas* further shows that the district court properly awarded qualified immunity to the defendant-officers in this case. In *Cortesluna*, this Court, relying almost exclusively on *LaLonde*, held that an officer violated clearly established Fourth Amendment law when "pressed his knee into [a suspect's] back" during a high-risk arrest. *Cortesluna*, 979 F.3d at 650, 653–56. The Supreme Court, however, in no uncertain terms, summarily and unanimously reversed this Court because it found that *LaLonde* was too dissimilar to create clearly established law. *Rivas-Villegas*, 142 S. Ct. at 7–9.

In *Cortesluna*, a 911 dispatcher received a call from a 12-year-old

girl who reported that her mother's boyfriend was trying to attack her and her family with a chainsaw. *Id.* at 649. The girl also reported that her mother's boyfriend was "always drinking, had anger issues, [and] was really mad." *Id.* (internal quotes omitted). The dispatcher relayed this information to several police officers, and they responded to the scene. *Id.* The officers ordered the suspect to exit his home with his hands up and get on his knees. *Id.* at 650. The suspect complied; but as the suspect got down on his knees, one of the officers saw a knife protruding from the suspect's pocket. *Id.* One of the officers then "used his foot to push [the suspect] to the ground," and he then "pressed his knee into [the suspect's] back and pulled [his] arms behind his back." *Id.* A few moments later, the officer lifted the suspect up by his handcuffed hands and moved him away from the residence. *Id.*

The suspect later sued this officer under § 1983, arguing that the officer violated his clearly established rights when he kneeled on his back during the arrest. *Id.* The district court granted the officer summary judgment, but this Court reversed, holding that *LaLonde* clearly established that the officer's force was unconstitutionally excessive. *Id.* at 654–56. On appeal, however, the Supreme Court unanimously and

summarily reversed this Court, holding that *LaLonde* was not sufficient to show that the suspect's clearly established rights were violated. *Rivas-Villegas*, 142 S. Ct. at 7.

The Court held that *LaLonde* was materially different from *Cortesluna* for two main reasons: (1) the officers in *LaLonde* were responding to a mere noise complaint, but the officers in *Cortesluna* were responding to a report of serious domestic violence; and (2) the suspect in *LaLonde* was unarmed, but the suspect in *Cortesluna* was carrying a knife. *Id.* at 8–9. These two factual distinctions, the Court held, "materially distinguish[ed]" *LaLonde* from *Cortesluna*. *Id.* at 9.

If these two distinctions were enough to show that *LaLonde* did not clearly establish the law in *Cortesluna*, then the factual distinctions between *LaLonde* and this case are more than enough to show that *LaLonde* does not "squarely govern" this case. *See Kisela*, 138 S. Ct. at 1153.

    i.    In *LaLonde*, the suspect was sober and rational. In this case, the plaintiff was high on meth and DMT, which made him violent, confused, irrational, unusually strong, and seemingly impervious to the officers' pain-compliance tactics.

   ii.    In *LaLonde*, the suspect was compliant and was not resisting arrest. In this case, the plaintiff was anything but compliant; he challenged three officers to a prolonged, drug-fueled street

fight.  The video evidence clearly shows the plaintiff kicking, scratching, clawing, squirming, and screaming to avoid being arrested, all while his arresting officers repeatedly tell him to put his hands behind his back.  The arresting officers were absolutely exhausted after this incident, and the scuffle in *LaLonde* pales in comparison to what the defendant-officers encountered here.

iii.   In *LaLonde*, the suspect was being investigated for a mere noise complaint.  In this case, the plaintiff was being arrested for a serious and dangerous felony: assaulting a police officer.  The plaintiff in this case is nothing like the suspect in *LaLonde*: the suspect in *LaLonde* was a compliant, non-resistive misdemeanant; the plaintiff here was a violent, drugged-out felon who initiated a street fight with three police officers.

iv.   In *LaLonde*, the seizure occurred in the suspect's home (or at least within his home's curtilage), which receives the highest form of Fourth Amendment protection, *see Thompson*, 885 F.3d at 589.  The seizure in this case took place on the street, in public, during a traffic stop—a circumstance that is "especially fraught with danger to police officers," *Johnson*, 555 U.S. at 330.  The Supreme Court has encouraged officers to "exercise unquestioned command" over traffic stops to minimize the risk of harm to the police, the suspects, and the public.  *Id.*   And to make matters even more tense and uncertain, when the plaintiff went berserk and began assaulting his arresting officers, the officers were forced to turn their backs on the vehicle's driver.  The officers didn't know whether the driver was armed, dangerous, or also high on drugs, and it was clearly in the officers' immediate interest to detain the plaintiff as quickly as possible.

