No. 21-15521

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COLE JOSEPH SPENCER,

*Plaintiff-Appellant*,

v.

AARON PEW; et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court for the
District of Arizona
No. 2:20-cv-00385-DGC-CDB
Hon. David G. Campbell

## REPLACEMENT ANSWERING BRIEF OF
## APPELLEES SHALL AND MACKLIN

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Joseph J. Branco
Sean M. Moore
Anna G. Critz
Charles Trullinger
   Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, AZ 85003
critza@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Shall and Macklin*

January 13, 2023

# Table of Contents

Table of Contents ............................................................................................. i

Table of Authorities ........................................................................................ ii

Introduction .....................................................................................................1

Statement of Jurisdiction ................................................................................2

Statement of the Issues ...................................................................................3

Statement of Pertinent Constitutional and Statutory Provisions ...................4

Statement of the Case .....................................................................................4

    I.      Spencer is arrested by the Mesa officers and the County deputies. ......4

    II.     Spencer initiated this § 1983 action. ...................................................6

          A.     Procedural history ..........................................................................6

          B.     The district court granted summary judgment in the County
                deputies' favor ...............................................................................6

Summary of the Argument ..............................................................................8

Standard of Review .........................................................................................9

Argument .........................................................................................................9

    I.      Summary judgment was appropriate because the County deputies
         didn't use excessive force and weren't integral participants in any
         excessive force. ...............................................................................12

          A.     Spencer waived any argument that either County Defendant
                used excessive force against him. ...............................................12

          B.     The County deputies didn't use excessive force against
                Spencer. .......................................................................................14

          C.     Shall and Macklin aren't integral participants. ..........................18

    II.     Summary judgment was appropriate because the County deputies
         didn't violate clearly established law. .............................................23

           A.     Macklin didn't violate clearly established law regarding his use
                 of force on Spencer. ....................................................................24

           B.     *LaLonde* and *Rivas-Villegas* don't change this analysis and
                support summary judgment in the County deputies' favor ......28

Conclusion ....................................................................................................31

# Table of Authorities

## Cases

*Amons v. Tindall*,
No. 20-16351, 2021 WL 3015107 (9th Cir. July 15, 2021) .............................22

*Anderson v. Creighton*,
483 U.S. 635 (1987) ........................................................................ 12, 22

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) .........................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................21

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007) ........................................ 20, 24, 25

*Bravo v. City of Santa Maria*,
665 F.3d 1076 (9th Cir. 2011) .........................................................20

*Bryan v. MacPherson*,
630 F.3d 805 (9th Cir. 2010) ..........................................................29

*Cunningham v. Gates*,
229 F.3d 1271 (9th Cir. 2000) .........................................................24

*DiRuzza v. Cnty. of Tehama*,
206 F.3d 1304 (9th Cir. 2000) .........................................................26

*Drummond ex rel. Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003) ........................................ 15, 28, 29

*Dunn v. Castro*,
621 F.3d 1196 (9th Cir. 2019) .........................................................26

*Espinosa v. City & Cnty. of S.F.*,
598 F.3d 528 (9th Cir. 2010) ........................................................4, 16

*Evans v. Skolnik*,
997 F.3d 1060 (9th Cir. 2021) .........................................................28

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013) ..........................................................20

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) .........................................................................19

*Graham v. Connor*,
490 U.S. 386 (1989) .................................................................................... *passim*

*Hopkins v. Bonvicino*,
573 F.3d 752 (9th Cir. 2009) ............................................................... 20

*Indep. Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) ....................................................... 15, 27

*Isayeva v. Sacramento Sheriff's Dep't*,
872 F.3d 938 (9th Cir. 2017) ............................................................... 20

*Jones v. Las Vegas Metro Police Dep't*,
873 F.3d 1123 (9th Cir. 2017) ............................................................. 27

*LaLonde v. Cnty. of Riverside*,
204 F.3d 947 (9th Cir. 2000) .................................................... *passim*

*Luchtel v. Hagemann*,
623 F.3d 975 (9th Cir. 2010) ............................................................... 20

*Malley v. Briggs*,
475 U.S. 335 (1986) ............................................................................. 25

*Martinez v. City of Covis*,
943 F.3d 1260, 1275 (9th Cir. 2019) ........................................... 26, 29

*Mattos v. Agarano*,
661 F.3d 433 (9th Cir. 2011) ............................................................... 18

*Mullenix v. Luna*,
577 U.S. 7 (2015) ....................................................................... 4, 25, 26

*Nicholson v. City of L.A.*,
935 F.3d 685 (9th Cir. 2019) ............................................................... 20

*Nilsson v. City of Mesa*,
503 F.3d 947 (9th Cir. 2007) ............................................................... 19

*Padgett v. Wright*,
587 F.3d 983 (9th Cir. 2009) ......................................................... 14, 27

*Pearson v. Callahan*,
555 U.S. 223 (2009) .................................................................. 4, 11, 16

*Reichle v. Howards*,
566 U.S. 658 (2012) ............................................................................. 25

*Reynaga Hernandez v. Skinner*,
969 F.3d 930 (9th Cir. 2020) ....................................................... 21, 25

iii

*Rivas-Villegas v. Cortesluna,*
142 S. Ct. 4 (2021) .......................................................... 30, 31, 32, 33

*Smith v. City of Hemet,*
394 F.3d 689 (9th Cir. 2005) ...........................................20

*United States v. Kama,*
394 F.3d 1236 (9th Cir. 2005) ..................................... 14, 27

*Video Software Dealers Ass'n v. Schwarzenegger,*
556 F.3d 950 (9th Cir. 2009) ...........................................11

