# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

COLE JOSEPH SPENCER,

*Plaintiff-Appellant*,

v.

AARON PEW, et al.

*Defendants-Appellees*.

On Appeal from the United States District Court
For the District of Arizona
District Court No. 2:20-CV-00385-PHX-DGC-CDB
The Honorable David G. Campbell

## REPLACEMENT REPLY BRIEF OF APPELLANT

H.R. Fitzmorris and Hannah Garland
*Student Participants (Admitted per Circuit Rule 46-4)*

Professor Jeffrey M. Feldman, WA Bar No. 47535
Professor Elizabeth G. Porter, WA Bar No. 51567
*Faculty Advisors, Ninth Circuit Appellate Advocacy Clinic*

UNIVERSITY OF WASHINGTON SCHOOL OF LAW
4293 Memorial Way NE
Seattle, WA 98195
Telephone: (206) 543-3434

*Counsel for Appellant Cole Spencer*
PRO BONO

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT......................................................................................3

I.  OFFICERS DISREGARD THE SUMMARY JUDGMENT
STANDARD AND FAIL TO CITE SPECIFIC EVIDENCE
THAT SUPPORTS THEIR ARGUMENTS. ...................................3

    A.  Facts Relevant to Each of the Graham Factors are
Disputed. ...................................................................5

        1.  The "severity of the crime at issue" is disputed. ..............5

        2.  Whether Spencer "posed an immediate threat" to
officers is disputed...........................................9

        3.  Whether Spencer was "actively resisting arrest" is
disputed.........................................................13

    B.  The Body Camera Footage is Consistent with Spencer's
Claims. ...................................................................16

II.  Under Clearly Established Ninth Circuit Law, a Jury
Reasonably Could Find that the Officers Violated Spencer's
Fourth Amendment Rights............................................17

    A.  The Officers Fail to Show They Acted Reasonably Under
Clearly Established Ninth Circuit Law Regarding the
*Graham* Factors. ....................................................17

        1.  Under clearly established law, a jury could find
Spencer's offense was not severe enough to justify
significant force. ...........................................17

        2.  Under clearly established law, a jury could find the
level of threat Spencer presented was minimal. .............20

        3.  Under clearly established Ninth Circuit law, a jury
could find Spencer did not resist. ...................23

B. This Court Should Reject the Officers' Unsupported Argument that the Law is Not Clearly Established. ...............26

  1. The officers misstate Ninth Circuit caselaw....................27

  2. The officers cite inapplicable out-of-circuit caselaw. ....29

  3. The officers cite inapposite Ninth Circuit caselaw. .......29

III. Deputies Shall and Macklin Were Integral Participants. ................32

CONCLUSION..................................................................................34

CERTIFICATE OF COMPLIANCE...............................................36

Certificate of Service for Electronic Filing .....................................37

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Johnson*,
  555 U.S. 323 (2009) .......................................................................31

*Beaver v. City of Fed. Way*,
  507 F. Supp. 2d 1137 (W.D. Wash. 2007), *aff'd*, 301 Fed. Appx. 704 (9th
  Cir. 2008)........................................................................ 20, 24, 27, 28

*Beaver v. City of Federal Way*,
  301 Fed. Appx. 704 (9th Cir. 2008) ........................................... 27, 28

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ...................................................... 24, 34

*Boyd v. Benton County*,
  374 F.3d 773 (9th Cir. 2004) ..............................................................32

*Bravo v. City of Santa Maria*,
  665 F.3d 1076 (9th Cir. 2011) ............................................................32

*Bryan v. MacPherson*,
  630 F.3d 805 (9th Cir. 2010) ................................................. 2, 20, 28

*Chew v. Gates*,
  27 F.3d 1432 (9th Cir. 1994) ..............................................................18

*Davis v. City of Las Vegas*,
  478 F.3d 1048 (9th Cir. 2007) ..............................................................2

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) ............................................................21

*Donovan v. Phillips*,
  685 Fed. Appx. 611 (9th Cir. 2017) ........................................... 30, 31

*Drummond ex rel. Drummond v. City of Anaheim*,
  343 F.3d 1052 (9th Cir. 2003) .................................................. 2, 4, 21

*Francisco Jose Rivero v. City and County of San Francisco*,
316 F.3d 857 (9th Cir. 2002) ................................................29

*Gonzales v. City of Anaheim,*
47 F.3d 789 (9th Cir. 2014) ................................................22

*Graham v. Connor*,
490 U.S. 386 (1989) ........................................ 3, 5, 17, 21

*Gravelet-Blondin v. Shelton*,
728 F.3d 1086 (9th Cir. 2013) ................................................28

*Gregory v. Cnty. of Maui*,
523 F.3d 1103 (9th Cir. 2008) ................................................23

*Isayeva v. Sacramento Sheriff's Department,*
872 F.3d 938 (9th Cir. 2017) ........................................ 22, 23

*Jones v. Las Vegas Metro Police Dep't*,
873 F.3d 1123 (9th Cir. 2017) ................................................2

*LaLonde v. County of Riverside*,
204 F.3d 947 (9th Cir. 2000) ........................................ 2, 23, 25

*Lombardo v. City of St. Louis*,
141 S. Ct. 2239 (2021) ........................................ 4, 9, 25, 26

*Mattos v. Agarano*,
661 F.3d 433 (9th Cir. 2011) ................................................2

*Miller v. Clark County*,
340 F.3d 959 (9th Cir. 2003) ........................................ 19, 30

*Morgan v. Morgensen*,
465 F.3d 1041 (9th Cir. 2006), opinion amended on other grounds on reh'g,
04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006). ................................................29

*Rivas-Villegas v. Cortesluna*,
142 S. Ct. 4 (2021) ........................................ 20, 23

*Saucier v. Katz,*
   533 U.S. 194 (2001) ........................................................................28

*Scott v. Harris,*
   550 U.S. 372 (2007) .................................................................. 16, 17

*Tolan v. Cotton*,
   572 U.S. 650 (2014) .......................................................................3, 4

*Vos v. City of Newport Beach*,
   892 F.3d 1024 (9th Cir. 2018)...........................................................17

*Winterrowd v. Nelson*,
   480 F.3d 1181 (9th Cir. 2007)...........................................................24

## **Statutes**

42 U.S.C. § 1983 .........................................................................5, 29

Ariz. Rev. Stat. § 13-105(13)..................................................................8