These factual distinctions are glaring.  Comparing *LaLonde* to this case isn't like comparing apples to oranges; it's like comparing apples to

hand grenades. The officers in *LaLonde* were tasked with detaining a sober, compliant, non-resistive misdemeanant. The defendant-officers, on the other hand, were tasked with wrangling an aggressive, irrational, dangerous felon who was fueled by methamphetamines and hallucinogenics. *LaLonde*, accordingly, does not govern this case. And given the volatile situation the defendant-officers confronted, this Court should give them a considerable amount of leeway.

*Rivas-Villegas* is helpful because it shows (a) that *LaLonde* cannot clearly establish the law in a case involving a dangerous suspect, (b) that the police may temporarily place their knees on a suspect's back if the officers have reason to believe the suspect might be dangerous or flight-prone, and (c) that the qualified immunity doctrine gives police considerable leeway when they are dealing with dangerous, noncompliant suspects. In this case, as in *Rivas-Villegas*, the defendant-officers were dealing with a dangerous, violent suspect. They were thus justified in using a greater-than-normal amount of force to subdue the suspect to prevent him from fleeing and to prevent him from harming the officers or others. *Rivas-Villegas* further shows that the district court properly awarded immunity to the defendant-officers in this case.

### 3. The Eighth Circuit's recent decision in *Lombardo* further show that the defendant-officers are entitled to immunity.

After the Supreme Court issued its *Rivas-Villegas* decision, the Eighth Circuit had the opportunity to decide whether an officer violates clearly established law when he pushes his knee into the back of a prone, resistive suspect. *Lombardo*, 38 F.4th at 690–92. And after cataloging and applying dozens of knee-to-the-back cases from across the country, the Eighth Circuit unanimously concluded that "the precedent in this area is insufficient to demonstrate…a clearly established right of a detainee to be free from prone restraint while resisting." *Id.* at 690. In other words, there is no precedent telling officers that they may not kneel on a suspect who is actively resisting arrest. *See id.* at 690–92 (applying and distinguishing other knee-to-the-back cases, including those from the Ninth Circuit).

In *Lombardo*, the police arrested a suspect for several nonviolent crimes. *Id.* at 686–87. While at the local jail, the suspect tried to hang himself in his cell. *Id.* at 687. Several officers rushed to the suspect's aid. *Id.* Once in the cell, an officer tried to handcuff the suspect to prevent him from harming himself. *Id.* When the officer attempted to

handcuff the suspect, however, he began to struggle and resist. *Id.*

Several other officers then joined in, and the suspect was handcuffed a

few moments later. *Id.* But once the suspect was fully handcuffed, he

tried to stand up, began thrashing, hit his head on a bench, and kicked

and struck at least one officer. *Id.* It was later determined that the

suspect had "a large amount of methamphetamine in his system," which

would explain his erratic, violent, and irrational behavior. *Id.* at 689.

The officers then placed leg restraints on the suspect, but because

of apparent "psychotic issues," the suspect continued to thrash around

and resist. *Id.* at 687–88.[10] Several officers then placed their knees on

---

[10] The officers in *Lombardo*, moreover, often had to exit the cell, catch their breath, and take turns trying to wrangle the suspect, because prolonged wrestling matches like this are extraordinarily exhausting. *See id.* at 687–88. For context, a college wrestling period is between two and three minutes in length—meaning this is the maximum period of time the NCAA expects elite wrestlers to be able to exert themselves. The officers in this case, by contrast, wrestled and fought with the plaintiff for over three and a half minutes.

Unsurprisingly, all three of the plaintiff's arresting officers were absolutely exhausted after their three-and-a-half-minute wrestling match with the plaintiff. And as these officers became more and more exhausted, the danger posed by the plaintiff became more and more acute. Energy and fatigue were not issues for the plaintiff; the drugs in his system made sure of that. As such, if the plaintiff was able to wear out and outlast these officers, he would have gained a serious advantage and would have posed an even greater threat to their safety. Accordingly, the defendant-officers were clearly justified in using a significant amount of force to detain the plaintiff as quickly as possible.

the suspect's legs and back to try to stop him from thrashing. *Id.* at 688. After continuing to struggle for several more minutes, the suspect stopped moving. *Id.* When the officers rolled the suspect onto his side, they realized he was not breathing. *Id.* They began CPR and attempted to defibrillate the suspect, but he ultimately died as a result of this incident. *Id.* at 689.