*Watson-Nance v. City of Phoenix,*
No. CV-08-01129-PHX-ROS,
2011 WL 13152466 (D. Ariz. June 16, 2011) ................28

*White v. Pauly,*
580 U.S. 73, 137 S. Ct. 548 (2017)............................ 25, 26

**Constitutional Provisions**

U.S. Const., amend. IV .......................................................5

**Statutes**

28 U.S.C. § 1291 ................................................................3

28 U.S.C. § 1331 ................................................................3

28 U.S.C. § 1343 ................................................................3

28 U.S.C. § 1391 ................................................................3

42 U.S.C. § 1983 ..................................................... 1, 7, 21

**Rules**

Fed. R. App. P. 4(a) ..........................................................3

Fed. R. Civ. P. 56(a)..........................................................11

**Introduction**

Plaintiff-Appellant Cole Spencer ("Spencer") initiated this § 1983 civil rights suit against Defendants-Appellees Maricopa County Sheriff's Office Deputies Shall and Macklin (collectively, where appropriate, the "County deputies"), alleging that the County deputies used excessive force in their assistance of Mesa Police Department Officers Pew and Rozema's (collectively, where appropriate, the "Mesa officers") arrest of Spencer.

After discovery, the district court granted summary judgment in favor of all defendants. The district court properly concluded there was no excessive force claim against Shall because Shall, whose attention was focused on the driver of the vehicle, didn't use force in his interaction with Spencer and didn't have sufficient information requiring that he intervene on any excessive use of force.

The district court also properly concluded the Mesa officers and Macklin, who arrived after Spencer was already on the ground struggling with the Mesa officers and who restrained Spencer's legs, were entitled to qualified immunity. In particular, the law didn't clearly establish that the amount of force Macklin used to subdue Spencer was excessive, especially considering Spencer was actively resisting arrest, demonstrating unusual strength, and refusing multiple orders to submit to handcuffing.

Spencer, recognizing no evidence in the record supports a finding that Shall

and Macklin acted improperly, spends most of his brief ignoring their presence. The analysis in the Replacement Opening Brief broadly refers to "the officers" without paying any recognition to the fact that there are two separate groups of Defendants with different levels of involvement in the incident. This strategy doesn't manufacture the County deputies' liability because the record demonstrates that they simply didn't do anything wrongful and only took steps to deescalate the situation.

This Court should affirm.

## Statement of Jurisdiction

The district court had jurisdiction over Spencer's civil rights action under 28 U.S.C. §§ 1331 and 1343. Venue was proper in the District of Arizona, because it was where all parties were located and the site of the alleged constitutional violation. *See* 28 U.S.C. § 1391(b).

Following a grant of summary judgment in the County deputies' favor, the judgment was entered on March 11, 2021. (ER-002.) On March 22, 2021, Spencer filed a timely notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a). (ER-237.)

This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

1.      *Graham v. Connor* sets forth the reasonableness standard for Fourth Amendment excessive force claims. 490 U.S. 386, 394 (1989). The standard examines the nature of the force inflicted; the government interests at stake, which include the severity of the crime, the threat posed by the suspect, and whether the suspect is resisting arrest (the "*Graham* factors"); and whether the force used was necessary. *See Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010). Here, Shall provided scene security and didn't use force against Spencer; Macklin aided the Mesa officers in Spencer's arrest by restraining Spencer's legs. Under the *Graham* factors, was Macklin's use of force reasonable to arrest an unusually strong, actively resisting, admittedly high suspect?

2.      Even if an officer's force violates a suspect's right, qualified immunity will protect the officer if the right was not "clearly established" at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A clearly established right is one that's sufficiently clear that every reasonable official would have understood the conduct to be a violation. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Where no case law places the County deputies' conduct beyond debate, are the County deputies entitled to qualified immunity?

## Statement of Pertinent Constitutional and Statutory Provisions

**U.S. Const., amend. IV:**

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

## Statement of the Case

### I. Spencer is arrested by the Mesa officers and the County deputies.

On March 21, 2018, Deputy Shall was driving east on Broadway Road in
Mesa, Arizona, approaching the Loop 202 interchange when he observed a traffic
stop being conducted by two Mesa police officers—later revealed as Pew and
Rozema. (3-ER-331, 333.)[1] Shall observed the Mesa officers in full uniform, one on
each side of the stopped vehicle. (3-ER-333.) As Shall passed the vehicle, he
observed the passenger of the car—later identified as Spencer—jump out and start
to run away. (3-ER-334.) The Mesa officers gave chase. (*Id.*)

Shall conducted a U-turn at the first opportunity and pulled back around to
where the car was stopped. (3-ER-334.). He exited his vehicle and activated his

---

[1]     For clarity's sake: although the Excerpts of Record's page numbering doesn't
include volume numbers, cites to the Excerpts of Record in this Brief will be
preceded by the volume number.

body-worn camera. (*Id.*). He observed both Mesa officers on the ground with Spencer, who was actively resisting their efforts to place him in custody. (*Id.*) One of the Mesa officers called out to Shall, asking him to keep an eye on the driver, who was still seated behind the wheel of the stopped car. (*Id.*).

Deputy Macklin then arrived on scene and began to assist the two Mesa officers to gain control of Spencer, who continued to struggle. (3-ER-336.) Macklin held Spencer's legs down while leg chains were applied. (3-ER-336–37.) The Mesa officers and Macklin both believed Spencer was under the influence of a substance, due to his level of resistance, his high pain tolerance, and seemingly "superhuman" strength. (3-ER-340, 363, 365.) Later, Spencer admitted that he was under the influence of drugs to fire department personnel, medical providers, and Rozema. (*See* 2-ER-113, 198; 3-ER-365.) In his first Opening Brief, Spencer admitted to having used heroin the previous evening. (*See* First Opening Brief ("F.O.B.") at 22).