Ariz. Rev. Stat. § 13-1203(2)..................................................................8

Ariz. Rev. Stat. § 13-1204(A)(8)(a) (2017) ...............................................8

Ariz. Rev. Stat. § 13-2907.01 ...........................................................5, 30

Cal. Penal Code § 241(c) .......................................................................8

## **Other Authorities**

9th Cir. Jury Instr. 1.14 – Credibility of Witnesses ....................................7

*Initial Report on Tyre Nichols Arrest is Contradicted by Videos*, New York
   Times, https://www.nytimes.com/2023/01/30/us/tyre-nichols-arrest-
   videos.html (Jan. 30, 2023, 10:31 PM) ..............................................6

# INTRODUCTION

The appellee briefs submitted by the officers suffer three significant errors, each of which is fatal to their arguments. Those errors are:

First, both briefs fail properly to apply the legal standard that governs summary judgment by failing to view the evidence in the light most favorable to the non-moving party (Spencer). Pew and Rozema Answering Brief at 2–7; Shall and Macklin Answering Brief at 4–6. Both briefs, instead, focus exclusively on the officers' view of the facts. *Id.* They compound this error by presenting those facts in the light most favorable to officers. *Id.* The briefs minimize or ignore the substantial contrary evidence in the record that conflicts with the officers' contentions—evidence that puts material facts in dispute. *Id.* That evidence consists of:

- Spencer's sworn statements; *see e.g.*, 2-ER-278–83;

- Portions of body camera videos that are specifically referenced in Spencer's opening brief; *see e.g.*, Video A at 00:01:08–00:01:13; Video A at 00:20:57–00:21:01; Video B at 00:00:36–00:01:07; Video D at 00:01:37–00:03:35; and

- Hospital records and photographic evidence generated in connection with medical care provided to Spencer following the beating he received; *see e.g.*, 2-ER-136–97.

As explained in Part I below, *see infra* pp. 3–17, this evidence, when correctly viewed in the light most favorable to Spencer, should have caused the district court to deny the officers' motions for summary judgment.

Second, the officers err in their contention that the governing law was not clearly established at the time of the incident. As explained in Part II, *see infra* pp. 17–31, the amount of force that reasonably can be used by officers in situations like the incident involved here[1] was well established in the Ninth circuit.[2] The officers' arguments that the law was not clearly established are based on their skewed presentation of the facts and on decisions by other circuits, which are not controlling. The few Ninth Circuit cases to which they refer either are incorrectly described or inapposite. Pew and Rozema Answering Br. at 9–15, 16–29; Shall and Macklin Answering Br. at 15–18.

---

[1] That Spencer was a passenger, that the car was stopped for a minor traffic violation, that Spencer was unarmed, and that he was pulled out of the car for having provided an incorrect name are the only undisputed facts central to the use of force claim. All other material facts (e.g., whether Spencer resisted arrest) are disputed.

[2] *See e.g., Jones v. Las Vegas Metro Police Dep't*, 873 F.3d 1123 (9th Cir. 2017); *Mattos v. Agarano*, 661 F.3d 433, 449 (9th Cir. 2011); *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010); *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003); *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000).

Third, Officers Shall and Macklin minimize the evidence of their involvement in the beating and misapply the clearly established law under which they are "integral participants" and, therefore, subject to liability. *See infra* pp. 32–34.

Each of these errors, as explained below, warrants reversal of the district court's order granting the officers summary judgment.

## ARGUMENT

> OFFICER (Unidentified): *"Did he throw any blows or anything like that?"*
> DEPUTY SHALL: *"No."*
>
> Video A at 00:20:57–00:21:01

## I. OFFICERS DISREGARD THE SUMMARY JUDGMENT STANDARD AND FAIL TO CITE SPECIFIC EVIDENCE THAT SUPPORTS THEIR ARGUMENTS.

Summary judgment is appropriately granted only when there are no genuine disputes of material fact, taking the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 659–60 (2014). Properly viewing the evidence is essential in cases alleging excessive force in violation of the Fourth Amendment because the constitutional inquiry into whether the use of force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case[.]" *Graham v. Connor*, 490 U.S. 386, 386 (1989); *see also*

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (summary judgment "should be granted sparingly" in excessive force cases).

In *Lombardo v. City of St. Louis*, the Supreme Court reiterated the fact-intensive nature of excessive force claims. 141 S. Ct. 2239, 2242 (2021). It cautioned courts against minimizing or giving undue weight to certain facts in a summary judgment analysis. *Id.* at 2241–42. In *Lombardo*, the Court summarily reversed a grant of summary judgment in favor of defendant officers, finding that the court below had "describe[d] as 'insignificant' facts that may . . . appear potentially important" in an excessive force analysis. *Id.* at 2241. In so holding, the Court broke no new ground. *Lombardo* merely reaffirmed the Court's earlier holding in *Tolan*: under Rule 56, juries—not judges—should resolve disputed facts. 572 U.S. at 656–57.

The district court made the same error here that resulted in reversal by the Supreme Court in *Tolan* and *Lombardo*: The court minimized critical facts and gave undue weight to the officers' views of what transpired; in so doing, it did not view the evidence in the light most favorable to Spencer, the non-moving party. The officers replicate that error on appeal, substituting conclusory statements about what they say happened for specific citations to the actual evidence and record on appeal. On this ground alone, reversal is warranted.

### A. Facts Relevant to Each of the Graham Factors are Disputed.

In *Graham v. Connor*, the Supreme Court established a three-part framework for analyzing 42 U.S.C. § 1983 suits alleging excessive force by law enforcement officers. 490 U.S. 386, 396 (1989). Under the *Graham* framework, the reasonableness of police use of force depends on (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396–97. The officers and the district court purport to analyze the *Graham* factors. *See* Pew and Rozema Answering Br. at 11–17; Shall and Macklin Answering Br. at 14–18. However, they fail to acknowledge, or they minimize as insignificant, genuine disputes of material fact as to each of these factors.