The suspect's parents later sued these officers under § 1983 for excessive force. *Id.* The district court granted the officers summary judgment, and the Eighth Circuit affirmed. *Id.* at 686, 689. In awarding the officers qualified immunity, the Eighth Circuit observed that the Supreme Court has never found a prone restraint to be unconstitutional, *id.* at 690, and the circuit courts have only occasionally found prone restraints to be unconstitutional, and only when the suspect was subdued, incapacitated, or not offering any resistance, *id.* at 691 (discussing several cases). With this in mind, the Eighth Circuit noted that the contrapositive is also true: "[T]here is no clearly established right against the use of prone restraints for a suspect [who] has been resisting." *Id.* (quoting *Hanson v. Best*, 915 F.3d 543, 548 (8th Cir. 2019)).

The *Lombardo* court further noted that "there is no robust

consensus of persuasive authority that would render the right [to be free from prone restraint while resisting] clearly established." *Id.*; *see also Wesby*, 138 S. Ct. at 589–90 (noting that, in the absence of binding in-circuit precedent, a right can be clearly established if there is "a robust consensus of cases of persuasive authority"). The court discussed knee-on-the-back cases from the Fifth, Sixth, Ninth, and Tenth Circuits and concluded that the courts have found prone restraints to be unconstitutional only if the suspect "had ceased resisting" and the prone restraint was clearly unnecessary. *Lombardo*, 38 F.4th at 691. Accordingly, because the suspect in *Lombardo* never stopped resisting, his "right to be free from prone restraint" was not clearly established because he was "engaged in ongoing resistance." *Id.* at 692.

There are no meaningful factual differences between *Lombardo* and this case. (In fact, the suspect in *Lombardo* was far less of a threat because he was already in a jail cell and there were far more officers on scene.) The *Lombardo* court, after doing a near-exhaustive legal analysis on the issue, came to the correct conclusion: there is no clearly established right to be free from a prone restraint when you are actively resisting arrest. The Supreme Court has never found such a right. This

Court has never found such a right. And no other circuit court has ever found such a right. In fact, in anything, the circuits seem to agree that it is objectively reasonable for an officer to use a prone restraint on an actively-resisting suspect, especially when they're being arrested for a serious crime or pose a risk to others. *E.g.*, *Hanson*, 915 F.3d at 548; *Giannetti v. City of Stillwater*, 216 F. App'x 756, 760, 762 (10th Cir. 2007) (holding that an officer's use of a prone restraint to a mentally-ill suspect's back was objectively reasonable, even though the suspect voiced distress, because the suspect posed a threat to others).

## CONCLUSION

Qualified immunity is designed to protect officers who were forced to make difficult decisions in dicey situations. *Griggs*, 841 F.3d at 316. In all the cases discussed in this brief—*Colston*, *Beaver*, *Cadena*, *Johnson*, *Griggs*, *Donovan*, *Rivas-Villegas*, and *Lombardo*—the defendant-officers were awarded summary judgment because they were confronted with intoxicated, belligerent, uncooperative, flight-prone, and physically aggressive suspects. Officers Pew and Rozema confronted the same sort of suspect in this case—a suspect who assaulted his arresting officer and then challenged three officers to a three-and-a-half-minute-long, drug-

fueled street brawl to avoid being arrested for a violent felony. Because this case is not meaningfully different from the cases cited in this brief, the district court properly awarded Officers Pew and Rozema summary judgment. This Court should not disturb the district court's sound ruling.

**ACCORDINGLY,** because the defendant-officers did not violate any of the plaintiff's (clearly established) rights, they respectfully ask this Court to *affirm* the district court's ruling.

DATED this 12th day of January 2023.

CITY OF MESA ATTORNEY'S OFFICE

_____
Alexander J. Lindvall
Assistant City Attorney
P.O. Box 1466
Mesa, Arizona 85211

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,127 words, excluding the parts of the brief exempted by Rule 32(f), and it contains fewer than 1,300 lines of text.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because it is proportionally spaced and uses 14-point Century Schoolbook font.

Signature:　　　/s/  Alexander J. Lindvall

Attorney for:　　Appellees Aaron Pew and Jacob Rozema

Date:　　　　　January 12, 2023

## CERTIFICATE OF SERVICE

I certify that, pursuant to Federal Rule of Appellate Procedure 31, I electronically filed the foregoing Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on January 12, 2023, and this Brief was thereby served on Appellant's attorneys of record.

/s/    Alexander J. Lindvall
      Alexander J. Lindvall

## STATEMENT OF RELATED CASES

There are no related cases pending before the Ninth Circuit Court

of Appeals.

/s/    Alexander J. Lindvall
           Alexander J. Lindvall