The County deputies didn't deploy their Tasers during this interaction. (3-ER-334, 337.) Both of the County deputies observed the Mesa officers use only standard tactical maneuvers to try to gain control of Spencer. (3-ER-334–35, 337.)

At the time of the arrest, the County deputies didn't know why the Mesa officers were detaining Spencer. (3-ER-335, 339.) They only knew that the Mesa officers were trying to arrest Spencer, and he was actively resisting the arrest. (*Id.*). Spencer later pleaded guilty to second-degree burglary, third-degree burglary, and

aggravated assault. (2-ER-258–59.) The factual basis for his aggravated assault came from his pushing one of the Mesa officers during the struggle. (2-ER-268–69.)

## II. Spencer initiated this § 1983 action.

### A. Procedural history

Spencer filed his complaint against the individual defendants on February 21, 2020, later amending his complaint to add the City of Mesa, Maricopa County, Mesa Police Department, and Maricopa County Sheriff's Office (collectively, "the Entity Defendants"). (*See* Doc. 1; 3-ER-399–411.). In his amended complaint, he alleged the Mesa officers used excessive force against him by punching, kicking, kneeing, strangling, and electrocuting him, without any provocation. (3-ER-404.) He further alleged that the County deputies aided in the beating. (3-ER-407.)

The district court's screening order dismissed the claims against the Entity Defendants,[2] as well as the malicious prosecution claim against Shall and Macklin. (Doc. 9 at 4–5.) The court allowed the excessive force claims against the Mesa officers and the County deputies to proceed. (*Id.* at 4.)

### B. The district court granted summary judgment in the County deputies' favor.

The Mesa officers filed their motion for summary judgment on August 26,

---

[2]     The original appellate case caption listed Maricopa County Sheriff's Office ("MCSO") as an appellee, but MCSO has been dismissed and is not a party to this appeal.

2020, and the County deputies filed their motion for summary judgment on December 7, 2020. (Docs. 55, 106.) Spencer responded to both motions. (Docs. 116, 127.) The district court granted summary judgment in favor of all defendants on March 11, 2021. (1-ER-003–015.)

1. The district court granted summary judgment in favor of Shall because Shall didn't use excessive force on Spencer, nor did Shall have sufficient information requiring that he intervene. (1-ER-014.) The court noted that the Shall's body camera footage showed that he didn't use force in Spencer's arrest. (*Id.*). Instead, Shall's role was to secure the scene by supervising the driver of the stopped vehicle, and his attention was focused there. (*Id.*). The court further found under the totality of the circumstances, there was not enough evidence to show that Shall should have intervened to stop an excessive use of force. (*Id.*)

2. The district court granted summary judgment in favor of Macklin on the basis of qualified immunity. (1-ER-014.) Noting that its analysis for the Mesa officers applied equally to Macklin, the court found it was not clearly established that the amount of force Macklin used against Spencer was excessive. (*Id.*). Specifically, the court held, it was not clearly established that officers can't use "significant force when an arrestee actively resists arrest, shows unusual strength, and refuses to submit to handcuffing despite multiple orders to do so." (1-ER-012.)

## Summary of the Argument

This Court should affirm. The district court properly granted summary judgment to both County deputies; Spencer doesn't meaningfully address the County deputies' liability on appeal.

Regardless, the County deputies didn't use excessive force in their aiding of the Mesa officers' arrest of Spencer. Shall merely stood by the stopped vehicle and monitored its driver, while Macklin, who arrived after the struggle was already in progress, restrained Spencer's legs, so the Mesa officers could apply handcuffs and leg chains. The *Graham* factors weigh heavily in favor of both County deputies here. Also, both County deputies observed only standard tactical practices from the Mesa officers. Spencer wasn't subjected to excessive force, nor were the County deputies aware or fundamentally involved in any alleged excessive use of force.

The County deputies are also entitled to qualified immunity under these circumstances. It's not clearly established that an officer can't use significant force to arrest an intoxicated, unusually strong suspect, who is actively resisting arrest and refusing repeated orders to submit to handcuffing. Spencer hasn't shown the violation of a clearly established right, and the cases he cites to are inapplicable.

## Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009). It must "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied substantive law." *Id.*; Fed. R. Civ. P. 56(a). The Court draws "all reasonable inferences supported by the evidence in the nonmoving party's favor." *Video Software Dealers*, 556 F.3d at 956. And it "may affirm summary judgment on any ground supported by the record." *Id.*

## Argument

The district court properly granted summary judgment in the County deputies' favor. The County deputies are entitled to qualified immunity. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. This Court analyzes qualified immunity under a two-pronged framework that can be addressed in any order: (1) whether the public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation. *Id.* at 232, 236.

Before turning to the analysis under each prong, it's important to address the standard regarding genuine disputes of material fact under Rule 56 that begins

Spencer's Replacement Opening Brief. "A material fact is one that may affect the outcome of the case under the applicable law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

To begin with, Spencer doesn't attempt to explain the materiality of the allegedly disputed facts to the County deputies' involvement—or lack thereof—in the incident. For example, whether Spencer attempted to flee after exiting the vehicle is immaterial to the County deputies who were not part of the initial stop and didn't know why Spencer was being detained; they simply observed Spencer fighting the Mesa officers and assisted their fellow officers in subduing Spencer. It was reasonable for the County deputies, upon observing Spencer fighting the Mesa officers, to help the Mesa officers.