### 1. The "severity of the crime at issue" is disputed.

Pew and Rozema arrested Spencer for giving a false name while he was an unarmed passenger in a routine traffic stop, which is a misdemeanor in Arizona. Ariz. Rev. Stat. § 13-2907.01. This much is undisputed. *See* 3-ER-358 para. 10. The officers attempt to minimize the fact that they beat and choked an unarmed person until he was unconscious in arresting him for a patently minor, non-violent offense. The authors do not acknowledge this escalation of force even though it was breathtakingly disproportionate to the offense. Instead, they seek to re-

characterize their use of force as solely a response to what they allege was Spencer's resistance to arrest. *See* Pew and Rozema Answering Br. at 12 ("[O]nce [Spencer] shoved and struck Officer Rozema, he was being arrested for aggravated assault and resisting arrest."). This post-hoc shift of grounds for using excessive force is not an original or novel tactic.[3] Moreover, their argument ignores significant factual disputes that cast doubt on the credibility of their contentions about why excessive force was employed. These factual disputes, listed below, should be resolved by a jury at trial, not the court on summary judgment.

- Whether Spencer ever struck any officer is disputed. Neither Pew nor Rozema—the only officers present at the time the alleged strike took place—reported such a strike in their initial reports.[4] Spencer has

---

[3] *See, e.g.*, *Initial Report on Tyre Nichols Arrest is Contradicted by Videos*, New York Times, https://www.nytimes.com/2023/01/30/us/tyre-nichols-arrest-videos.html (Jan. 30, 2023, 10:31 PM) (noting that in police reports, Tyre Nichols was listed as a suspect in an aggravated assault, with one of the police officers in the incident listed as the victim).

[4] It is difficult to know what Pew and Rozema actually claim occurred, as their statements have significantly varied over time:

- Rozema stated in his initial report that Spencer pushed him and "flung his arms back at me and *nearly* struck my face." 2-ER-273:12–13 (emphasis added).

- Pew stated in his initial report that he observed Spencer "throw a punch which *appeared*" to hit Rozema (emphasis added). 2-ER-276:20.

- Rozema stated in his declaration that Spencer "swiped his hands *towards* my face several times." 3-ER-364 para. 7 (emphasis added).

consistently denied striking any officer. 2-ER-44–47; 2-ER-283 para. 17.

His denial does not stand alone.  It is corroborated by audio recordings of

statements the officers made at the time of the incident in which they

admitted that he never struck anyone:

> OFFICER (Unidentified): *"Did he (Spencer) throw any blows or anything like that?"*
>
> DEPUTY SHALL: *"No."*

Video A at 00:20:57–00:21:01. Spencer's denial also is corroborated by

the four body camera videos, *none* of which shows Spencer striking or

attempting to strike anyone.

---

♦ Pew stated in his declaration that Spencer "punched at" Rozema's face. 3-ER-362 para. 7.

♦ In their Motion for Summary Judgment, Pew and Rozema increase the perceived severity, stating that Spencer "swung his fist at Officer Rozema's face *several times*. . ." 3-ER-384:11–12 (emphasis added).

♦ Later in the same brief, they state that Spencer "struck Officer Rozema in the face." 3-ER-387:20.

♦ Most recently, in their Answering Brief, Pew and Rozema state that Spencer "shov[ed] and punch[ed] his arresting officer." Pew and Rozema Answering Br. at 13. Notably the photographs of the officers after the incident do not show any harm from alleged punching. *See* Opening Br. at 20; 2-ER-166–197.

The changes in the officers' claims and stories, alone, would be sufficient for a reasonable jury to question their credibility and find Spencer's statements about what occurred to be true. Juries routinely are instructed that a witness who testifies falsely in one part of their testimony may be disbelieved as to their entire testimony. *See* 9th Cir. Jury Instr. 1.14 – Credibility of Witnesses.

- Whether Spencer's plea to assault charges converts Spencer into a "violent felon," as the officers allege, is disputed. In Arizona, an aggravated assault is classified as a "*non*-dangerous felony."[5] 2-ER-267. Arizona can label the offense however it chooses, but Spencer did not admit to inflicting violence on the officers in pleading to the charge, nor has he ever stated that he inflicted violence on them.

- Whether Spencer's plea testimony is an admission of violence is disputed. Spencer's plea was based solely on his statement that he "pushed the officer and made a movement." 2-ER-268. This is consistent with his statement that he reacted instinctively and defensively when Rozema wrenched Spencer's arm after pulling it behind his back to be handcuffed. 2-ER-280 para. 8. Spencer never has stated that he "punched" or "struck" any officer. Any claims Pew and Rozema have

---

[5] In Arizona, the underlying misdemeanor charge of assault for is raised to a felony aggravated assault charge when committed against a peace officer. *See* Ariz. Rev. Stat. § 13-1203(2); § 13-1204(A)(8)(a) (2017) (Blue Lives Matter Law); *see also* 2-ER-267–68 (Spencer "knowingly did place a police officer in reasonable apprehension of imminent physical harm" by "push[ing] the officer and ma[king] a movement"). In other states, this conduct is a misdemeanor. *See*, *e.g.*, Cal. Penal Code § 241(c) (unarmed assault on police officer is a misdemeanor).

In Arizona, an assault is considered "dangerous" only if a defendant uses a deadly weapon or knowingly inflicted "serious physical injury." Ariz. Rev. Stat. § 13-105(13).

made about Spencer's initial encounter with Rozema—and they have

made many—are not automatically proven by the plea Spencer accepted.

Based on these disputed facts, a reasonable jury could conclude that the

officers' use of prolonged, potentially deadly force against Spencer was

unreasonably disproportional to the offense for which he was arrested.

### 2. Whether Spencer "posed an immediate threat" to officers is disputed.

The officers argue that the level of force they used was reasonable because

their interaction with Spencer "had the potential to turn deadly at any moment."

Pew and Rozema Answering Br. at 13. To reach this conclusion, they minimize

certain facts and give undue weight to others, just as the Court cautioned against in

*Lombardo*, and view none of the evidence in the light most favorable to Spencer.

141 S. Ct. at 2241.

First, it is undisputed that Spencer was unarmed. To depict Spencer as a

threat, the officers hyperbolically describe him as a "danger to everyone around

him" with "superhuman strength," and that he "went absolutely berserk[.]" Pew

and Rozema Answering Br. at 8, 13, 14. Integral to this argument is a claim that

Spencer was fueled by drugs that made him virtually invincible. *Id.*

Any evidence supporting this claim must be evaluated in the light most

favorable to Spencer on summary judgment:

- Far from being physically "superhuman," it is undisputed that Spencer, though only 32 years old, had a cardiac pacemaker at the time of the incident and informed the officers of this in trying to get them to stop the beating and tasing. *See* Video A at 00:01:08–00:01:13; *see also* 2-ER-111; 2-ER-201.