Similarly, from the County deputies' perspective, it is ultimately immaterial whether Spencer was displaying "superhuman strength" because the County deputies didn't employ any meaningful force to subdue Spencer. There is also no allegation or evidence that the County deputies struck or beat Spencer at all, let alone did so for punitive reasons. None of these alleged disputed facts—and, to be clear, the County deputies affirmatively deny *any* factual dispute on these issues even though they are irrelevant to the County deputies—are material to support the claims against the County deputies.

Further, there is no actual dispute in the one fact Spencer disputes that is material to the County deputies: the fact that Spencer was actively resisting arrest and trying to fight the Mesa officers. The evidence showing Spencer's active and aggressive resistance is already conclusively established. First, and most importantly, Spencer pleaded guilty to aggravated assault in connection with his effort to fight the Mesa officers. (2-ER-268–69.) Accordingly, he has already admitted he was using illegal force against the Mesa officers with intent to injure them. *See United States v. Gough*, 152 F.3d 1172, 1173 (9th Cir. 1998) ("By pleading guilty, a defendant admits the facts constituting the elements of the charge."); *see* A.R.S. § 13-1203. Indeed, in his First Opening Brief, Spencer openly admitted that he was resisting arrest because he felt aggrieved by the way the Mesa officers treated him. (*See* F.O.B. at 17). Spencer's admissions in this regard preclude, as a matter of law, any new argument that he was not resisting arrest or attempting to fight the Mesa officers.

Second, the record similarly displays there is no dispute over whether Spencer was resisting arrest. The videos depicting Spencer's efforts to fight the Mesa officers readily displays the baselessness of the new assertions that these facts are disputed. These are not involuntary movements, or efforts to dodge punches, as Spencer now brazenly asserts. Moreover, the consistent and unanimous testimony of the law enforcement officers plainly establish that Spencer was actively resisting arrest and

did so with force against the officers. Spencer's bald and conclusory statements that he was not resisting arrest fail to create a question of fact that precludes summary judgment in the face of the mountain of visual and testamentary evidence to the contrary. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.").

On the whole, the undisputed facts establish that neither Shall nor Macklin violated Spencer's Fourth Amendment right to be free from excessive force. And even if excessive force was used against Spencer, Shall and Macklin didn't violate clearly established law. This Court should affirm.

## I. Summary judgment was appropriate because the County deputies didn't use excessive force and weren't integral participants in any excessive force.

### A. Spencer waived any argument that either County Defendant used excessive force against him.

As a preliminary matter, Spencer has waived any argument that the County deputies used excessive force against him by failing to specifically and distinctly raise that issue, or present any evidence of such conduct by the County deputies. *See Padgett v. Wright*, 587 F.3d 983, 986, n.2 (9th Cir. 2009) ("This court will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief.") (quotation mark omitted); *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (generally, issues not argued in

opening brief are waived); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating this Court "cannot manufacture arguments for an appellant and therefore [it] will not consider any claims that were not actually argued in appellant's opening brief") (quotation marks omitted).

Because Spencer implicitly recognizes that Shall and Macklin did not use any unreasonable or unconstitutional force, Spencer simply tries to conflate the two groups of Defendants in the hopes the Court will bootstrap the County deputies to the Mesa officers. Accordingly, the Replacement Opening Brief fails to specifically and distinctly address the *Graham* factors in relation to Shall and Macklin's conduct. (*See* Replacement Opening Brief ("R.O.B.") at 33–42.) Indeed, the Replacement Opening Brief's "Issues Presented" section, the organization of which tracks its "Arguments" section, addresses only the Mesa officers' actions on the "excessive force" issue. (*See id.* at 1.) The only argument specifically and distinctly raised against Shall and Macklin is the "integral participant" theory. (*See id.* at 2 (addressing "integral participant" issue regarding Shall and Macklin), 47–49 (arguing Shall and Macklin were "integral participants").) Crucially, the Replacement Opening Brief does not specifically and distinctly address how citing *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000), and *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), apply to the County deputies' conduct. (*See id.* at 42–46.)

Thus, Spencer waived any arguments to reverse the district court's granting summary judgment to the County deputies on the issue of their use of force, and the Court can affirm on that basis.

**B.    The County deputies didn't use excessive force against Spencer.**

Regarding the first prong of the qualified immunity analysis, the court must determine whether a constitutional right has been violated on the facts shown. *See Pearson*, 555 U.S. at 232. A claim that law enforcement officers used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham*, 490 U.S. at 395. This inquiry requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests." *Id.*

To determine whether a Fourth Amendment violation has occurred, the court must conduct a three-step analysis assessing: (1) the nature of force inflicted; (2) the governmental interests at stake, which involve factors such as the severity of the crime, the threat posed by the suspect, and whether the suspect is resisting arrest; and (3) whether the force used was necessary. *Espinosa*, 598 F.3d at 537. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Because Shall didn't use force against Spencer and Macklin used only

reasonable force in their interactions with Spencer, and neither deputy observed any use of force requiring that they intervene, this Court should affirm.

### 1. The Fourth Amendment analysis favors Shall and Macklin.

To begin with, as the district court properly found, Shall didn't use any physical force in the arrest of Spencer. (ER-014.) Shall arrived on scene after both Mesa officers were engaged in trying to subdue a resisting Spencer. (ER-334, 338.) Shall was tasked by one of the Mesa officers with securing the unattended driver of the vehicle, and his attention was focused on this task. (ER-334.) Thus, no facts support a claim that Shall used excessive force on Spencer.

Turning to Macklin, he arrived on the scene while Shall was monitoring the driver. (ER-336.) Macklin helped the Mesa officers effect their arrest of the still-struggling Spencer by restraining Spencer's legs. (*Id.*). Macklin's use of force was limited to holding Spencer's legs down, so that handcuffs and leg chains could be applied, as Spencer continued to resist throughout the arrest. (ER-336–37.)