- It is undisputed that he was outnumbered by the five officers who attended the scene. *See* Videos A, B, C, D (showing Pew, Rozema, Shall, Macklin, and Clark at the scene, with officer Clark observing).

- Spencer consistently stated that he was not under the influence of drugs, and that the officers' statements to EMT and medical personnel about his supposed drug use were both inconsistent and untrue. *See* 2-ER-053; 2-ER-283 para. 19; 2-ER-295 para. 9; 2-ER-306 para. 29.

- There is no toxicology report in the hospital records documenting drug use. The absence of a "tox screen," given his admission for head injuries following a beating that left him unconscious, is significant.

- Spencer never was charged with possession or use of any drug or illegal substance. The absence of such charges, combined with the other evidence, reasonably could cause a jury to infer that any evidence that he had used or was in possession of illegal drugs either was very thin or non-existent.

In contrast, Pew and Rozema offered oddly varying and inconsistent claims about Spencer's supposed condition and drug use, *none* of which is supported by any objective evidence.

- Officers told EMTs that Spencer had admitted that "meth" in a backpack found in the car was his. 2-ER-295 para. 9.

- Officers later told hospital staff that they found "heroin" in "Spencer's backpack," which is "when [he] became violent and began to resist arrest." 2-ER-199.

- In his Incident/Investigation Report, Rozema made no reference to heroin or meth, but referred to yet another drug, reporting: "Cole told me the following: He had smoked 'DMT' four minutes before being pulled over at Jamie's house." 2-ER-274:22–23.

- The EMT report states that "[Spencer] was . . . answering questions appropriately and admitting to methamphetamines." 2-ER-113. It is undisputed that Spencer has a history of drug use, but this report does not state that Spencer reported current, contemporaneous drug use. A reasonable jury could conclude that Spencer—just after being severely beaten—simply and honestly admitted to past use of methamphetamines as part of his medical history.

In their appellee brief, Pew and Rozema claim that Spencer posed a serious threat to them, not based on his own strength or his possession of a weapon, but because the *officers themselves* were armed, and Spencer theoretically might have grabbed one of *their* weapons. Pew and Rozema Answering Br. at 13. It is undisputed that Spencer never attempted to do this. Moreover, taken to its logical conclusion, this argument would mean that every person who interacts closely with any armed law enforcement officer would pose the same potential threat. Under this logic, police would be justified in severely beating, administering multiple tasings, and rendering any individual unconscious based on the same "threat." Needless to say, no court—and certainly not this Court—has embraced that position.

Finally, as discussed below, the video and audio evidence do not show Spencer acting in a manner that presented a risk to the officers. *See infra* pp. 13–14.

Based on a fair assessment of the evidence, viewed in the light most favorable to Spencer, a jury reasonably could conclude that Spencer did not pose a threat to the officers justifying the potentially deadly force that they employed against him.

### 3. Whether Spencer was "actively resisting arrest" is disputed.

A genuine and disputed issue of fact exists about the officers' claims that, because Spencer resisted arrest, their prolonged use of extreme force was necessary. Spencer stated under oath that he did not resist and that his movements were involuntary, defensive, and resulted from being repeatedly beaten and tased by officers. 2-ER-281 para. 11. Pew and Rozema simply ignore this evidence, seemingly on the incorrect assumption that the only evidence that matters is their statements and contentions, even when those statements are internally inconsistent.

The impact of this error is significant because Spencer's sworn statements are corroborated by other evidence. Body camera footage shows Spencer being beaten and tased in a manner entirely consistent with his description:

- Pew strikes Spencer in the face with his knee, Spencer is tased while yelling "I have a pacemaker!", Spencer can be seen squirming to protect himself from the onslaught of blows. Video A at 00:01:01–00:01:16.

- Pew holds Spencer's arms down while Rozema punches Spencer in the stomach, Pew again strikes Spencer in the face with his knee, Spencer wails and writhes. Video B at 00:00:36–00:01:07.

- During the beating, Pew ordered Spencer to place his arms behind his back *despite the fact that Spencer's arms were being restrained by Rozema* at the very same moment. Video B at 00:00:39.

- Not only is Spencer's resistance while he was being beaten disputed, but the video evidence shows that Pew dug his knee into Spencer's upper back and neck area for at least one minute *after* Spencer was handcuffed and prone on the ground. Video D at 00:01:37–00:03:35.

- In addition to what undeniably is documented on the body camera video, what the video and audio do *not* reflect also is significant.

  o None of the video evidence shows Spencer striking or kicking, or attempting to strike or kick, any officer.

  o None of the video evidence shows Spencer biting or spitting or attempting to bite or spit at any officer.

  o None of the audio evidence records Spencer yelling obscenities or making threats; to the contrary, it shows him fearfully crying "I have a pacemaker!" within the first minute of Shall arriving on the scene. Video A at 00:01:08–00:01:13.

In contrast to the detailed evidence offered by Spencer, Rozema and Pew offer only a conclusory claim that Spencer's version of events is "clearly contradicted by the video evidence," but they cite no specific portions of the video that make that claim true. Pew and Rozema Answering Br. at 30. Shall and Macklin's brief suffers the same defect. *See* Shall and Macklin Answering Br.

at 11 (claiming, without any specific citation, that the video "displays there is no dispute over whether Spencer was resisting arrest").

In addition to their failure to provide specific citations to the video and audio evidence, Pew and Rozema badly misrepresent a statement Spencer made in his initial *pro se* appellate brief. Pew and Rozema quote Spencer's Original Opening Brief in this appeal as stating:

> "I don't feel that there is any need to waste the court's time convincing you that I was not resisting. This much is obvious. . ."

Pew and Rozema Answering Br. at 14, quoting Appellants' Original Opening Br. at 15. The officers' brief uses this statement to argue that Spencer acknowledged that he was resisting arrest. *Id.* at 14.