The *Graham* factors weigh heavily in favor of Macklin under these circumstances.

**First**, **regarding the severity of the crime and whether the suspect was resisting arrest (the First and Third *Graham* factors)**. Although Macklin wasn't aware of the Mesa officers' reasons for arresting Spencer when he arrived on the scene, when he arrived he observed Spencer actively and vigorously resisting arrest,

a criminal offense. (ER-336.) Further, he could reasonably conclude that given his intense level of resistance, Spencer's underlying crime was severe. (*See* ER-014.) Spencer, in fact, pleaded guilty to aggravated assault based on his shoving one of the Mesa officers during this struggle. (ER-268–69.) Thus, both the first and third *Graham* factors are met by Spencer's violently resisting arrest.

**Next, regarding whether the suspect posed an immediate threat to the safety of the officers or others (the Second and "most important" *Graham* factor).** This factor weighs in favor of Macklin. *See Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). Macklin's limited use of force here was necessary to aid the arrest of Spencer, who posed a high and immediate threat to the officers at the scene. Spencer was actively fighting Macklin and the Mesa officers' attempts to subdue him; not yielding to commands; exhibiting "superhuman" strength; and admittedly under the influence of substances. (*See* ER-334, 362–65.) And the district court correctly found that Spencer was under the influence of drugs during his arrest given his manifold admissions,[3] despite his later self-serving denial. *See Nilsson v.*

---

[3] Specifically, the records Spencer submitted showed that he admitted to medical providers that he was "altered on a drug called DMT per him." (ER-198.) Spencer also admitted to methamphetamine use to fire department personnel. (ER-113.) And Spencer disclosed to Rozema that Spencer used DMT minutes before his arrest. (ER-365.) Finally, Spencer's criminal defense attorney raised Spencer's substance abuse issue as a mitigating factor at his sentencing, where one of the offenses for which he was being sentenced was his aggravated assault during this arrest. (ER-370–71.)

*City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) (self-serving affidavit, lacking detailed facts and supporting evidence, isn't sufficient to create genuine issue of material fact).

As the district court properly found, the video of the incident clearly shows Spencer struggling, ignoring the officers' orders, and refusing to submit his hands to be handcuffed as three large officers strain against his continued resistance. (ER-010–011.) Moreover, Spencer demonstrated unusual strength during the struggle. (ER-363.) He was able to successfully fend off multiple officers' attempts to handcuff him for over three minutes as he thrashed. (ER-336–37, 363, 365.) He didn't respond to strikes or tasers. (ER-362, 364.) Both Macklin and the Mesa officers discerned that Spencer was intoxicated, and he later admitted to using methamphetamine and dimethyltryptamine ("DMT")[4] before his arrest. (*See* ER-113, 198, 365.)

These are precisely the type of volatile factors that increase an arrestee's unpredictability and threaten officer safety. "People under the influence of mood-altering substances often act in an unpredictable, irrational manner . . . . They can exhibit superhuman strength, and despite their physical size, can inflict serious

---

[4]    Dimethyltryptamine is listed as a Schedule I controlled substance under the Controlled Substances Act. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 425 (2006). It's a hallucinogen whose health risks include psychotic reactions and adverse drug interactions. *Id.* at 426.

injuries while resisting arrest." *Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010). Also, both the Mesa officers and Macklin were carrying holstered firearms that were within reach of the resisting Spencer. And, the Ninth Circuit has repeatedly cautioned that officer safety is the most important consideration in use-of-force cases. *See, e.g.*, *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). Thus, this factor is met.

### C.   Shall and Macklin aren't integral participants.

An officer who integrally participates in another officer's constitutional violation can be held liable under § 1983 for his participation. *Nicholson v. City of L.A.*, 935 F.3d 685, 691 (9th Cir. 2019). An integral participant is more than a mere bystander and must have "some fundamental involvement in the conduct that allegedly caused the violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). An officer engaged in a separate law enforcement task from the alleged violation is not an integral participant. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (officer interviewing witness not integral participant); *Blankenhorn*, 485 F.3d at 481 n.12 (officer providing crowd control not an integral participant). Officers who are "mere bystanders" to the violative conduct are not liable under the integral participant doctrine. *Hopkins*, 573 F.3d at 770. Moreover, to be an integral

participant in a constitutional violation, it appears from this Court's jurisprudence that the defendant officer's conduct must have been a but-for cause of the violation. *See Reynaga Hernandez v. Skinner*, 969 F.3d 930, 942 (9th Cir. 2020) (discussing but-for causation following *Blankenhorn*'s language).[5]

As an initial matter, the integral participant doctrine is a solution in search of a problem and it sits uncomfortably with other § 1983 jurisprudence. The County deputies recognize that "[a]bsent intervening, controlling authority, a three-judge panel may not overrule a prior decision of this court." *Reynaga Hernandez*, 969 F.3d at 940. But the integral participant doctrine appears to conflict with Supreme Court precedent establishing that § 1983 suits can only be maintained against governmental entities and officials that actually violated the Constitution through their own actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (to maintain a § 1983 suit against a government official, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, *has violated* the Constitution.") (emphasis added).