But the quotation they provide to the Court is misleadingly truncated and cuts off most of the sentence that they purport to rely on. The full statement says:

> "I don't feel that there is any need to waste the court's time convincing you that I was not resisting. This much is obvious, **there is a robust consensus amount the circuits, that compressing a restrained and prone suspect against the ground for any duration, (let alone 3 minutes) is unconstitutional.**"

Appellant's Original Opening Brief at 15 (emphases added). By eliding the portion of the sentence after "this much is obvious," the officers leave the court with the false impression that what was "obvious" to Spencer was that he was resisting. With the context of the full sentence, it is clear that Spencer decidedly did *not* admit he resisted. Rather, Spencer was clarifying that—*whether or not he*

*resisted*—Pew's and Rozema's conduct was unconstitutional under clearly established law. The misleading eliding of an otherwise clear statement by a *pro se* litigant is troublesome.[6]

### B. The Body Camera Footage is Consistent with Spencer's Claims.

In essence, the officers argue that there is no need to accord any weight to Spencer's evidence because the video wholly contradicts Spencer's factual assertions. Pew and Rozema Answering Br. at 30; Shall and Macklin Answering Br. at 11. This is incorrect.

In analyzing summary judgment in the many cases where there is video and audio evidence, the Supreme Court's decision in *Scott v. Harris* is instructive. 550 U.S. 372 (2007). In that case, the Court affirmed the summary judgment standard, but found that the plaintiff's claims were "blatantly contradicted" by the police dashcam video evidence in the record. *Id.* at 380.

Here, in contrast, the video and audio evidence do not "clearly contradict" Spencer's proffered evidence. *See id.* To the contrary, the body camera footage

---

[6] Pew and Rozema also point to a section of Spencer's Original (*pro se*) Opening Brief entitled "Was I Resisting Arrest?" Pew and Rozema Answering Br. at 14; Appellant's Original Opening Brief at 17. In this section Spencer concedes to resisting based on his understanding of the law at the time. Appellant's Original Opening Brief at 17. Spencer goes on to state that at no point was he fighting or attempting to strike the officers and that his "resistance" was fueled by Pew's violence. *Id.* at 17–18. Spencer should not be punished for his efforts, as a lay person representing himself, to understand the law, and the court should assess his efforts sensibly and fairly, not hyper-technically, as urged by the officers.

supports Spencer's claims, or—at a minimum—raises genuine disputes of material

fact. Therefore, far from supporting the officers' arguments here, *Scott v. Harris*—

which adheres to the standard summary judgment framework—should have

precluded summary judgment in their favor. Video evidence is not a tool for

circumventing bedrock summary judgment law. *See e.g.*, *Vos v. City of Newport

Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The mere existence of video footage

of the incident does not foreclose a genuine factual dispute as to the reasonable

inferences that can be drawn from that footage.").

## II. UNDER CLEARLY ESTABLISHED NINTH CIRCUIT LAW, A JURY REASONABLY COULD FIND THAT THE OFFICERS VIOLATED SPENCER'S FOURTH AMENDMENT RIGHTS.

### A. The Officers Fail to Show They Acted Reasonably Under Clearly Established Ninth Circuit Law Regarding the *Graham* Factors.

The district court erred by finding that the law governing Spencer's

excessive force claim was not clearly established. With the evidence viewed in the

light most favorable to Spencer, a jury reasonably could conclude that the officers

used a level of force the Ninth Circuit has established as excessive under similar

circumstances.

#### 1. Under clearly established law, a jury could find Spencer's offense was not severe enough to justify significant force.

The officers exaggerate the severity of Spencer's offense to argue that severe

force was justified. Pew and Rozema Answering Br. at 6 (characterizing offense of

assaulting a police officer as a "serious and dangerous felony" even though the Arizona statute explicitly characterizes the offense as "non-dangerous"). In fact, the police conduct at issue in this case arose when Pew and Rozema arrested Spencer for the undeniably minor offense of giving a false name. *See supra* p. 5. Force sufficient to render Spencer unconscious and resulting in multiple serious injuries was not warranted because he was not arrested, as the officers claim on appeal, in connection with "serious and dangerous felony" offenses.

Moreover, settled Ninth Circuit law establishes that officers cannot use severe, potentially deadly force to apprehend an individual—even if the person is suspected of committing a serious felony—without additional justification. *See Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994).

In *Chew v. Gates*, officers knew that a fleeing suspect had *three* pre-existing felony warrants for his arrest when he fled from a traffic stop. *Id.* at 1436. Despite his record, this Court held that a jury could find that unleashing a K-9 unit to apprehend him was severe and excessive. *Id.* at 1441. The court also noted that the suspect had not yet been tried or convicted of the felonies when the officers resorted to force, and "thus [the charges were] not strong justification for the use of dangerous force." *Id.* at 1442.

Officers broadly contend that if a suspect commits a felony "the first *Graham* factor "usually 'strongly favors the government[.]'" Pew and Rozema

Answering Br. at 12 (citing *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)). However, multiple additional factors justified the serious force employed in *Miller*. And, nowhere in *Miller* did the court hold that *any* felony arrest warrants significant force without additional justification. Instead, this Court weighed the severity and nature of the felony—attempting to flee from police by driving a car with "a wanton or willful disregard for the lives . . . of others." *Miller*, 340 F.3d at 960. The defendant's conduct, it found, "evince[d] a willingness to threaten others' safety in an attempt to escape responsibility for past crimes," *id.* at 965, justifying the use of severe force. *Id.* The court also noted if Miller had been wanted only for a "nondangerous felony," the court would deem it of "limited significance" to its assessment of the severity of the crime for which he was pulled over (mismatched license plates). *Id.* at 965 n.10.

The force also was justified by additional factors: the officers had reason to believe the suspect was armed; he had fled to a dark, densely wooded area; he refused to surrender even after officers warned they would release the dog; and the officers had already attempted "several less forceful means" to arrest the suspect to no avail. *Id.* at 966. The suspect's serious felony was merely one of several dangerous circumstances that justified the officers' use of serious force—none of which are present in this case. The court in no way suggested officers are "usually"

justified in using severe force merely because a possible felony is involved. Pew and Rozema Answering Br. at 12.

### 2. Under clearly established law, a jury could find the level of threat Spencer presented was minimal.

Under clearly established Ninth Circuit law, a jury could find that Spencer presented a minimal threat:

- It is undisputed that Spencer was unarmed. An unarmed suspect does not present the same level of threat as an armed suspect. *Compare Bryan v. MacPherson*, 630 F.3d 805, 809 (9th Cir. 2010) (finding use of taser excessive when suspect "was obviously and noticeably unarmed") *with Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (finding use of bean-bag gun and brief prone restraint reasonable where suspect was armed with a knife).