The integral participant doctrine also conflicts with the principles of qualified immunity because qualified immunity will protect an officer's actions if "a

---

[5]    Spencer can't show the County deputies' alleged liability as integral participants under the proximate cause standard, *Reynaga Hernandez*, 969 F.3d at 942, because it isn't reasonably foreseeable that trained peace officers will use excessive force to subdue a suspect absent objective knowledge ahead of time.

reasonable officer could have believed [his actions] lawful, in the light of clearly establishes law and the information the . . . officer[] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The conflict arises because an officer could still be liable under the integral participant doctrine even though that officer only took objectively reasonable and lawful actions but *another* officer, over whom the innocent officer had no control, took a wrongful action. Finally, the integral participant doctrine does not fix any new problems with § 1983 liability because the duty to intervene doctrine already imposes liability on officers who wrongfully stand by while another officer commits a constitutional violation they had an opportunity to prevent. *See Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000). If this Court concludes that there is a genuine dispute of material fact precluding summary judgment for the Mesa officers, the integral participant doctrine, if applied to the County deputies under these circumstances, highlights the foregoing doctrinal problems.

Regardless, an officer can't be an integral participant to another officer's objectively reasonable use of force. *See Amons v. Tindall*, No. 20-16351, 2021 WL 3015107, at *6 (9th Cir. July 15, 2021). Because the *Graham* factors discussed above and in the Brief of the Mesa officers all weigh heavily against Spencer, the Mesa officers' use of force was reasonable to subdue an intoxicated, unusually strong, actively resisting suspect, who refused multiple orders to be handcuffed. Thus, the

County deputies aren't integral participants under these circumstances.

Given the evidence of what occurred before the County deputies arrived, the Mesa officers were justified in their use of force. But even if this Court concludes there is a genuine dispute of material fact regarding the Mesa officers' conduct, the County deputies still are not integral participants because they observed only standard tactical maneuvers from the Mesa officers as they tried to gain control of a resistant Spencer. (ER-334–35, 337.) The County deputies were engaged in their respective tasks of monitoring the vehicle's driver and restraining Spencer's kicking legs. (ER-334, 337.) The County deputies' acts were taken to deescalate the situation and stop the scuffle, not participate in an alleged beating. Shall was several feet away, and Macklin was at the opposite end of Spencer's body. Furthermore, the County deputies were not present for the initial traffic stop and had no knowledge of the reasons Spencer was being arrested—they simply saw Spencer resisting the Mesa officers and took action to stop the fracas Spencer was causing.

On this record, there is no evidence that the County deputies participated in the alleged conduct that caused Spencer's injury. Spencer's Replacement Opening Brief specifically details the exact alleged activities which he believes caused him injury. (*See generally* R.O.B. at 11–19.) Spencer spins a self-serving and inaccurate yarn about Mesa officers' conduct. But even in this narrative, the "worst" conduct attributed to the County deputies is that Macklin held Spencer's legs and Shall

placed leg restraints on Spencer's ankles. Essentially, even the "worst" acts Spencer can conjure for the County deputies is their efforts to deescalate the situation. This conduct is a far cry from being "fundamentally involved" in the alleged unconstitutional beating. And Spencer has not shown that the County deputies could anticipate the alleged excessive force or that they had a reasonable opportunity to intervene to prevent it. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000).

In the only section of the Replacement Opening Brief which goes to any lengths to discuss the County deputies' actions, Spencer points to nothing more than their efforts to diffuse the situation as evidence of their integral participation in the alleged beating. (*See* R.O.B., at 47–49.) Starting with Shall, Spencer claims that Shall was providing "armed backup," but the record demonstrates that Shall was simply securing the scene by ensuring that the driver remained in the vehicle. Established law confirms that simply providing general scene control to an incident is not integral participation. *Blankenhorn*, 485 F.3d at 481 n.12. Similarly, applying leg restraints is not integral participation in a wrongful act because Spencer has never argued that the application of the leg restraints was wrongful or caused him any injury.[6]

---

[6] These circumstances contrast with *Blankenhorn*, where an officer who placed hobble restraints on a suspect was considered to be an integral participant, because the act of placing the hobble restraints *itself* was part of the constitutional violation.

For Macklin, the analysis is largely the same. There is no evidence that Macklin participated in the alleged unconstitutional beating. Macklin didn't take part in planning the traffic stop. There is certainly no evidence or allegation that Macklin's conduct was a but-for cause of any alleged violation. *See Reynaga Hernandez*, 969 F.3d at 942. The County deputies weren't integral participants.

## II.     Summary judgment was appropriate because the County deputies didn't violate clearly established law.

Moving to the second prong of qualified immunity, a "clearly established" right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In order to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The clearly established law must be particularized to the facts of the case and shouldn't be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "Otherwise, '[p]laintiffs would be able to

---

*See Blankenhorn*, 485 F.3d at 479–80. Because there is no allegation here that the placing of the leg restraints was a violation, this act doesn't make Shall an integral participant.

convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Creighton*, 483 U.S. at 639).

When a law enforcement officer asserts the defense of qualified immunity, "the plaintiff bears the burden of proof regarding whether the right is clearly established." *DiRuzza v. Cnty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). The plaintiff must show that the law that was allegedly violated existed at the time of the claimed violation, placing the issue "beyond debate," such that "every reasonable official would have understood . . . that the conduct was a violation of a constitutional right." *Martinez v. City of Covis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citing *White,* 137 S. Ct. at 551). This requirement is "especially important in the Fourth Amendment context" because it's difficult to apply broad legal principles to the complex factual situations with which officers are often confronted. *See Mullenix,* 577 U.S. at 12. Whether a right was "clearly established" is solely a question of law for the judge. *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2019).

A. **Macklin didn't violate clearly established law regarding his use of force on Spencer.**

As an initial matter, Spencer has waived any argument that Macklin violated clearly established law with regard to Macklin's use of force on Spencer by failing

to specifically and distinctly raise that issue in the Replacement Opening Brief.[7] *See Padgett*, 587 F.3d at 986, n.2; *Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005); *Indep. Towers*, 350 F.3d at 929. In particular, while discussing clearly established Ninth Circuit precedent, Spencer fails to connect any of the case law to the facts and circumstances confronting Macklin.