- It is undisputed that Spencer was outnumbered by the officers. The Ninth Circuit has held that when a suspect is outnumbered any threat the suspect poses wanes. *Beaver v. City of Fed. Way*, 507 F. Supp. 2d 1137, 1146 (W.D. Wash. 2007) (holding continued tasing excessive when suspect was unarmed and outnumbered by officers), *aff'd*, 301 Fed. Appx. 704 (9th Cir. 2008).

- It is not disputed that Spencer was medically vulnerable given his pacemaker. When officers know a suspect is medically vulnerable, a

severe level of violence may not be justified. *See Drummond ex rel.*
*Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003)
(finding prone restraint on unarmed, unmedicated schizophrenic
excessive despite suspect hallucinating and resisting officers' efforts to
subdue him).

The officers do not appear to contest this; nor do they argue using serious
force on an unarmed passenger who is being arrested for giving a false name
during a routine traffic stop is reasonable. Instead, they make three arguments that
justify their force, and they base all three of those arguments on their own version
of the facts, ignoring all contrary evidence.

First, they appear to give weight to the fact that Pew, "based on [his]
experience," had an intuition that Spencer "was either on drugs or planning on
making bad decisions and running and fighting." 2-ER-276. This does not justify
the use of excessive force. In the Ninth Circuit, it clearly is established that "a
simple statement by an officer that he fears for his safety. . . is not enough" to
establish that a suspect is a threat" under *Graham*. *Deorle v. Rutherford*, 272 F.3d
1272, 1281 (9th Cir. 2001).

Second, the officers argue that they were permitted to use a "greater-than-
normal amount of force" because they believed that Spencer was intoxicated. Pew
and Rozema Answering Br. at 15, 16, 20, 42. But a subjective claim by law

enforcement that a suspect was under the influence of drugs or alcohol does not automatically justify the use of serious, potentially deadly force.

For example, in *Gonzales v. City of Anaheim*, this Court denied qualified immunity to officers who pulled over a suspected drunk driver. 47 F.3d 789, 792 (9th Cir. 2014). In addition to evidence the suspect was intoxicated (driving erratically and weaving through traffic at 2:00 a.m.) an officer saw the driver reach between the seats and grab an item from a bag. *Id.* Rather than put up his hands as directed, the suspect clenched his fist and again reached out of sight. *Id.* Finally, the officers alleged that while one officer was in the car fighting to subdue the suspect the driver stepped on the accelerator, endangering the lives of both officers. *Id.* at 793. The officers argued deadly force was warranted given the level of threat and imminent danger. *Id*. at 795. The court held a disputed question of fact existed about whether the level of threat justified the force, even with evidence the suspect was intoxicated plus the additional the factors. *Id.* at 796 (emphasizing "the importance of considering all the facts in excessive force cases").

Other decisions affirm that intoxication does not, alone, entitle officers to use serious force without the presence of additional threatening circumstances. For example, in *Isayeva v. Sacramento Sheriff's Department*, the Ninth Circuit held that the officers used reasonable force against a suspect they knew to be high on methamphetamines. 872 F.3d 938, 952 (9th Cir. 2017). But the court gave this fact

little weight in its analysis. The court gave significantly greater weight to the facts that the suspect was 250 pounds and over six feet tall, threw a deputy into a wall, repeatedly hit the deputy in head, neck, and back, and pushed a second officer when he tried to put the suspect in a chokehold. *Id.* The court emphatically did not hold that any unlimited amount of force was reasonable simply because the officers knew the suspect was on drugs. *See also Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1105 (9th Cir. 2008) (holding officer force reasonable where suspect was reported to be "high on drugs," but was also hallucinating and acting aggressively, wielding a weapon, and did not respond to less intrusive means of force).

### 3. Under clearly established Ninth Circuit law, a jury could find Spencer did not resist.

Finally, even assuming for the sake of argument that the officers' actions could be construed as reasonable prior to when they handcuffed Spencer, the law in this circuit is clearly established that force is excessive when officers kneel and press on a suspect's back and neck after he is handcuffed. S*ee LaLonde v. Cnty. of Riverside*, 204 F.3d 947 (9th Cir. 2000) (finding excessive force when officer knelt on suspect after handcuffing him, even though suspect had initially been noncompliant and resisted). As explained in Appellant's Opening Brief, *see* 42–46, the Supreme Court's recent decision in *Cortesluna* in no way calls into question this two-decades-old precedent. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021).

A jury would not be required to accept the officers' characterization of Spencer's reaction to being tased multiple times and beaten unconscious as "violent resistance." A jury reasonably could find that the officers' difficulty in controlling Spencer's arms—whether because his arms were locked up from tasing and trapped underneath his body or because they were being held by one officer while the other punched him—did not justify continuing to beat and choke him to unconsciousness.[7] *See supra* pp. 13–15.

Officers cannot use significant force against a noncomplying suspect if the noncompliance is involuntary or unintentional. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (holding that punching a suspect whose arms were trapped under him excessive because he was not intentionally manipulating them to avoid being handcuffed); *see also Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007) (recognizing suspect's statement he is unable to comply cannot be a basis to "cause him unnecessary pain"). This Court has recognized that tasing makes it difficult, if not impossible, for the victim to physically comply with an officer's commands. Thus, continued use of force is excessive. *Beaver,* 507 F. Supp. at 1146 (holding reasonable officers would be on notice that effects of four

---

[7] 2-ER-277:20–22 ("I believed we were not going to control [Spencer] unless he was unconscious. . . . I…placed my hands on the sides of his neck . . . and squeezed.").

rounds of tasing could cause involuntary inability to comply with multiple demands and was not resistance).

Moreover, even a suspect who resists still cannot be subjected to unlimited force. *LaLonde*, 204 F.3d at 947 (holding kneeling on the back of subdued, unarmed suspect excessive force despite initial "struggle" with suspect).