In any event, the cases Spencer offers—but doesn't attempt to link to Macklin specifically—are plainly distinguishable. Regarding the cases Spencer cites for the first and second *Graham* factors, none address the conduct of an officer who, like Macklin, arrives at a scene to find a suspect physically struggling with other officers during an arrest and then assists with restraining the suspect's limbs (in Macklin's case, Spencer's legs). (*See* R.O.B. at 35–38.)

Regarding the third *Graham* factor and Spencer's cited cases, Macklin assisted the Mesa officers by holding Spencer's legs while he struggled. Yet no case establishes that these actions violated Spencer's rights. Spencer relies on *Jones v. Las Vegas Metro Police Department*, 873 F.3d 1123 (9th Cir. 2017). (*See* R.O.B. 39–40.) But *Jones* focused on officers' repeated and continued use of a taser. *Id.* at 1131 ("Evidence presented at summary judgment would support a jury finding that the officers' repeated and simultaneous use of tasers for over ninety seconds was unreasonable. . . . Based on this evidence, a jury could reasonably conclude that the

---

[7]    As noted repeatedly, Shall didn't use force on Spencer.

officers knew or should have known that their use of tasers created a substantial risk of serious injury or death."). Here—in stark contrast—the record is unequivocal: Macklin didn't use a taser. (*See* ER-335, 340.)

Spencer also relies on *LaLonde* and *Drummond*.[8] (R.O.B. at 40–42.) Spencer fails to address the relevance of these cases to Macklin's role in the arrest, only attempting to apply the circumstances of those cases to Pew. (*See* R.O.B. at 40–42 ("Under *LaLonde* and *Drummond*, Pew should have been on notice that kneeling on Spencer's back after he was subdued constituted excessive force.").) Neither case is relevant to Macklin.

*Drummond* dealt with a prone face-down arrestee who was not resisting, where serious use of force continued even after the arrestee had been handcuffed; a medical expert opined that the arrestee suffered "suffered a cardiopulmonary arrest caused by lack of oxygen to his heart" attributable to the pressure applied by officers that prevented "the anterior wall of his chest from expanding." 343 F.3d at 1055. At a minimum, Macklin's conduct is not comparable because he restrained the lower

---

[8] Spencer's reliance on an unpublished district court case at page 41 is misplaced. *See Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (addressing difficulty relying on district court precedent in "clearly established law" analysis). In any event, the case has no bearing on whether Macklin's conduct was prohibited by clearly established law, because the case did not address an officer restraining a suspect's legs. *See Watson-Nance v. City of Phoenix*, No. CV-08-01129-PHX-ROS, 2011 WL 13152466, at *11 (D. Ariz. June 16, 2011) ("The officers continued to keep her in the prone position and *apply force to her upper body* despite several warning signs for positional asphyxiation.") (emphasis added).

half of Spencer's body.

Similarly, assuming *arguendo* that *LaLonde* remains good law, it is inapplicable to Macklin's conduct. Like *Drummond*, *LaLonde* involved an officer putting pressure on the upper-half of a suspect's body, not the suspect's legs. 204 F.3d at 959 ("LaLonde alleged that Officer Horton seriously injured his (LaLonde's) back by using excessive force while handcuffing him. There was a factual dispute concerning whether the officer had placed his knee *in LaLonde's back or near his shoulder blade*.") (emphasis added). Again, the officer's conduct in *LaLonde* did not supply clearly established law with regard to Macklin's conduct.

In sum, no case law supports Spencer's position that he, as an intoxicated arrestee, had a right to be free from the force Macklin applied to his legs during the arrest where Spencer resisted arrest; refused to submit to officer commands or lesser uses of force; and demonstrated unusual strength in his resistance. (*See* ER-012.) And "an officer need not have perfect judgment, nor must he resort only to the least amount of force necessary to accomplish legitimate law enforcement objectives." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010). Under these circumstances, Spencer hasn't shown that the force Macklin used in this arrest was beyond debate, such that every reasonable official would have understood the conduct was a constitutional violation. *See Martinez*, 943 F.3d at 1275. Given that the district court, with time to consider the facts and applicable law from its

chambers, found no constitutional violation, there is no way that the County deputies—responding to a situation rapidly developing before their eyes—could have known of any authority that would pierce their qualified immunity.

Finally, to the extent that Spencer argues that the County deputies should be liable on the integral participant theory alone, qualified immunity certainly applies. Spencer has not carried his burden to provide any case authority which would have shown the County deputies that their mere participation to deescalate the situation could make them liable for an alleged beating they did not take part in. Absent that authority, qualified immunity applies to their alleged integral participation as well.

### B. *LaLonde* and *Rivas-Villegas* don't change this analysis and support summary judgment in the County deputies' favor.

The combined consideration of *LaLonde* and the Supreme Court's recent decision in *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021), doesn't change the qualified immunity analysis.[9] Initially, neither case bears a close factual similarity to the County deputies' situation because both cases involved significantly more compliant suspects and much less warrant for the use of force to control those suspects than does the present situation. In *LaLonde*, the police were called to investigate a noise complaint. 204 F.3d at 950. Here, in contrast, the County deputies responded to the scene when they personally observed that Spencer was actively

---

[9] The County deputies join in the discussion of *LaLonde* and *Rivas-Villegas* in the Mesa officers' Replacement Answering Brief at Pages 32–47.

resisting arrest and trying to fight the Mesa officers. On that fact alone, the present situation warrants a significantly higher use of force than in *LaLonde*. The analysis in *LaLonde* is not helpful to analyze qualified immunity with respect to the County deputies because *LaLonde* could not possibly have put the County deputies on notice of the level of force appropriate when observing a suspect actively resisting arrest and attempting to fight other officers.