An assessment of the reasonableness of officers' force requires a careful examination of *all* facts. *Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2240 (2021). In *Lombardo*, police officers arrested Nicolas Gilbert for trespassing. *Id.* While Gilbert was in a holding cell, he attempted to tie a piece of clothing around his neck. *Id.* Officers intervened, attempting to handcuff Gilbert. *Id.* However, he evaded officers and began to struggle, kicking at officers. *Id.* Once officers were able to shackle his legs and handcuff him, like the officers here, they rolled him into a face down prone position. *Id.* Three officers held Gilbert's limbs down at the shoulders, biceps, and legs. *Id.* At least one other placed pressure on Gilbert's back and torso. *Id.* Gilbert tried to raise his chest, saying, "It hurts. Stop." *Id.* After 15 minutes of struggling in this position, Gilbert's breathing became abnormal, and he stopped moving. *Id.* The officers realized he was not breathing and attempted to resuscitate him, but Gilbert was pronounced dead. *Id.*

As discussed above, *supra* p. 4, the Supreme Court summarily reversed the Eighth Circuit's grant of qualified immunity for its failure to engage in the

"careful, context-specific analysis required by the Court's excessive force precedent." *Lombardo*, 141 S. Ct. at 2241. The Court emphasized that it is reversible error to disregard evidence or simply "characterize it as insignificant" to find a use of force *per-se* reasonable. *Id.* at 2241–42.

Officers in this case make the same *per se* argument that the Court rejected in *Lombardo*. In the officers' view, because "the plaintiff was physically fighting . . . while 'out of it' on mind-altering drugs" that "increase[ed] his strength and pain tolerance," *any* amount of violence was justified. Pew and Rozema Answering Br. at 17. But the facts on which that argument is based are disputed, and the law that the officers rely on in making that argument does not support it.

## B. This Court Should Reject the Officers' Unsupported Argument that the Law is Not Clearly Established.

The officers' argument that the governing law was not clearly established fails for three reasons. First, the officers misstate or disregard Ninth Circuit law that governs in this case. Second, the officers rely instead on cases from the Fifth, Third, and Eighth Circuit to support their argument that the officers' actions did not violate law that was clearly established *in the Ninth Circuit*. Third, the officers improperly resolve disputed facts in their favor to liken this case to clearly distinguishable cases.

### 1. The officers misstate Ninth Circuit caselaw.

The officers argue that "existing caselaw strongly favors the defendant officers." Pew and Rozema Answering Br. at 17. The cases they cite do not support this assertion.

For example, the officers cite *Beaver v. City of Federal Way*, 301 Fed. Appx. 704 (9th Cir. 2008), for the proposition that "this Court found that two officers acted reasonably when they repeatedly tased an intoxicated, uncooperative suspect." Pew and Rozema Answering Br. at 18. The officers misread *Beaver*.

The district court in *Beaver* held that the defendant officers used excessive force. *Beaver*, 507 F. Supp. 2d at 1148 ("Here, the Court has found that the first prong of Saucier has been satisfied, and that defendants violated Mr. Beaver's Fourth Amendment rights."). It granted the officers qualified immunity on the ground that—19 years earlier, in 2004—the law was not clearly established. *Id.* (Holding that "at the time of the arrest, a reasonable law enforcement officer might well have failed to recognize that the actions taken by defendants—specifically, the fourth and fifth tasings of Mr. Beaver—violated his Fourth Amendment rights"). But the district court explicitly stated that, as of the time of its opinion, "the following issues are now clearly established":

> First, the use of a Taser involves the application of force. Second, each application of a Taser involves an additional use of force. Third, multiple applications of a Taser cannot be justified solely on the grounds that a suspect fails to comply with a command, absent other

indications that the suspect is about to flee or poses an immediate threat to an officer. This is particularly true when more than one officer is present to assist in controlling a situation. Fourth, any decision to apply multiple applications of a Taser must take into consideration whether a suspect is capable of complying with an officer's commands.

*Id.* at 1149.

On appeal, the Ninth Circuit affirmed that the law was not clearly established at the time of the incident but left intact the underlying Fourth Amendment holding. *Beaver*, 301 Fed. Appx. at 705 ("Here, the Court has found that the first prong of *Saucier* has been satisfied, and that defendants violated Mr. Beaver's Fourth Amendment rights.").

Since that time, the Ninth Circuit regularly has relied on the district court decision in *Beaver* for the proposition that tasers constitute significant force. *See Bryan*, 630 F.3d at 811 (citing *Beaver* to conclude that "use of the X26 taser and similar devices in dart mode constitutes an intermediate, significant level of force that must be justified by the governmental interest involved"); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (citing *Beaver* to support finding that it was clear in 2008 that using a taser in dart mode was non-trivial and excessive if unnecessary to effectuate arrest or to protect officers' safety). Thus, far from supporting the officers' argument, *Beaver* provides strong support that the officers should have been on notice that their indiscriminate use of two types of tasers against Spencer was constitutionally excessive.

### 2. The officers cite inapplicable out-of-circuit caselaw.

The officers rely on decisions by other circuits to draw tenuous conclusions about what is, or is not, clearly established in the Ninth Circuit. However, it is clear in the Ninth Circuit that where binding caselaw governs, other circuit decisions are not controlling. The Ninth Circuit has held that what is relevant is not "what the law was or might have been in other circuits . . . it is, rather, what the 'controlling authority in [the defendants'] jurisdiction [was] at the time of the incident.'" *Francisco Jose Rivero v. City and County of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002) (holding that a circuit split does not unsettle clearly established law in the Ninth Circuit); s*ee also Morgan v. Morgensen*, 465 F.3d 1041, 1046 (9th Cir. 2006) ("The fact that there was a potential circuit split on this issue does not preclude our holding that the law was clearly established [in the Ninth Circuit] for the purposes of the § 1983 inquiry."), opinion amended on other grounds on reh'g, 04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006).

As such, the officers' references to Third, Fifth, and Eighth Circuit holdings are not binding or relevant here, where the law is clearly established.

### 3. The officers cite inapposite Ninth Circuit caselaw.

The Ninth Circuit cases that the officers cite for the proposition that the force they employed weas reasonable are clearly distinguishable.