*Rivas-Villegas* supports the County deputies' position because the Supreme Court applied qualified immunity under circumstances where the suspect in *Rivas-Villegas* was significantly more compliant than Spencer. Although the officers in *Rivas-Villegas* were also responding to a potentially dangerous situation, the suspect in that case was generally compliant and did not at any point resist arrest. When the officers in *Rivas-Villegas* arrived on the scene, they observed the suspect with a "weapon," so they ordered him to drop it; the suspect complied. 142 S.Ct. at 6. The officers then ordered the suspect to put his hands up, approach the officers, and then kneel a safe distance away from the officers; the suspect complied with these commands. *Id*. At that point, one of the officers observed a knife in the suspect's pocket, so they ordered him to keep his hands up. *Id*. at 7. At that moment, the suspect momentarily disobeyed commands, and began to drop his hands. *Id*. The officers shot him with a beanbag round, at which point the suspect resumed complying with the officer's instructions. *Id*.

That qualified immunity protected the officers in *Rivas-Villegas* demonstrates that the County deputies are also immune here. Spencer, unlike the suspect in *Rivas-Villegas*, refused to comply with any of the commands given to him. Spencer struggled continuously, refusing to comply with commands or to deescalate the situation. He pleaded guilty to assaulting the Mesa officers. And his conduct went much farther to warrant the use of force against him than anything that the suspect in *Rivas-Villegas* did. His ongoing efforts to resist arrest required Macklin to restrain Spencer's legs for a period of minutes until Spencer finally became convinced that there was no point in struggling further. Moreover, even after he had been apparently subdued, Spencer's intoxication and general combativeness had not abated, requiring the officers to exert some effort to ensure Spencer did not attempt to re-initiate the struggle. Spencer's continuous efforts to fight the Mesa officers and resist arrest make this case dissimilar to both *LaLonde* and *Rivas-Villegas*.

*LaLonde* and *Rivas-Villegas* are further distinguished because the level of force exerted while those suspects were prone was much greater than Macklin exercised on Spencer. In *LaLonde*, the plaintiff presented evidence that the officers deliberately dug his knee into the plaintiff's back with a force that caused long-term or permanent injury. 204 F.3d, at 959, n.17. Similarly, this Court in *Rivas-Villegas* stated that the responding officers, when disarming the suspect, leaned into the

suspect's back "causing allegedly significant injury"—after shooting the suspect with a beanbag round. 142 S.Ct. at 7.

Neither of these cases represent similar levels of force or harm that Macklin exerted on Spencer. Initially, there are no facts showing that Macklin leaned his knee into Spencer's back. The record shows that throughout the relevant timeframe Macklin was concentrated on controlling Spencer's legs to stop him from kicking the Mesa officers and/or running away. Moreover, nothing in the record shows that Macklin's actions resulted in physical harm to Spencer. *LaLonde* and *Rivas-Villegas* could not have put Macklin on notice that his restraint of Spencer's legs was unconstitutional.

Thus, both *LaLonde* and *Rivas-Villegas* have no controlling impact on the County deputies' qualified immunity analysis. This case presents both a stronger need to use force against Spencer and a lesser amount of force actually used by Macklin, than in either *LaLonde* or *Rivas-Villegas*. The fact that the officers in *Rivas-Villegas* were protected by qualified immunity simply confirms the analysis above showing that the County deputies are entitled to qualified immunity.

## Conclusion

Because the County deputies used only reasonable force and didn't violate Spencer's clearly established rights, this Court should affirm the district court's grant of summary judgment in the County deputies' favor.

Respectfully submitted,

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:    /s/*Joseph J. Branco*

Joseph J. Branco
Sean M. Moore
Anna G. Critz
Charles Trullinger
Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, AZ 85003
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Appellees Shall and Macklin*

January 13, 2023

**Statement of Related Cases**

Pursuant to Ninth Circuit Rule 28-2.6, I certify that:

[X]     I am unaware of any related cases currently pending in this court.

[ ]     I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]     I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Respectfully submitted,

RACHEL MITCHELL
MARICOPA COUNTY ATTORNEY

By:     */s/Joseph J. Branco*

Joseph J. Branco
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

January 13, 2023

**Certificate of Compliance**

This brief contains 7,306 words excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief:

[X]  complies with the word limit of Cir. R. 32-1.

[ ]  is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ]  is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]  is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ]  complies with the longer length limit permitted by Cir. R. 32-2(b) because

    [ ]  it is a joint brief submitted by separately represented parties;

    [ ]  a party or parties are filing a single brief in response to multiple briefs; or

    [ ]  a party or parties are filing a single brief in response to a longer joint brief.

[ ]  complies with the length limit designated by court order dated _____.

[ ]  is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Respectfully submitted,

RACHEL MITCHELL
MARICOPA COUNTY ATTORNEY

By:   */s/Joseph J. Branco*

       Joseph J. Branco
       Deputy County Attorney
       MARICOPA COUNTY ATTORNEY'S OFFICE
       CIVIL SERVICES DIVISION
       225 West Madison Street
       Phoenix, AZ 85003
       ca-civilmailbox@mcao.maricopa.gov

January 13, 2023

# Certificate of Service

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[X]    I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

[ ]    I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

Respectfully submitted,

RACHEL MITCHELL
MARICOPA COUNTY ATTORNEY

By:    */s/Joseph J. Branco*

Joseph J. Branco
Deputy County Attorney
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

January 13, 2023