The officers cite *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003) to support the level of force they used, claiming Spencer was being arrested for two "serious felonies." Pew and Rozema Answering Br. at 12. But the officers have both the facts and the law wrong. Spencer was convicted of a single "non-dangerous" felony, *see* Ariz. Rev. Stat. § 13-2907.01, and, as discussed above, *Miller* is factually inapposite. In *Miller*, the court held that an officer's use of a police dog who bit and held a suspect for just under one minute was constitutional where (1) the officer was pursuing the plaintiff through a densely wooded area at night, (2) the plaintiff was wanted by police for the "felony of attempting to flee from police by driving a car with a wanton or willful disregard for the lives of others," (3) the plaintiff was known "not to be law enforcement friendly," and (4) the plaintiff had left an eight-inch knife in his car (indicating he might be armed with a similar or even more serious weapon). None of those factors were even remotely present here.

The officers also rely on *Donovan v. Phillips*, 685 Fed. Appx. 611 (9th Cir. 2017). *Donovan*, like this case, concerned a passenger in a car. There the resemblance ends. The plaintiff in *Donovan* refused to comply with an officer's repeated orders to remain in the car while he was administering a field sobriety test to the intoxicated driver. *Id.* When the plaintiff exited the car against orders, the officer, who was alone and out-numbered, used "minimal force" against the

plaintiff by placing her in a control hold—*i.e.*, holding her wrist and pulling her arm downward, causing her to roll onto the ground. *Id.* This Court held that the officer's actions, which were compliant with the California Highway Patrol's Highway Patrol Manual, were "reasonable as a matter of law." *Id.* at 612. This minimal use of force by an outnumbered officer is significantly different from the severe, prolonged, and potentially deadly force that a team of officers used against Spencer in this case.

Finally, the officers cite *Arizona v. Johnson*, 555 U.S. 323, 330 (2009), to stand for the proposition that tasing, beating, choking, and kneeling on Spencer was reasonable so that they could take "unquestioned command of the situation." Pew and Rozema Answering Br. at 16. However, the Court in *Johnson* reasoned that a "legitimate and weighty interest" in ensuring a suspect in a traffic stop *is unarmed* justifies a "*de minimis* additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." 555 U.S. at 331 (emphasis added). Here, Spencer was known to be unarmed, exited the vehicle voluntarily on request of the officer, and the officers employed a level of force that couldn't possibly be characterized as a "de minimis additional intrusion."

In short, the officers rely on cases with easily differentiable facts to justify their use of excessive violence.

## III. DEPUTIES SHALL AND MACKLIN WERE INTEGRAL PARTICIPANTS.

It is clearly established that, to be an integral participant, an official's individual actions need not "themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). On the other hand, there is no liability where an officer is a "mere bystander[]." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011).

Shall and Macklin were, undisputedly, not mere bystanders. They assisted in the unconstitutional restraint and beating of Spencer by acting as armed guards, 3-ER-353:2–5, lying and sitting on top of Spencer (Macklin), Video B at 00:01:00; Video A at 00:05:13, and retrieving and placing leg shackles on Spencer (Shall), Video A at 00:04:45–00:05:19. This image captures the coordinated use of force on Spencer even after he was prone and handcuffed:



**Shall moves to place leg shackles on Spencer while Macklin sits on Spencer and Pew drives his knee into Spencer's back. Spencer is visibly handcuffed. Screen capture, Video A at 00:05:13.**

Shall and Macklin dispute this characterization of their involvement in the beating and restraint of Spencer. Shall and Macklin Answering Br. at 21. But this dispute of fact only reinforces that deciding the issue on summary judgment was error. Resolving the factual dispute and determining the correct characterization of the officers' involvement are tasks for the jury at trial, not the court on summary judgment.

Shall and Macklin contrast their involvement with that of the officer in *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). They state the officer in *Blankenhorn* "was considered to be an integral participant, because the act of placing the hobble restraints *itself* was part of the constitutional violation." Shall and Macklin Answering Brief at 22, n. 6. Shall and Macklin ignore that Kayano, the officer who helped handcuff Blankenhorn before he was placed in hobble restraints, *was* found to be an integral participant. *Blankenhorn*, 485 F.3d at 481 n.12. The court found that Kayano's participation was "integral to the use of the hobble restraints." *Id.* Similarly, both Shall and Macklin were instrumental in enabling Pew and Rozema's unconstitutional force against Spencer.

Because there are facts from which a jury reasonably could conclude that Shall and Macklin directly assisted in the unconstitutional use of force against Spencer, the district court erred in granting them summary judgment.

## CONCLUSION

This brief began with Shall's admission that Spencer never struck anybody, begging the question: What then triggered the use of such extreme force by the officers? The answer does not require speculation. The officers answered this themselves when they taunted Spencer as he laid bloodied on the ground after the beating ended:

OFFICER ROZEMA: *"Hey, hey, next time don't lie to me about your name."*

Video D at 00:01:32–00:01:34.

For the foregoing reasons, the Court should reverse the district court's granting of summary judgment for all four defendant officers. Spencer's Fourth Amendment and excessive force claims against the officers should be remanded for trial.

Dated: March 15, 2023.

| | |
|---|---|
| H. R. Fitzmorris and Hannah Garland<br>*Student Participants (Admitted per Circuit Rule 46-4)*<br>Student Participants<br>UNIVERSITY OF WASHINGTON<br>SCHOOL OF LAW<br>Ninth Circuit Appellate Advocacy<br>Clinic | /s/ Jeffrey M. Feldman<br>Jeffrey M. Feldman (WA Bar No. 47535)<br>UNIVERSITY OF WASHINGTON<br>SCHOOL OF LAW<br>4293 Memorial Way NE<br>Seattle, WA 98195<br>(206) 543-3434 |
| | /s/ Elizabeth G. Porter<br>Elizabeth G. Porter (WA Bar No. 51567)<br>UNIVERSITY OF WASHINGTON<br>SCHOOL OF LAW<br>4293 Memorial Way NE<br>Seattle, WA 98195<br>(206) 543-3434 |
| | *Attorneys for Appellant* |

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** _____ 21-15521 _____

I am the attorney or self-represented party.

**This brief contains __7,866__ words,** excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[x] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [x] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jeffrey M. Feldman        **Date** 03/15/2023 _____
*(use "s/[typed name]" to sign electronically-filed documents)*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Certificate of Service for Electronic Filing**

**9th Cir. Case Number:** _____21-15521_____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒  I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐  I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Replacement Reply Brief of Appellant

**Signature** <u>s/ Jeffrey M. Feldman</u>      **Date** <u>03/15/2023</u>
*(use "s/[typed name]" to sign electronically-filed documents)*